IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, INTERSIL AMERICAS, INC., a Delaware corporation and INTERSIL CORPORATION, a Delaware corporation<br><br>                Plaintiff,<br><br>    v.<br><br>POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>                Defendants. | CIVIL ACTION NO. 2:06-cv-151 |

## OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER THIS CASE TO DELAWARE

COME NOW the Plaintiffs and file this their response to Defendant Power Integrations' ("PI") request to dismiss this action or transfer it to Delaware, and in support thereof would show the Court the following.

## I.    INTRODUCTION

Plaintiff "Intersil"[1] is the owner of the patent-in-suit, U.S. Patent No. 5,264,719 (the "'719 Patent"), and Fairchild Semiconductor Corp. ("Fairchild"), is the exclusive licensee of that patent.  While Defendant PI moves to dismiss the action, it does not even contend that plaintiff Intersil lacks standing.  For this reason alone, the motion to dismiss must be denied.  PI also simply ignores the clear language of the license agreement between Intersil and Fairchild explicitly granting Fairchild exclusive rights.  Pursuant to that agreement, Fairchild has complete power to exclude PI from practicing the '719 Patent and therefore has standing to sue as a co-plaintiff with Intersil.  PI's motion to dismiss must be denied for this reason as well.

Further, this case should not be transferred to Delaware.  The parties in the two pending actions are not the same, as Intersil is not party to the Delaware dispute.  The actions do not even

---

[1] Intersil Americas and Intersil Corp.

involve the same patents or products. This case involves Intersil's and Fairchild's '719 Patent, and the accused products are PI devices. In the Delaware action, by contrast, PI asserts four of its own patents against Fairchild devices. Obviously there is no overlap. Moreover, the Delaware action has been pending for close to two years and in just a few months, trial on the four PI patents at issue in Delaware will be underway. Thus, consolidation of the two actions would not be practical, given the disparate stages of litigation. There is no reason to transfer this distinct action to Delaware when the dispute can and should be litigated efficiently in this venue.

## II. ARGUMENT

### A. PI's Motion To Dismiss Should Be Denied.

#### 1. Dismissal Of The Action Is Inappropriate Because PI Does Not Dispute That Intersil—The Owner Of The '719 Patent—Is Properly A Plaintiff

PI does not contest that Plaintiff Intersil—the patent owner—has standing to sue. PI admits that Intersil is the owner of the '719 Patent. [PI Brief, at 5 ("[l]egal title appears to have been held at all times by Intersil (or Intersil's predecessor Harris Corporation) . . ."); Ramsey Decl. (filed herewith), Exs. 1-3] Further, PI recognizes that, as the owner of the asserted patent, Intersil has standing. [PI Brief, at 5 ("a patentee may bring an action for patent infringement")] This point is well-settled. *See* 35 U.S.C. §281 ("patentee" may bring infringement action). Nowhere in its brief does PI even remotely contest Intersil's status as a plaintiff in this case. Yet, despite this critical concession, PI nonetheless requests dismissal of the ***entire*** action with prejudice. [PI Brief, at 7; PI Proposed Order] Given PI's recognition that Intersil has standing, such relief is entirely inappropriate. For this reason alone, PI's motion must be denied.

#### 2. Fairchild Has Standing To Sue Because It Is An Exclusive Licensee And Has Sued Jointly With Intersil

Fairchild is an exclusive licensee, therefore it has standing to sue along with Intersil as a joint plaintiff. It is well-settled that "a licensee may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995). Such a licensee "is ***usually*** an 'exclusive licensee.'" *Id.* (emphasis

added).  Exclusive licensees possessing "all substantial rights"[2] under the patents may sue even without joining the patentee.  Exclusive licensees possessing less than "all substantial rights" may sue as long as the patentee is joined as a co-plaintiff.  *See Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377, 1381 (Fed. Cir. 2000) ("the patent owner must ordinarily join, in any infringement action, an exclusive licensee who possesses less than all substantial rights in the patent."); *Abbott Lab. v. Diamedix Corp.*, 47 F.3d 1128, 1132-1133 (Fed. Cir. 1995) (establishing licensee standing to sue if patentee joined as plaintiff by licensee); *Philadelphia Brief Case Co. v. Specialty Leather Prods. Co.*, 145 F. Supp. 425, 429 (D. N.J. 1956) (same).

PI egregiously misstates this standard asserting that a licensee may *only* sue when "a party obtains an exclusive license to a patent and holds 'all substantial rights' under the patent." [PI Brief, at 4, 7, 10-11]  While this is the appropriate standard for determining whether an exclusive licensee may sue **without** joining the patentee—it is not the appropriate test for whether a licensee may sue **with** the patentee.  Even if less than "all substantial rights" under the patent are held by the exclusive licensee, it may sue as co-plaintiff with the patentee.

The critical question in determining whether Fairchild has standing in a suit brought with Intersil is whether Fairchild obtained the "the right to exclude others [i.e. PI] from making, using or selling the patented invention . . ." *Rite-Hite Corp.*, 56 F.3d at 1552.  In the words of one case relied upon by PI, "it is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing . . ." *Ortho Pharma. Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995); *see also Abbott Lab.*, 47 F.3d at 1131 (relied upon by PI; "the transfer of the exclusive right to sue was 'particularly dispositive' of the question whether [plaintiff] was authorized to bring suit without joining [patentee]"); *Good Sportsman Mktg. LLC v. Testa Assocs., LLC*, 2005 U.S. Dist. LEXIS 29182, *4-5 (E.D. Tex. 2005) (same).

---

[2] "All substantial rights" means: "the right to exclude others from making, using, or selling the invention in the United States, the right to transfer, and the right to sue." *NOMOS Corp. v. ZMED, Inc.*, 175 F. Supp. 2d 96, 98 (D. Mass. 2001).  An exclusive licensee receiving "all substantial rights" is tantamount to an assignee.

There can be no dispute that Fairchild possesses the exclusive right to exclude PI from making, using or selling the patented invention of the '719 Patent, and therefore has standing to sue as a co-plaintiff with Intersil. Pursuant to its license agreement with Intersil, Fairchild possesses the "sole and exclusive right" to prevent PI from making, using or selling the invention and to control PI's economic activity regarding practice of the invention. [Ramsey Decl., Ex. 4 at ¶1.2, ¶3)] This right to exclude is complete, as is clear from the patent license agreement:

> 3.1. . . Intersil grants to Fairchild the sole and exclusive right, exclusive even as to Intersil, to enforce the Patents against POWI[3], to assert, litigate and prosecute claims of Infringement under the Patents against POWI, including without limitation in any U.S. federal court or before the International Trade Commission, and to seek all equitable, injunctive, monetary and other relief and to collect for later distribution under Paragraph 1.2 any and all past damages in connection with Infringement of the Patents by POWI, and to settle and compromise any disputes with POWI related to the Patents. Except as provided herein, the Parties agree that only Fairchild shall have the authority to threaten, commence, maintain or settle any claim suit or proceeding based upon Infringement of the Patents (or other trespass or similar action relating to the Patents and the inventions therein claimed) by POWI.

[Ramsey Decl., Ex. 4 at ¶3)]

By this agreement, Intersil has clearly promised that no party other than Fairchild will be granted the right to exclude PI from practicing the patent "even as to Intersil." Fairchild possesses two of the three "substantial rights"—specifically, "the right to exclude others from making, using, or selling the invention in the United States," and "the right to sue." *NOMOS Corp. v. ZMED, Inc.*, 175 F. Supp. 2d 96, 98 (D. Mass. 2001). Therefore, Fairchild is an exclusive licensee, upon which standing is conferred to sue PI jointly with the patent owner Intersil. PI incorrectly argues that Fairchild purportedly "has no exclusive right to keep others from making, using or selling products making use of the patented technology." [PI Brief at 6] As the foregoing makes clear, this disingenuous assertion must be rejected.

PI incorrectly relies on a number of cases in which the licensee failed to join the patent owner as a co-plaintiff. *See Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 40, 44 (1923) ("The plaintiff below could not bring such a suit for past infringements without

---

[3] Power Integrations ("POWI")

joining with it the owner of the patent when the infringements were committed."; dismissing on the ground that "the owner of the patent is not a party to this bill. . ."); *Abbott Lab.*, 47 F.3d at 1132-1133 (licensee failed to join patentee as voluntary plaintiff); *Prima Tek II, LLC*, 222 F.3d at 1376, 1381-1382 (same; issue was "whether any of the Appellees in this suit had standing to maintain an infringement action  . . . without joining . . . the owner of all six patents in suit."); *Philadelphia Brief Case Co.*, 145 F. Supp. at 429-430 (same).   By contrast, the facts are fundamentally different here, given that the patentee Intersil is obviously joined as a co-plaintiff with exclusive licensee Fairchild.  Thus, under the foregoing authority, standing is appropriate.

PI also makes a flawed attempt to rely on authority stating that a non-exclusive "right to sue" clause does not provide standing.  *See e.g. Ortho*, 52 F.3d at 1034.  However, the transfer of exclusive rights in this case far exceeds the mere non-exclusive "right to sue" at issue in the authority cited by PI.   Indeed, Intersil granted Fairchild the complete and exclusive right to prevent PI from making, using or selling the patented invention, even as to Intersil.  Fairchild has the right, with respect to PI, to "enforce the Patents," "to assert, litigate and prosecute claims of Infringement under the Patents" in any context, "to seek all equitable, injunctive, monetary and other relief" to "collect . . . any and all past damages," "to settle and compromise any disputes" with PI that are "related to the Patents," and "to threaten, commence, maintain or settle any claim, suit or proceeding based upon Infringement of the Patents."  [Ramsey Decl., Ex. 4 (Patent License Agreement, ¶3)]  In other words, Fairchild has the complete right to exclude PI from practicing the '719 Patent and to control PI's activity involving practice of the invention.  This is true "even as to Intersil."  It is not merely the right to sue, but the right to exclude in every respect within a particular domain—i.e. the domain of PI's practice of the invention.  This constitutes a transfer of "beneficial ownership of some of the patentee's proprietary rights," which indisputably confers standing.  *Ortho*, 52 F.3d at 1034.[4]  For these reasons Intersil and

---

[4] Similarly, a number of cases relied upon by PI are distinguishable because the patentee retained the same right as was purportedly granted exclusively to the licensee.  *See e.g. Ortho*, 52 F.3d at 1033-34 (patentee retained the same "exclusive" rights licensed to the licensee); *Rite-Hite Corp.*, 56 F.3d at 1552-1553 (not even clear that patent rights were being licensed, licensee had "no right . . . to exclude anyone from making, using, or selling the claimed invention" and patentee

Fairchild have standing to sue, and PI's motion to dismiss should be denied.

As admitted by PI, Intersil was, until March 30, 2006, the owner of all rights in the '719 Patent. At that time, Intersil transferred to Fairchild the right to exclude PI and completely control its activity regarding the '719 Patent. This was true "even as to Intersil." Rhetorically, PI's logic would mean that Intersil and Fairchild have no standing to sue or enforce the patent. Intersil could not independently sue PI without Fairchild, since it transferred to Fairchild the sole and exclusive rights to enforce the patent against PI. At the same time, Fairchild could proceed alone, but case law suggests that the better course is to join the patent owner. *Prima Tek II, L.L.C.*, 222 F.3d at 1381 (underlying policy of joinder rule is to prevent duplicative litigation by rights holders against a single accused infringer). Essentially, PI's logic would result in somehow granting PI freedom from suit since neither the owner nor the exclusive licensee would have standing to sue. This is obviously not the law. Joinder of the patent owner and exclusive licensee affords standing to both to proceed against a defendant.

### B.    The Court Should Not Transfer This Case To Delaware

PI's request to transfer this case to the District of Delaware should also be denied. This case involves entirely different parties and issues than are involved in the pending Delaware action. Transferring the case to Delaware would be contrary to the interests of justice and efficiency. Therefore, pursuant to 28 U.S.C. §1404(a), PI's motion should be denied and this case should proceed in this Court.

#### 1.    The Parties And Issues Before The Delaware Court Are Substantially Different Than The Parties And Issues Involved In The Instant Case

Contrary to PI's assertions, there is not substantial overlap between the instant matter and the case pending in the District of Delaware. First, the parties are completely different. PI brought the Delaware action against Fairchild Semiconductor Int'l, Inc and Fairchild

---

retained the same rights it had licensed). By contrast, here Intersil has granted Fairchild the exclusive right to prevent PI from making, using or selling the patented invention, Intersil has not retained those rights for itself and it cannot license any other party to do the same. [Ramsey Decl., Ex. 4 at ¶3] The fact that Intersil retained the right to sue other parties unrelated to PI is of no consequence to the question of whether Fairchild has standing to sue PI, which it clearly does.

Semiconductor Corp. The instant action, by contrast, is brought by Intersil and Fairchild Semiconductor Corp. against PI. Thus, Intersil is not a party to the Delaware action and Fairchild Semiconductor Int'l, Inc. is not a party to the instant action. [Ramsey Decl., Exs. 6, 7]

Moreover, there is no significant overlap of issues between the two actions. In the Delaware action, PI asserts U.S. Patent Nos. 6,107,851, 6,249,876, 6,229,366 and 4,811,075 against two different Fairchild entities and there are no other patents asserted by any party in the counterclaims. [*Id.*, Exs. 8, 9] By contrast, in the instant case, Intersil and Fairchild Semiconductor Corp. have sued PI for infringement of a completely different patent—the '719 Patent. [*Id.*, Ex. 7] Obviously, none of the patents-in-suit overlap between the cases. Such distinct patents, with distinct claim language and specifications, require independent determinations of claim construction, infringement and validity. *See e.g. ResQnet.com, Inc. v. LANSA, Inc.*, 3f46 F.3d 1374, 1384 (Fed. Cir. 2003) (independent claim construction required for different patents, even where language was similar).[5] Further, because different defendants are involved in the two actions, completely different products are alleged to infringe. Therefore, the jury trial in the Delaware action that will occur in October and December of this year will resolve only issues concerning the four PI patents asserted in that case, but will *not* resolve any issues concerning construction, infringement, validity or enforceability of the '719 Patent asserted in the instant action.

PI does not even contend that the Delaware action involves infringement of the '719 Patent. However, it concocts an outlandish argument that somehow the validity of the '719 Patent will be addressed in the Delaware action. This is untrue. The issues at stake in the

---

[5] PI attempts to argue that the cases substantially overlap based on the mere fact that a single claim of the '719 Patent uses most of the same wording as is used in one of the patents in suit in Delaware—Patent No. 4,811,075. [PI Brief, at 8, 11, Michael E. Jones Decl., Ex. H] However, the claim language is not identical. Given that the claim language, specifications and file histories are different between the patents, the precise scope of the claims necessarily must be determined independently. *See Datamize, Inc. v. Fid. Brokerage Servs.*, LLC, 2004 U.S. Dist. LEXIS 29100, *17-18 (E.D. Tex. 2004). Even where patents in two actions had identical specifications and similar language, no "substantial overlap" of issues was found and transfer was denied. *Id.* The Court observed that: "the Federal Circuit has held that where there are even small differences in the language of claims in related patents, the claim language in each patent should be construed independently." *Id.*

Delaware action are the infringement, validity and enforceability of *PI's* patents, including U.S Patent 4,811,075 with respect to which the '719 Patent is cited as prior art. [Ramsey Decl., Ex. 7, 8] The Delaware action will *not* involve any findings regarding the validity or enforceability of the '719 Patent, as no complaint, answer or counterclaim in that action asserts infringement of the '719 Patent. [*Id.*] In fact, the Delaware court is without jurisdiction to decide the validity or enforceability of the '719 Patent. *See Flexi-Mat Corp. v. Dallas Mfg. Co.*, 2006 U.S. Dist. LEXIS 19528, *39-40 (D. Mass. 2006) ("Without a case or controversy, a district court has no jurisdiction to make a declaratory judgment on the validity of claims."; court had no jurisdiction to decide validity of claims not alleged to be infringed). The '719 Patent is cited by Fairchild in the Delaware action as one of its prior art references. However, the primary prior art assertion actually involves not the '719 Patent, but rather its "parent" patent. But that does not confer jurisdiction to decide the validity of the '719 Patent where it is not alleged to be infringed.

For these reasons, there is absolutely no potential for inconsistent rulings between the cases. Simply put, the two cases involve distinct patents, which will require independent claim constructions and determinations of infringement, validity and enforceability. *See e.g. Datamize, Inc. v. Fid. Brokerage Servs., LLC*, 2004 U.S. Dist. LEXIS 29100, *17-18 (E.D. Tex. 2004) (fact that patent asserted in second action might be relevant to claim construction of patent asserted in first action did *not* support transfer because patent in first action not asserted in second action).[6] Therefore, as discussed in detail below, PI's motion to transfer to Delaware must be denied.

### 2.    The "First-To-File" Rule Does Not Support Transfer To Delaware

It is "well-established" that a plaintiff's choice of forum is "highly esteemed" and should be given deference. *Datamize, Inc.*, 2004 U.S. Dist. LEXIS 29100 at *23-24. The plaintiff's choice of a forum is "a paramount consideration in any determination of transfer request, and that choice should not be lightly disturbed." *Young v. Armstrong World Indus.*, 601 F. Supp. 399,

---

[6] Also, the fact that a claim in a second filed action could be asserted as a defensive theory in the first filed action does not support transfer of the second filed action to the venue in which the first action was filed. *See Rooster Prods. Int'l, Inc. v. Custom Leathercraft Mfg. Co.*, 2005 U.S. Dist. LEXIS 1643, 5-7 (W.D. Tex. 2005) (whether a claim could be brought as a permissive counterclaim is not the test to determine whether transfer is appropriate).

401 (N.D. Tex. 1984).[7]  The plaintiff's choice of forum is particularly important where, as is the case here, plaintiffs allege that defendant has engaged in infringing activity within that forum. *See Datamize, Inc.*, 2004 U.S. Dist. LEXIS 29100 at *23-25.  Intersil's and Fairchild's decision to bring this action in the Eastern District of Texas should be respected.

An exception to this general principle is the "first-to-file rule," by which a later-filed action may be transferred to a court in which a first-filed action is pending.  However, such transfer is only appropriate when the actions are so duplicative or involve such substantially similar issues that one court should decide both actions.  *See Rooster Prods. Int'l, Inc. v. Custom Leathercraft Mfg. Co.*, 2005 U.S. Dist. LEXIS 1643, *5-7 (W.D. Tex. 2005).  Here, because (a) the instant matter is the "first filed" action and (b) there is not substantial overlap of issues between the two actions, the first-to-file rule supports proceeding in Texas instead of Delaware.  PI's motion to transfer based on the first-to-file rule is disingenuous and must be denied.

To begin with, this action is the first and only action in which the '719 Patent is asserted to be infringed by anyone.  Therefore, contrary to PI's assertions, this case is the "first-filed" action.  The case *Cummins-Allison Corp. v. Glory Ltd.*, 2004 U.S. Dist. LEXIS 13839 (E.D. Tex. 2004) is instructive.  There, certain patents were asserted in an earlier-filed Illinois case and entirely different, but "related," patents were asserted in a later-filed Texas case involving the same parties.  The Texas court found that under these circumstances, the Texas case was "first-filed" with respect to the patents asserted in Texas and denied transfer on that basis:

> The Court finds that this case is the first-filed case and should proceed in this Court.  Although the patents are related and might involve the interpretation of identical claim terms, the patents are different patents than those in suit in the initial Illinois case.

*Id.*  Likewise, because the '719 Patent is not asserted in Delaware, the instant case is the "first

---

[7] Further, it has been observed that: "the judicial system inherently provides a plaintiff with his choice of forum: The existence of [forum choices] not only permits but indeed invites counsel in an adversary system, seeking to serve in his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983).

filed" action regarding that patent.  Indeed, here the patents are not even "related," thus the rule applies even more forcefully.  Therefore, the action should proceed in this court.

Second, the issues in the Delaware action and the instant action are so divergent that the "first-to-file" rule does not support transfer.  To determine whether there is substantial overlap of issues for purposes of the first to file rule, it is necessary to engage in a "comparison of the pleadings" to assess whether there is overlap in the "claims." *Rooster Prods. Int'l, Inc.*, 2005 U.S. Dist. LEXIS 1643 at *6.  A comparison of the Delaware complaint and the complaint in the instant action reveals that the four patents-in-suit in Delaware are not asserted in this case, nor is the sole patent at issue here asserted in Delaware.  [Ramsey Decl., Exs. 6, 7]  On that basis alone, it is evident there is no substantial overlap of issues.[8]  Therefore, the first-to-file rule does not apply and PI's motion to transfer should be denied.  *See id.* (denying motion to transfer where non-Texas action and Texas action involved different claims); *Datamize, Inc.*, 2004 U.S. Dist. LEXIS 29100 at *3, 7, 34 (denying transfer where non-Texas action involved the "parent" patent which was different, but related to the "child" patent asserted in Texas action).

As discussed above, the resolution of infringement, validity and enforceability of the four patents in suit in the Delaware action will in no way determine or resolve issues of infringement, validity and enforceability of the '719 Patent at issue in the instant action.  [*See supra* Section B.1.]  The fact that the content of each suit will require independent development weighs against transfer.  *See id.* at *10 (fact that "overall content of each suit" is "very capable of independent development" weighed against transfer).  Because there are different defendants, different accused products and different patent claims, requiring independent construction, there is no substantial overlap of issue and transfer is inappropriate. *See id.* at *11 (where "case involves different defendants, different patent claims, different claim scopes" and "different accused products," no substantial overlap of issues).  PI's motion to transfer should be denied.

---

[8] For this reason, the case *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971), relied upon by PI at pages 10-11 of its brief, is inapposite.  In the *Mann* case the <u>same patent</u> was the subject of a declaratory action of non-infringement in New York and an affirmative infringement action in Texas.  By contrast, here there is <u>no overlap of asserted patents whatsoever</u>.

**3.      It Would Be Unjust And Inefficient To Transfer This Case To Delaware**

A case should not be transferred where doing so would be contrary to "the convenience of parties and witnesses" or contrary to the "interest of justice." 28 U.S.C. §1404(a).  Similarly, even where the first-to-file rule might otherwise be applicable, transfer is inappropriate where it would be "unjust or inefficient."  *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993).  As PI correctly observes, courts consider "all relevant factors" to determine the propriety of transfer.  [PI Brief, at 13]  The party moving for transfer—in this case PI—bears the burden of proving that relevant factors support transfer.  *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 2006 U.S. Dist. LEXIS 16545 (E.D. Tex. 2006) ("The movant bears the burden of proof in demonstrating that transfer is warranted.").  If the moving party fails to carry that burden, the motion to transfer must be denied.  In the instant case, it would be highly inefficient and contrary to the convenience of the parties and witnesses, the interest of justice and public policy to transfer the action to Delaware.  PI has failed to carry its burden of proving otherwise.  For all of these reasons, PI's motion to transfer must be denied.

**a.      Transfer Is Inappropriate Because It Would Be Inconvenient For The Parties And Witnesses**

Courts consider the convenience and availability of parties and witnesses in determining whether transfer is appropriate.  *See e.g. Genentech*, 998 F.2d at 938.  In this case, it would be inconvenient for parties and witnesses to proceed in Delaware.  Two of the four parties—plaintiff Intersil and defendant PI—are located in California.  [Ramsey Decl., Ex. 6 at ¶¶3-4]  As PI points out, the inventor of the '719 Patent resides in Florida.[9]  Further, third-party Harris Corporation (from which Intersil acquired the asserted patent) is headquartered in Melbourne Florida.  [*Id.*, Ex. 9]  Similarly, the prosecuting attorney Charles E. Wands is located in Orlando Florida.  [*Id.*, Ex. 10]  Obviously these parties and witnesses are much closer to Texas than

---

[9] The fact that plaintiff Fairchild has a principal place of business in Maine, closer to Delaware does not weigh in favor of transfer, given that Fairchild itself has chosen Texas as a forum. *See Datamize, Inc.*, LLC, 2004 U.S. Dist. LEXIS 29100 at *26 (Where a plaintiff has chosen the forum, there is no inconvenience to plaintiff's own witnesses and transfer is inappropriate.)

Delaware, increasing the convenience and reducing the cost of obtaining attendance at trial.[10]  At the very least, there is no more connection to Delaware than to Texas.  Accordingly, PI has not carried its burden on this factor and the plaintiff's choice of forum should control.  *See Datamize, Inc.*, 2004 U.S. Dist. LEXIS 29100 at *27-28 (proximity of majority of parties to chosen forum weighed against transfer).

PI does not provide any evidence to the contrary, but merely professes not to be aware of any fact witnesses in Texas.  This is a complete failure by PI to carry its burden on this factor and weighs against transfer.  *See Datamize, Inc.*, 2004 U.S. Dist. LEXIS 29100 at *26-27 (rejecting argument that Defendant was "not aware of any" witnesses in Texas; "Because Defendants are unaware of any Datamize or defense witnesses located in Texas does not mean none exist.  A generalized argument such as this does not overcome Defendants' burden.").  For all of these reasons, this factor supports denial of PI's motion.

### b.  Transfer Is Inappropriate In Light Of The Accessibility And Location Of Sources Of Proof

The accessibility and location of proof is also a relevant factor to consider.  *Network-1 Sec. Solutions, Inc.*, 2006 U.S. Dist. LEXIS 16545 at *6.  The documentary evidence of two of the three parties, Intersil and PI are likely to be located in California.  Similarly, the documentary evidence in the possession of the inventor and prosecution counsel is likely to be located in Florida.  These sources of proof are closer to Texas than Delaware, weighing against transfer.

### c.  Transfer Is Inappropriate Because There Is No Possibility Of Consolidation With The Delaware Action And Transfer Would Only Result In Delay And Prejudice

Courts also consider the possibility of consolidation, in determining whether transfer is appropriate.  *See e.g. Genentech*, 998 F.2d at 938.  There is no possibility of consolidation in Delaware of the action pending there and the instant action.  The Delaware action involves four patents not asserted in the instant case and the patent asserted here is not asserted in Delaware.

---

[10] The cost of obtaining attendance of witnesses at trial was not even addressed by PI in its motion.  Therefore PI has not met its burden on this factor.  *See Datamize, Inc.*, 2004 U.S. Dist. LEXIS 29100 at *28 (finding same)

Staggering inefficiencies would result from any attempt to consolidate the cases. The Delaware action has progressed very nearly to trial. Substantial discovery has been conducted regarding infringement, validity and enforceability of the four patents at issue in that case. Summary judgment motions have been heard and ruled upon. Pre-trial materials have been exchanged. This activity has been with respect to four patents that are not involved in the instant dispute.

To inject into the Delaware case an entirely new cause of action for infringement of the '719 Patent would require litigation of infringement, invalidity and enforceability of the '719 Patent, which will not otherwise be addressed. To do so would require a continuance of the scheduled trial until the parties were able to litigate all of the issues in the case. Given how close the Delaware action is to trial, the parties would only be prejudiced by delay and burdened by significant inefficiencies. *See Datamize, Inc.*, 2004 U.S. Dist. LEXIS 29100 at *28-29 (where issues of delay did not weigh clearly in favor of defendant, defendant failed to carry burden and transfer inappropriate). Accordingly, PI has not carried its burden on this factor.

### d. Transfer Is Inappropriate Because The Actions Involve Different Parties

Courts consider whether the real parties in interest are the same in two actions, in determining whether transfer is appropriate. *See e.g. Genentech*, 998 F.2d at 938. The Delaware action does not involve the real parties in interest in this case. In particular, as PI concedes in its brief, plaintiff Intersil in this action is not a party to the Delaware action. The fact that Intersil has communicated with Fairchild about the Delaware case and responded to a third-party discovery subpoena, does *not* make it party to the Delaware action. Intersil is nothing but a bystander in the distinct, unrelated dispute in Delaware. In fact, the only appearance Intersil made in Delaware was to file a motion to quash on the basis that discovery related to the instant action should be left to and decided by this Court. [Ramsey Decl., ¶15] This is simply not a basis to argue that Intersil has somehow acquiesced to the primacy of the Delaware court; indeed, it suggests the opposite. Transfer to Delaware would be unjust and inefficient to Intersil, which has chosen the Eastern District of Texas as its desired forum. Therefore, PI has failed to

- 13 -

carry its burden and this factor weighs against transfer.

### e.     Matters Of Public Interest Weigh Against Transfer

Several public interest factors are considered in determining the propriety of transfer, including: "(1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating local disputes; and, (4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws." *In re Triton Secs. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999).

Proceeding in Texas would pose no administrative difficulties. The substantial experience of this Court with patent cases and the particularized rules of procedure adopted in this venue for patent cases will lead to great efficiencies. Further, as discussed, because the cases involve different parties, different patents and different accused products there is not substantial overlap of issues between the two cases. Accordingly, there will be no inefficiencies related to inconsistent rulings or duplicative efforts if transfer is denied. *Datamize, Inc.*, 2004 U.S. Dist. LEXIS 29100 at *30-31. Given the differences between the cases, PI's assertion that pre-trial preparations in this action would be "wasted" pending the final outcome of the Delaware action is incorrect. [PI Brief, at 14][11]

Further, the public interest factors of jury duty burden and local interest in adjudicating local disputes weigh in favor of proceeding with the case in Texas. *Id.* at *32. The infringement of the '719 Patent has occurred in Texas, therefore citizens in the District have an interest in

---

[11] Even if particular findings in the Delaware case were assumed to be relevant to issues in this case, that fact is still not a basis for transferring this action to Delaware, as no inefficiency would result from proceeding in Texas. The bifurcated Delaware trial will occur in October and December of this year. Findings from that trial will be available for consideration by the Court or jury in this action well before any dispositive motions are heard or trial proceeds in this case. If this action, which is only beginning, were transferred to Delaware, the situation would be precisely the same. The findings from the imminent Delaware trial would be available to a Delaware court or jury at the same time they would be available if this case proceeds in Texas. Thus, contrary to PI's assertions, no administrative efficiencies would result from transfer, nor are there any inefficiencies imposed by proceeding in Texas.

resolving the dispute.  PI has failed to show that there is any greater connection with Delaware. PI has produced no evidence of any greater burden on a potential jury in the Eastern District of Texas, a lesser burden on any jury in Delaware, or a greater interest among the citizens of Delaware to try this case.  Finally, PI does not contend that any choice of law conflicts that would arise if this case is not transferred.  These factors supports denial of PI's motion as well.

## III.   CONCLUSION

For the foregoing reasons, this Court should deny PI's motion to dismiss for lack of standing and should deny PI's motion to transfer this case to Delaware.

Respectfully submitted by

OF COUNSEL:
G. Hopkins Guy, III (SBN 124811)
Bas de Blank (SBN 191487)
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Carl R. Roth, Texas Bar No. 901984225
cr@rothfirm.com
Michael C. Smith, Texas Bar No. 900641877
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 North Wellington, Suite 200
P.O. Box 876
Marshall, Texas  75671
Tel: (903) 935-1665
Fax: (903) 935-1797

Attorneys for Plaintiffs,
FAIRCHILD SEMICONDUCTOR
CORPORATION, INTERSIL CORPORATION,
INTERSIL AMERICAS, INC.

SHORE CHAN BRAGALONE, L.L.P.
Michael Shore, Texas Bar No. 18294915
shore@shorechan.com
Jeffrey R. Bragalone, Texas Bar No. 02855775
jbragalone@shorechan.com
325 North St. Paul, Suite 4450
Dallas, Texas 75201
Tel: (214) 593-9110
Fax: (214) 593-9111

Attorneys for Plaintiffs,
INTERSIL CORPORATION, INTERSIL
AMERICAS, INC.

- 15 -

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 26th day of July, 2006.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

_____
Michael C. Smith

Substitute Form PTO-1595

*9-27-06*

## RECORDATION FORM COVER SHEET
## PATENTS ONLY

09-30-1999



Assistant Commissioner for Patents: Please record the attached original document

101158628

1. Name of conveying party(ies):
**Harris Corporation**

2. Name and address of receiving party(ies):
**Intersil Corporation**
**2401 Palm Bay Road, N.E.**
**Palm Bay, FL 32905**

Additional name(s) attached? ☐ Yes ■ No

Additional names/addresses attached? ☐ Yes ■ No

3. Nature of conveyance:
   - ■ Assignment
   - ☐ Merger
   - ☐ Security Agreement
   - ☐ Change of Name
   - ☐ Other:

GEN

EP 27 1999

Execution Date: **August 13, 1999**

4. Application number(s) or patent number(s):
If this document is being filed with a new application, the execution date of the application is:
A. Patent Application No.(s):      B. Patent No.(s): 4236231

Additional numbers attached? ■ Yes ☐ No

5. Name/address of party to whom correspondence concerning document should be mailed:

**Timothy A. French**
**Fish & Richardson P.C.**
**225 Franklin Street**
**Boston, MA 02110-2804**

6. Total number of applications/patents involved: **806**

7. Total fee (37 CFR 3.41): **$32,240.00**
   - ■ Enclosed
   - ☐ Authorized to charge deposit account

8. Deposit account number: **06-1050**
If the fee above is being charged to deposit account, a duplicate copy of this cover sheet is attached. Please apply any additional charges, or any credits, to our Deposit Account No. 06-1050.

09/29/1999 JSHADAZZ 00000025 4236231

01 FC:581                    32240.00 OP

DO NOT USE THIS SPACE

9. Statement and signature: *To the best of my knowledge and belief, the foregoing information is true and correct and the attached is the original document.*

**Timothy A. French**                Reg No 30,175            09/21/99
Name of Person Signing          Signature                        Date

Total number of pages including cover sheet, attachments, and document: **1**

Date of Deposit Sept 21 1999
I hereby certify under 37 CFR 1.8(a) that this correspondence is being deposited with the United States Postal Service as **first class mail** with sufficient postage on the date indicated above and is addressed to the Assistant Commissioner for Patents, Washington, D.C. 20231.

**PATENT**
**REEL: 010247 FRAME: 0043**

# HARRIS PATENT ASSIGNMENT

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned Harris Corporation, a corporation of Delaware having a place of business at 1025 West NASA Blvd., Melbourne, Florida 32919 ("Harris"), does hereby assign, transfer and set over to Intersil Corporation, a corporation of Delaware having a place of business at 2401 Palm Bay Road, N.E., Melbourne, Florida 32905, its successors, legal representatives and assigns (hereinafter "Assignee") the entire right, title and interest in and to each of the United States patents and patent applications listed in the attached Appendix A, together with the inventions disclosed and/or claimed therein, as well as all applications for patent and any Letters Patent which may be granted therefor, in the United States of America and in all foreign countries, and in and to any and all divisions, continuations, continuations-in-part of said applications, or re-issues or extensions of said patents or Letters Patent, and all rights under the International Convention for the Protection of Industrial Property and similar agreements (hereinafter individually and collectively "Patents").

Harris hereby appoints Assignee as its agent and attorney-in-fact to conduct all business before the United States Patent & Trademark Office and the patent offices in all foreign countries in the name of Harris in connection with said Patents.

Harris hereby authorizes and requests that the United States Patent & Trademark Office, and the patent offices of all foreign countries, to issue any and all Letters Patent of the United States and patents in all foreign countries resulting from said application or any division or divisions or continuing applications thereof in the United States and all foreign countries to Assignee, as assignee of the entire interest, and Harris hereby covenants that it has full right to convey the entire interest herein assigned, and that it has not executed and will not execute, any agreement in conflict herewith.

Harris further agrees to cooperate with the Assignee in every way possible and to do all affirmative acts, and to execute all papers which counsel for Assignee shall advise are necessary and/or desirable without charge to Assignee in connection with said Patents including, without limitation, the execution of separate assignments for filing in the United States Patent & Trademark Office and the patent offices of all foreign countries in connection with said Patents.

The undersigned Harris hereby grants to Howard Rothman; John DeAngelis, Reg. No. 30,622; Ferdinand M. Romano, Reg. No. 32,752; and L. Lawton Rogers, III, Reg. No. 24,302 the power to insert on this assignment any further identification which may be necessary or desirable in order to comply with the rules of the United States Patent Office for recordation of this document.


IN WITNESS WHEREOF,


Date     August 13, 1999            HARRIS CORPORATION

By: _Scott T. Mikuen_ (Signature)

         Scott T. Mikuen  (Printed Name)

         Assistant Secretary (Title)


ATTEST:


[SEAL]


_____
Secretary         Date     August 13, 1999

# APPENDIX A
# HARRIS CORPORATION
# ISSUED PATENTS

| Patent Number | Issue Date |
|---|---|
| 4236231 | 25-Nov-1980 |
| 4260431 | 07-Apr-1981 |
| 4272833 | 09-Jun-1981 |
| 4281449 | 04-Aug-1981 |
| 4283236 | 11-Aug-1981 |
| 4288911 | 15-Sep-1981 |
| 4290831 | 22-Sep-1981 |
| 4292730 | 06-Oct-1981 |
| 4299024 | 10-Nov-1981 |
| 4301383 | 17-Nov-1981 |
| 4305106 | 08-Dec-1981 |
| 4309813 | 12-Jan-1982 |
| 4312046 | 19-Jan-1982 |
| 4319257 | 09-Mar-1982 |
| 4334646 | 15-Jun-1982 |
| 4368395 | 11-Jan-1983 |
| 4380710 | 19-Apr-1983 |
| 4389721 | 21-Jun-1983 |
| 4398142 | 09-Aug-1983 |
| 4401940 | 30-Aug-1983 |
| 4402002 | 30-Aug-1983 |
| 4402065 | 30-Aug-1983 |
| 4403399 | 13-Sep-1983 |
| 4409686 | 11-Oct-1983 |
| 4420766 | 13-Dec-1983 |
| 4446444 | 01-May-1984 |
| 4450414 | 22-May-1984 |
| 4454432 | 12-Jun-1984 |
| 4456918 | 26-Jun-1984 |
| 4461000 | 17-Jul-1984 |
| 4462020 | 24-Jul-1984 |
| 4464631 | 07-Aug-1984 |
| 4464825 | 14-Aug-1984 |
| 4466179 | 21-Aug-1984 |
| 4468414 | 28-Aug-1984 |
| 4471236 | 11-Sep-1984 |
| 4471376 | 11-Sep-1984 |
| 4472648 | 18-Sep-1984 |
| 4480219 | 30-Oct-1984 |
| 4495537 | 22-Jan-1985 |
| 4495694 | 29-Jan-1985 |
| 4503387 | 05-Mar-1985 |
| 4514802 | 30-Apr-1985 |
| 4524246 | 18-Jun-1985 |
| 4528461 | 09-Jul-1985 |
| 4528462 | 09-Jul-1985 |
| 4528504 | 09-Jul-1985 |
| 4532003 | 30-Jul-1985 |
| 4532481 | 30-Jul-1985 |
| 4536231 | 20-Aug-1985 |
| 4546539 | 15-Oct-1985 |
| 4554059 | 19-Nov-1985 |
| 4559608 | 17-Dec-1985 |

Page 1

| Patent Number | Issue Date |
|---|---|
| 4560948 | 24-Dec-1985 |
| 4566796 | 28-Jan-1986 |
| 4567385 | 28-Jan-1986 |
| 4567578 | 28-Jan-1986 |
| 4578859 | 01-Apr-1986 |
| 4580131 | 01-Apr-1986 |
| 4581548 | 08-Apr-1986 |
| 4584660 | 22-Apr-1986 |
| 4586193 | 29-Apr-1986 |
| 4590664 | 27-May-1986 |
| 4591826 | 27-May-1986 |
| 4594265 | 10-Jun-1986 |
| 4595608 | 17-Jun-1986 |
| 4596068 | 24-Jun-1986 |
| 4599789 | 15-Jul-1986 |
| 4606936 | 19-Aug-1986 |
| 4608530 | 26-Aug-1986 |
| 4613772 | 23-Sep-1986 |
| 4616178 | 07-Oct-1986 |
| 4618743 | 21-Oct-1986 |
| 4620179 | 28-Oct-1986 |
| 4624749 | 25-Nov-1986 |
| 4631636 | 23-Dec-1986 |
| 4632557 | 30-Dec-1986 |
| 4633107 | 30-Dec-1986 |
| 4636743 | 13-Jan-1987 |
| 4636744 | 13-Jan-1987 |
| 4639684 | 27-Jan-1987 |
| 4639896 | 27-Jan-1987 |
| 4644191 | 17-Feb-1987 |
| 4644192 | 17-Feb-1987 |
| 4644383 | 17-Feb-1987 |
| 4650696 | 17-Mar-1987 |
| 4652895 | 24-Mar-1987 |
| 4658253 | 14-Apr-1987 |
| 4665327 | 12-May-1987 |
| 4665425 | 12-May-1987 |
| 4666737 | 19-May-1987 |
| 4669884 | 02-Jun-1987 |
| 4670769 | 02-Jun-1987 |
| 4675798 | 23-Jun-1987 |
| 4677321 | 30-Jun-1987 |
| 4682057 | 21-Jul-1987 |
| 4682059 | 21-Jul-1987 |
| 4683485 | 28-Jul-1987 |
| 4684055 | 04-Aug-1987 |
| 4686384 | 11-Aug-1987 |
| 4694313 | 15-Sep-1987 |
| 4698589 | 06-Oct-1987 |
| 4701644 | 20-Oct-1987 |
| 4702000 | 27-Oct-1987 |
| 4702967 | 27-Oct-1987 |
| 4703505 | 27-Oct-1987 |
| 4703566 | 03-Nov-1987 |
| 4705596 | 10-Nov-1987 |
| 4705597 | 10-Nov-1987 |
| 4708747 | 24-Nov-1987 |
| 4713260 | 15-Dec-1987 |

58

Page 2

| Patent Number | Issue Date |
|---|---|
| 4713681 | 15-Dec-1987 |
| 4716071 | 29-Dec-1987 |
| 4717680 | 05-Jan-1988 |
| 4717847 | 05-Jan-1988 |
| 4719598 | 12-Jan-1988 |
| 4720739 | 19-Jan-1988 |
| 4728820 | 01-Mar-1988 |
| 4729008 | 01-Mar-1988 |
| 4733168 | 22-Mar-1988 |
| 4734885 | 29-Mar-1988 |
| 4734886 | 29-Mar-1988 |
| 4752591 | 21-Jun-1988 |
| 4753851 | 28-Jun-1988 |
| 4754388 | 28-Jun-1988 |
| 4755770 | 05-Jul-1988 |
| 4757363 | 12-Jul-1988 |
| 4757528 | 12-Jul-1988 |
| 4760433 | 26-Jul-1988 |
| 4761570 | 02-Aug-1988 |
| 4771016 | 13-Sep-1988 |
| 4780688 | 25-Oct-1988 |
| 4781853 | 01-Nov-1988 |
| 4783637 | 08-Nov-1988 |
| 4786608 | 22-Nov-1988 |
| 4789426 | 06-Dec-1988 |
| 4795718 | 03-Jan-1989 |
| 4801065 | 31-Jan-1989 |
| 4804865 | 14-Feb-1989 |
| 4807012 | 21-Feb-1989 |
| 4808547 | 28-Feb-1989 |
| 4812962 | 14-Mar-1989 |
| 4814285 | 21-Mar-1989 |
| 4818725 | 04-Apr-1989 |
| 4818901 | 04-Apr-1989 |
| 4820968 | 11-Apr-1989 |
| 4823173 | 18-Apr-1989 |
| 4823300 | 18-Apr-1989 |
| 4839711 | 13-Jun-1989 |
| 4845052 | 04-Jul-1989 |
| 4851078 | 25-Jul-1989 |
| 4851257 | 25-Jul-1989 |
| 4854986 | 08-Aug-1989 |
| 4855625 | 08-Aug-1989 |
| 4857764 | 15-Aug-1989 |
| 4859280 | 22-Aug-1989 |
| 4862231 | 29-Aug-1989 |
| 4868778 | 19-Sep-1989 |
| 4873564 | 10-Oct-1989 |
| 4876579 | 24-Oct-1989 |
| 4879520 | 07-Nov-1989 |
| 4879523 | 07-Nov-1989 |
| 4881111 | 14-Nov-1989 |
| 4882698 | 21-Nov-1989 |
| 4888741 | 19-Dec-1989 |
| 4891604 | 02-Jan-1990 |
| 4891606 | 02-Jan-1990 |
| 4893088 | 09-Jan-1990 |
| 4897362 | 30-Jan-1990 |

Page 3

PATENT
REEL: 010247 FRAME: 0046

| Patent Number | Issue Date |
|---|---|
| 4897366 | 30-Jan-1990 |
| 4897567 | 30-Jan-1990 |
| 4900689 | 13-Feb-1990 |
| 4908566 | 13-Mar-1990 |
| 4908683 | 13-Mar-1990 |
| 4912053 | 27-Mar-1990 |
| 4914501 | 03-Apr-1990 |
| 4916497 | 10-Apr-1990 |
| 4923820 | 08-May-1990 |
| 4923826 | 08-May-1990 |
| 4927777 | 22-May-1990 |
| 4929566 | 29-May-1990 |
| 4929568 | 29-May-1990 |
| 4929923 | 29-May-1990 |
| 4937774 | 26-Jun-1990 |
| 4941027 | 10-Jul-1990 |
| 4945070 | 31-Jul-1990 |
| 4945262 | 31-Jul-1990 |
| 4948746 | 14-Aug-1990 |
| 4949296 | 14-Aug-1990 |
| 4951102 | 21-Aug-1990 |
| 4956306 | 11-Sep-1990 |
| 4968628 | 06-Nov-1990 |
| 4968900 | 06-Nov-1990 |
| 4970573 | 13-Nov-1990 |
| 4970677 | 13-Nov-1990 |
| 4975751 | 04-Dec-1990 |
| 4978868 | 18-Dec-1990 |
| 4978925 | 18-Dec-1990 |
| 4979011 | 18-Dec-1990 |
| 4980651 | 25-Dec-1990 |
| 4982194 | 01-Jan-1991 |
| 4988902 | 29-Jan-1991 |
| 5008719 | 16-Apr-1991 |
| 5010377 | 23-Apr-1991 |
| 5014055 | 07-May-1991 |
| 5014108 | 07-May-1991 |
| 5015877 | 14-May-1991 |
| 5015887 | 14-May-1991 |
| 5021359 | 04-Jun-1991 |
| 5028824 | 02-Jul-1991 |
| 5028973 | 02-Jul-1991 |
| 5030862 | 09-Jul-1991 |
| 5032529 | 16-Jul-1991 |
| 5034343 | 23-Jul-1991 |
| 5034789 | 23-Jul-1991 |
| 5036219 | 30-Jul-1991 |
| 5037765 | 06-Aug-1991 |
| 5038248 | 06-Aug-1991 |
| 5039888 | 13-Aug-1991 |
| 5047974 | 10-Sep-1991 |
| 5051619 | 24-Sep-1991 |
| 5051949 | 24-Sep-1991 |
| 5053345 | 01-Oct-1991 |
| 5053353 | 01-Oct-1991 |
| 5057895 | 15-Oct-1991 |
| 5059982 | 22-Oct-1991 |
| 5060192 | 22-Oct-1991 |

Page 4

PATENT
REEL: 010247 FRAME: 0047

| Patent Number | Issue Date |
| --- | --- |
| 5066995 | 19-Nov-1991 |
| 5070388 | 03-Dec-1991 |
| 5070451 | 03-Dec-1991 |
| 5070596 | 10-Dec-1991 |
| 5079176 | 07-Jan-1992 |
| 5079608 | 07-Jan-1992 |
| 5079734 | 07-Jan-1992 |
| 5081061 | 14-Jan-1992 |
| 5081063 | 14-Jan-1992 |
| 5081410 | 14-Jan-1992 |
| 5084839 | 28-Jan-1992 |
| 5085084 | 04-Feb-1992 |
| 5086242 | 04-Feb-1992 |
| 5091331 | 25-Feb-1992 |
| 5091336 | 25-Feb-1992 |
| 5095343 | 10-Mar-1992 |
| 5096850 | 17-Mar-1992 |
| 5097319 | 17-Mar-1992 |
| 5105099 | 14-Apr-1992 |
| 5107312 | 21-Apr-1992 |
| 5111268 | 05-May-1992 |
| 5113361 | 12-May-1992 |
| 5117282 | 26-May-1992 |
| 5118632 | 02-Jun-1992 |
| 5119321 | 02-Jun-1992 |
| 5120669 | 09-Jun-1992 |
| 5130569 | 14-Jul-1992 |
| 5134321 | 28-Jul-1992 |
| 5138319 | 11-Aug-1992 |
| 5138413 | 11-Aug-1992 |
| 5140326 | 18-Aug-1992 |
| 5142244 | 25-Aug-1992 |
| 5148475 | 15-Sep-1992 |
| 5150120 | 22-Sep-1992 |
| 5151953 | 29-Sep-1992 |
| 5164802 | 17-Nov-1992 |
| 5184128 | 02-Feb-1993 |
| 5185292 | 09-Feb-1993 |
| 5194867 | 16-Mar-1993 |
| 5196373 | 23-Mar-1993 |
| 5196737 | 23-Mar-1993 |
| 5198385 | 30-Mar-1993 |
| 5200733 | 06-Apr-1993 |
| 5206821 | 27-Apr-1993 |
| 5214329 | 25-May-1993 |
| 5217919 | 08-Jun-1993 |
| 5218213 | 08-Jun-1993 |
| 5218220 | 08-Jun-1993 |
| 5218321 | 08-Jun-1993 |
| 5220868 | 22-Jun-1993 |
| 5228192 | 20-Jul-1993 |
| 5228330 | 20-Jul-1993 |
| 5229661 | 20-Jul-1993 |
| 5233289 | 03-Aug-1993 |
| 5235205 | 10-Aug-1993 |
| 5240876 | 31-Aug-1993 |
| 5241213 | 31-Aug-1993 |
| 5243211 | 07-Sep-1993 |



Page 5

| Patent Number | Issue Date |
| --- | --- |
| 5247199 | 21-Sep-1993 |
| 5248894 | 28-Sep-1993 |
| 5248901 | 28-Sep-1993 |
| 5248932 | 28-Sep-1993 |
| 5258939 | 02-Nov-1993 |
| 5260590 | 09-Nov-1993 |
| 5262689 | 16-Nov-1993 |
| 5262976 | 16-Nov-1993 |
| 5264719 | 23-Nov-1993 |
| 5265225 | 23-Nov-1993 |
| 5266135 | 30-Nov-1993 |
| 5270265 | 14-Dec-1993 |
| 5270569 | 14-Dec-1993 |
| 5272104 | 21-Dec-1993 |
| 5276633 | 04-Jan-1994 |
| 5279850 | 18-Jan-1994 |
| 5283461 | 01-Feb-1994 |
| 5287068 | 15-Feb-1994 |
| 5287071 | 15-Feb-1994 |
| 5289336 | 22-Feb-1994 |
| 5293052 | 08-Mar-1994 |
| 5298434 | 29-Mar-1994 |
| 5300877 | 05-Apr-1994 |
| 5302859 | 12-Apr-1994 |
| 5306650 | 26-Apr-1994 |
| 5306944 | 26-Apr-1994 |
| 5307023 | 26-Apr-1994 |
| 5311054 | 10-May-1994 |
| 5311070 | 10-May-1994 |
| 5312262 | 17-May-1994 |
| 5315144 | 24-May-1994 |
| 5317184 | 31-May-1994 |
| 5319757 | 07-Jun-1994 |
| 5322804 | 21-Jun-1994 |
| 5323036 | 21-Jun-1994 |
| 5327006 | 05-Jul-1994 |
| 5329187 | 12-Jul-1994 |
| 5332931 | 26-Jul-1994 |
| 5334273 | 02-Aug-1994 |
| 5334929 | 02-Aug-1994 |
| 5335132 | 02-Aug-1994 |
| 5338960 | 16-Aug-1994 |
| 5341009 | 23-Aug-1994 |
| 5341335 | 23-Aug-1994 |
| 5345236 | 06-Sep-1994 |
| 5347169 | 13-Sep-1994 |
| 5350935 | 27-Sep-1994 |
| 5352327 | 04-Oct-1994 |
| 5357089 | 18-Oct-1994 |
| 5359211 | 25-Oct-1994 |
| 5359236 | 25-Oct-1994 |
| 5362667 | 08-Nov-1994 |
| 5366932 | 22-Nov-1994 |
| 5367211 | 22-Nov-1994 |
| 5369309 | 29-Nov-1994 |
| 5370568 | 06-Dec-1994 |
| 5373183 | 13-Dec-1994 |
| 5382541 | 17-Jan-1995 |

Page 6

| Patent Number | Issue Date |
|---|---|
| 5382825 | 17-Jan-1995 |
| 5382916 | 17-Jan-1995 |
| 5387555 | 07-Feb-1995 |
| 5391903 | 21-Feb-1995 |
| 5395774 | 07-Mar-1995 |
| 5397714 | 14-Mar-1995 |
| 5399892 | 21-Mar-1995 |
| 5406223 | 11-Apr-1995 |
| 5416351 | 16-May-1995 |
| 5418002 | 23-May-1995 |
| 5420499 | 30-May-1995 |
| 5422288 | 06-Jun-1995 |
| 5423889 | 13-Jun-1995 |
| 5424563 | 13-Jun-1995 |
| 5428492 | 27-Jun-1995 |
| 5429958 | 04-Jul-1995 |
| 5429993 | 04-Jul-1995 |
| 5434357 | 18-Jul-1995 |
| 5436189 | 25-Jul-1995 |
| 5438221 | 01-Aug-1995 |
| 5440506 | 08-Aug-1995 |
| 5446316 | 29-Aug-1995 |
| 5446368 | 29-Aug-1995 |
| 5448100 | 05-Sep-1995 |
| 5448102 | 05-Sep-1995 |
| 5450326 | 12-Sep-1995 |
| 5450339 | 12-Sep-1995 |
| 5451263 | 19-Sep-1995 |
| 5455442 | 03-Oct-1995 |
| 5455782 | 03-Oct-1995 |
| 5463344 | 31-Oct-1995 |
| 5466963 | 14-Nov-1995 |
| 5468668 | 21-Nov-1995 |
| 5469556 | 21-Nov-1995 |
| 5471131 | 28-Nov-1995 |
| 5473193 | 05-Dec-1995 |
| 5481129 | 02-Jan-1996 |
| 5493207 | 20-Feb-1996 |
| 5493581 | 20-Feb-1996 |
| 5497013 | 05-Mar-1996 |
| 5504033 | 02-Apr-1996 |
| 5504449 | 02-Apr-1996 |
| 5508551 | 16-Apr-1996 |
| 5515402 | 07-May-1996 |
| 5515417 | 07-May-1996 |
| 5515434 | 07-May-1996 |
| 5516625 | 14-May-1996 |
| 5517047 | 14-May-1996 |
| 5517058 | 14-May-1996 |
| 5517565 | 14-May-1996 |
| 5519732 | 21-May-1996 |
| 5521436 | 28-May-1996 |
| 5525869 | 11-Jun-1996 |
| 5526392 | 11-Jun-1996 |
| 5526768 | 18-Jun-1996 |
| 5528682 | 18-Jun-1996 |
| 5532635 | 02-Jul-1996 |
| 5539707 | 23-Jul-1996 |

Page 7

PATENT
REEL: 010247 FRAME: 0050

| Patent Number | Issue Date |
|---|---|
| 5541435 | 30-Jul-1996 |
| 5541538 | 30-Jul-1996 |
| 5544095 | 06-Aug-1996 |
| 5546038 | 13-Aug-1996 |
| 5547896 | 20-Aug-1996 |
| 5548542 | 20-Aug-1996 |
| 5552345 | 03-Sep-1996 |
| 5557175 | 17-Sep-1996 |
| 5561303 | 01-Oct-1996 |
| 5561607 | 01-Oct-1996 |
| 5563834 | 08-Oct-1996 |
| 5567978 | 22-Oct-1996 |
| 5569620 | 29-Oct-1996 |
| 5569957 | 29-Oct-1996 |
| 5570392 | 29-Oct-1996 |
| 5570407 | 29-Oct-1996 |
| 5572161 | 05-Nov-1996 |
| 5572162 | 05-Nov-1996 |
| 5574572 | 12-Nov-1996 |
| 5574609 | 12-Nov-1996 |
| 5574618 | 12-Nov-1996 |
| 5574671 | 12-Nov-1996 |
| 5576654 | 19-Nov-1996 |
| 5576695 | 19-Nov-1996 |
| 5577656 | 26-Nov-1996 |
| 5580816 | 03-Dec-1996 |
| 5581444 | 03-Dec-1996 |
| 5581475 | 03-Dec-1996 |
| 5583442 | 10-Dec-1996 |
| 5585310 | 17-Dec-1996 |
| 5585661 | 17-Dec-1996 |
| 5586072 | 17-Dec-1996 |
| 5587103 | 24-Dec-1996 |
| 5594261 | 14-Jan-1997 |
| 5598157 | 28-Jan-1997 |
| 5602052 | 11-Feb-1997 |
| 5602054 | 11-Feb-1997 |
| 5603779 | 18-Feb-1997 |
| 5606288 | 25-Feb-1997 |
| 5608259 | 04-Mar-1997 |
| 5608264 | 04-Mar-1997 |
| 5610093 | 11-Mar-1997 |
| 5610792 | 11-Mar-1997 |
| 5614422 | 25-Mar-1997 |
| 5614852 | 25-Mar-1997 |
| 5614867 | 25-Mar-1997 |
| 5617090 | 01-Apr-1997 |
| 5617344 | 01-Apr-1997 |
| 5617473 | 01-Apr-1997 |
| 5618752 | 08-Apr-1997 |
| 5619270 | 08-Apr-1997 |
| 5621307 | 15-Apr-1997 |
| 5621355 | 15-Apr-1997 |
| 5621477 | 15-Apr-1997 |
| 5621478 | 15-Apr-1997 |
| 5622878 | 22-Apr-1997 |
| 5622890 | 22-Apr-1997 |
| 5625566 | 29-Apr-1997 |

Page 8

| Patent Number | Issue Date |
|---|---|
| 5627489 | 06-May-1997 |
| 5631599 | 20-May-1997 |
| 5633180 | 27-May-1997 |
| 5633815 | 27-May-1997 |
| 5636274 | 03-Jun-1997 |
| 5637908 | 10-Jun-1997 |
| 5639688 | 17-Jun-1997 |
| 5640300 | 17-Jun-1997 |
| 5640346 | 17-Jun-1997 |
| 5642247 | 24-Jun-1997 |
| 5643821 | 01-Jul-1997 |
| 5644309 | 01-Jul-1997 |
| 5646067 | 08-Jul-1997 |
| 5648678 | 15-Jul-1997 |
| 5649009 | 15-Jul-1997 |
| 5650344 | 22-Jul-1997 |
| 5650639 | 22-Jul-1997 |
| 5650658 | 22-Jul-1997 |
| 5650971 | 22-Jul-1997 |
| 5652153 | 29-Jul-1997 |
| 5654226 | 05-Aug-1997 |
| 5654662 | 05-Aug-1997 |
| 5654991 | 05-Aug-1997 |
| 5656512 | 12-Aug-1997 |
| 5659261 | 19-Aug-1997 |
| 5659269 | 19-Aug-1997 |
| 5659570 | 19-Aug-1997 |
| 5661736 | 26-Aug-1997 |
| 5663860 | 02-Sep-1997 |
| 5665634 | 09-Sep-1997 |
| 5666083 | 09-Sep-1997 |
| 5668397 | 16-Sep-1997 |
| 5668409 | 16-Sep-1997 |
| 5668468 | 16-Sep-1997 |
| 5669599 | 23-Sep-1997 |
| 5670413 | 23-Sep-1997 |
| 5670799 | 23-Sep-1997 |
| 5671272 | 23-Sep-1997 |
| 5672998 | 30-Sep-1997 |
| 5675281 | 07-Oct-1997 |
| 5675339 | 07-Oct-1997 |
| 5677599 | 14-Oct-1997 |
| 5678030 | 14-Oct-1997 |
| 5680072 | 21-Oct-1997 |
| 5682062 | 28-Oct-1997 |
| 5682111 | 28-Oct-1997 |
| 5682336 | 28-Oct-1997 |
| 5683075 | 04-Nov-1997 |
| 5683939 | 04-Nov-1997 |
| 5684305 | 04-Nov-1997 |
| 5686322 | 11-Nov-1997 |
| 5686822 | 11-Nov-1997 |
| 5689129 | 18-Nov-1997 |
| 5694417 | 02-Dec-1997 |
| 5696452 | 09-Dec-1997 |
| 5701097 | 23-Dec-1997 |
| 5708549 | 13-Jan-1998 |
| 5712870 | 27-Jan-1998 |

Page 9

| Patent Number | Issue Date |
| --- | --- |
| 5717243 | 10-Feb-1998 |
| 5717322 | 10-Feb-1998 |
| 5717617 | 10-Feb-1998 |
| 5717736 | 10-Feb-1998 |
| 5719326 | 17-Feb-1998 |
| 5724370 | 03-Mar-1998 |
| 5728624 | 17-Mar-1998 |
| 5729038 | 17-Mar-1998 |
| 5732105 | 24-Mar-1998 |
| 5736885 | 07-Apr-1998 |
| 5736903 | 07-Apr-1998 |
| 5742204 | 21-Apr-1998 |
| 5744851 | 28-Apr-1998 |
| 5744852 | 28-Apr-1998 |
| 5745563 | 28-Apr-1998 |
| 5750432 | 12-May-1998 |
| 5757036 | 26-May-1998 |
| 5757794 | 26-May-1998 |
| 5764113 | 09-Jun-1998 |
| 5767740 | 16-Jun-1998 |
| 5767757 | 16-Jun-1998 |
| 5770878 | 23-Jun-1998 |
| 5770880 | 23-Jun-1998 |
| 5771012 | 23-Jun-1998 |
| 5773151 | 30-Jun-1998 |
| 5773891 | 30-Jun-1998 |
| 5776814 | 07-Jul-1998 |
| 5777346 | 07-Jul-1998 |
| 5777362 | 07-Jul-1998 |
| 5780311 | 14-Jun-1998 |
| 5782975 | 21-Jul-1998 |
| 5789949 | 04-Aug-1998 |
| 5789982 | 04-Aug-1998 |
| 5790060 | 04-Aug-1998 |
| 5793193 | 11-Aug-1998 |
| 5798557 | 25-Aug-1998 |
| 5798724 | 29-Aug-1998 |
| 5801084 | 01-Sep-1998 |
| 5804846 | 08-Sep-1998 |
| 5805020 | 08-Sep-1998 |
| 5807780 | 15-Sep-1998 |
| 5807783 | 15-Sep-1998 |
| 5808348 | 15-Sep-1998 |
| 5808353 | 15-Sep-1998 |
| 5808489 | 15-Sep-1998 |
| 5808883 | 15-Sep-1998 |
| 5809410 | 15-Sep-1998 |
| 5812029 | 22-Sep-1998 |
| 5812658 | 22-Sep-1998 |
| 5814889 | 29-Sep-1998 |
| 5817564 | 06-Oct-1998 |
| 5821740 | 13-Oct-1998 |
| 5825092 | 20-Oct-1998 |
| 5830048 | 03-Nov-1998 |
| 5830279 | 03-Nov-1998 |
| 5831423 | 03-Nov-1998 |
| 5833758 | 10-Nov-1998 |
| 5837553 | 17-Nov-1998 |

Page 10

PATENT
REEL: 010247 FRAME: 0053

| Patent Number | Issue Date |
| --- | --- |
| 5837603 | 17-Nov-1998 |
| 5841169 | 24-Nov-1998 |
| 5841182 | 24-Nov-1998 |
| 5841324 | 24-Nov-1998 |
| 5849627 | 15-Dec-1998 |
| 5851864 | 22-Dec-1998 |
| 5856695 | 05-Jan-1999 |
| 5856700 | 05-Jan-1999 |
| 5856742 | 05-Jan-1999 |
| 5861826 | 19-Jan-1999 |
| 5870266 | 09-Feb-1999 |
| 5872028 | 16-Feb-1999 |
| 5872044 | 16-Feb-1999 |
| 5877041 | 02-Mar-1999 |
| 5877044 | 02-Mar-1999 |
| 5880513 | 09-Mar-1999 |
| 5882423 | 16-Mar-1999 |
| 5883414 | 16-Mar-1999 |
| 5883565 | 16-Mar-1999 |
| 5883921 | 16-Mar-1999 |
| 5892223 | 06-Apr-1999 |
| 5892264 | 06-Apr-1999 |
| 5892375 | 06-Apr-1999 |
| 5892472 | 06-Apr-1999 |
| 5894141 | 13-Apr-1999 |
| 5895953 | 20-Apr-1999 |
| 5896053 | 20-Apr-1999 |
| 5900643 | 04-May-1999 |
| 5913130 | 15-Jun-1999 |
| 5914280 | 22-Jun-1999 |
| 5915168 | 22-Jun-1999 |
| 5920108 | 06-Jul-1999 |
| 5920219 | 06-Jul-1999 |
| 5920224 | 06-Jul-1999 |
| 5920452 | 06-Jul-1999 |
| 5923207 | 13-Jul-1999 |
| 5923209 | 13-Jul-1999 |
| B1 5051619 | 02-Mar-1993 |

Page 11

PATENT
REEL: 010247 FRAME: 0054

# PATENT ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
| --- | --- |
| NATURE OF CONVEYANCE: | CHANGE OF NAME |

**CONVEYING PARTY DATA**

| Name | Execution Date |
| --- | --- |
| INTERSIL CORPORATION | 05/25/2001 |

**RECEIVING PARTY DATA**

| | |
| --- | --- |
| Name: | INTERSIL COMMUNICATIONS, INC. |
| Street Address: | 1001 Murphy Ranch Road |
| City: | Milpitas |
| State/Country: | CALIFORNIA |
| Postal Code: | 95035 |

**PROPERTY NUMBERS Total: 2**

| Property Type | Number |
| --- | --- |
| Patent Number: | 4823173 |
| Patent Number: | 5264719 |

**CORRESPONDENCE DATA**

| | |
| --- | --- |
| Fax Number: | (703)931-6037 |

*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*

| | |
| --- | --- |
| Phone: | 2022363707 |
| Email: | wgwalter@aol.com |
| Correspondent Name: | Wallace G. Walter |
| Address Line 1: | 5726 Clarence Ave |
| Address Line 4: | Alexandria, VIRGINIA 22311 |

| NAME OF SUBMITTER: | Wallace G. Walter |
| --- | --- |

Total Attachments: 4
source=IntersilNameChange#page1.tif
source=IntersilNameChange#page2.tif
source=IntersilNameChange#page3.tif
source=IntersilNameChange#page4.tif

*Right margin vertical text: 4823173   CH $80.00*



**PAGE 1**

*The First State*

    I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "INTERSIL CORPORATION", CHANGING ITS NAME FROM "INTERSIL CORPORATION" TO "INTERSIL COMMUNICATIONS, INC.", FILED IN THIS OFFICE ON THE TWENTY-FIFTH DAY OF MAY, A.D. 2001, AT 4:15 O'CLOCK P.M.



*Harriet Smith Windsor*

3050122 8100

0500839147

*DATE: 10-13-05*

**PATENT
REEL: 017468 FRAME: 0603**

# AMENDED AND RESTATED CERTIFICATE OF INCORPORATION
## OF
### INTERSIL CORPORATION

INTERSIL CORPORATION, a corporation organized and existing under the laws of the State of Delaware, hereby certifies as follows:

FIRST:    The present name of the corporation is INTERSIL CORPORATION and the name under which the corporation was originally incorporated is HSS Operating Corporation. The date of filing of its original Certificate of Incorporation with the Secretary of State of the State of Delaware was June 2, 1999.

SECOND:    This Amended and Restated Certificate of Incorporation (the "Certificate") restates and integrates and further amends in its entirety the Certificate of Incorporation of this corporation. This Certificate was duly adopted by a majority vote of the stockholders of the corporation in accordance with Sections 228, 242 and 245 of the General Corporation Law of the State of Delaware.

THIRD:    This Certificate shall become effective immediately upon its filing with the Secretary of State of the State of Delaware.

FOURTH:    Upon the filing of the Certificate with the Secretary of State of the State of Delaware, the Certificate of Incorporation of the corporation shall be amended and restated in its entirety to read as set forth on Exhibit A attached hereto.

IN WITNESS WHEREOF, said corporation has caused this Certificate to be executed by a duly authorized officer this 23rd day of May, 2001.

By: _____
Gregory Williams
Chief Executive Officer

740322.2.01 5/24/2001 3:35 PM

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 04:15 PM 05/25/2001
010253080 - 3050122

PATENT
REEL: 017468 FRAME: 0604

<div align="right">EXHIBIT A</div>

## AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

### OF

### INTERSIL COMMUNICATIONS, INC.

1.  *Name.* The name of the Corporation is Intersil Communications, Inc.

2.  *Registered Office and Agent.* The address of the Corporation's registered office in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of the Corporation's registered agent at such address is The Corporation Trust Company

3.  *Purpose.* The purposes for which the Corporation is formed are to engage in any lawful act or activity, including, without limitation, forming and/or acquiring foreign subsidiaries, for which corporations may be organized under the General Corporation Law of the State of Delaware ("DGCL") and to possess and exercise all of the powers and privileges granted by such law and any other law of Delaware.

4.  *Authorized Capital.* The aggregate number of shares of stock which the Corporation shall have authority to issue is One Thousand (1,000) shares, all of which are of one class and are designated as Common Stock, par value $.01 per share.

5.  *Incorporator.* The name and mailing address of the incorporator are Marian T. Ryan, 4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, Pennsylvania 19103-2793.

6.  *Bylaws.* In furtherance and not in limitation of the powers conferred by law, the board of directors of the Corporation is authorized to adopt, amend or repeal the bylaws of the Corporation, except as otherwise specifically provided therein, subject to the powers of the stockholders of the Corporation to amend or repeal any bylaws adopted by the board of directors.

7.  *Elections of Directors.* Elections of directors need not be by written ballot unless and except to the extent the bylaws of the Corporation shall so provide.

8.  *Right to Amend.* The corporation reserves the right to amend or repeal any provision contained in this Certificate as the same may from time to time be in effect in the manner now or hereafter prescribed by law, and all rights, preferences and privileges conferred on stockholders, director or others hereunder are subject to such reservation.

9.  *Unanimous Written Consent Required.* If any action is to be taken by stockholders without a meeting, such action must be authorized by unanimous written consent signed by all of the holders of outstanding voting stock.

PATENT
REEL: 017468 FRAME: 0605

10.  *Limitation on Liability.* The directors of the Corporation shall be entitled to the benefits of all limitations on the liability of directors generally that are now or hereafter become available under the DGCL. Without limiting the generality of the foregoing, to the fullest extent permitted by the DGCL, as it exists on the date hereof or as it may hereafter be amended, no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the DGCL, or (iv) for any transaction from which the director derived an improper personal benefit. Any repeal or modification of this Section 10 shall be prospective only, and shall not affect, to use detriment of any director, any limitation on the personal liability of a director of the Corporation existing at the time of such repeal, modification or adoption.

Dated:  May 23, 2001

By: _____
Gregory L. Williams
Chief Executive Officer

PATENT
REEL: 017468 FRAME: 0606

# PATENT ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| INTERSIL COMMUNICATIONS, INC. | 12/21/2001 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | INTERSIL AMERICAS, INC. |
| Street Address: | 1001 MURPHY RANCH ROAD |
| City: | MILPITAS |
| State/Country: | CALIFORNIA |
| Postal Code: | 95035 |

**PROPERTY NUMBERS Total: 2**

| Property Type | Number |
|---|---|
| Patent Number: | 4823173 |
| Patent Number: | 5264719 |

**CORRESPONDENCE DATA**

Fax Number: (703)931-6037

*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*

Phone: 2022363707
Email: wgwalter@aol.com
Correspondent Name: Wallace G. Walter
Address Line 1: 5726 Clarence Ave.
Address Line 4: Alexandria, VIRGINIA 22311

| NAME OF SUBMITTER: | Wallace G. Walter |
|---|---|

Total Attachments: 4
source=IntersilContribAgmt#page1.tif
source=IntersilContribAgmt#page2.tif
source=IntersilContribAgmt#page3.tif
source=IntersilContribAgmt#page4.tif

4823173

CH $80.00

## CONTRIBUTION AGREEMENT

This Contribution Agreement (the "Agreement") is effective as of December 31, 2001 (the "Effective Date") at 11:59 PM United States of America EST (the "Effective Time") by and between Intersil Communications, Inc., a Delaware corporation ("Intersil"), and Intersil Americas Inc., a Delaware corporation ("Intersil Americas").

### Background

To promote greater efficiency and economy in the management of the businesses carried on by the parties to this Agreement, Intersil desires to make a capital contribution to Intersil Americas of certain intellectual property and other assets used in the business of Intersil and its affiliates.

### Terms

Intending to be legally bound, the parties to this Agreement agree as follows:

1. Effective as of the date first written above, Intersil shall contribute the following to Intersil Americas, in deemed exchange for stock of Intersil Americas in a non-recognition transaction as described in Section 351 of the Internal Revenue Code of 1986, as amended:

    (i)    all right, title and interest in and to the trademarks shown in Schedule A and all slogans, logotypes, designs, and trade dress associated therewith (the "Trademarks"), together with the U.S. federal registrations and applications for registration of the Trademarks, in and to all income, royalties, damages and payments now or hereafter due or payable with respect thereto and in and to all rights of action arising from the Trademarks, to be held and enjoyed by Intersil Americas for its own use and benefit and for its successors and assigns as the same would have been held by Intersil had this contribution not been made, and the goodwill of the business symbolized by the Trademarks;

    (ii)    all right, title and interest in and to the U.S. patents and patent applications shown in Schedule A (the "Patents"), including all reissues, divisions, continuations, continuations-in-part, and extensions thereof, to be held and enjoyed by Intersil Americas as fully and entirely as they would have been held and enjoyed by Intersil if this contribution had not been made, including all licenses of and proceeds from the Patents, all claims, demands and rights to recovery that Intersil has or may have in profits and damages for past and future infringements, if any, and all rights to compromise, sue for, and collect such profits and damages;

    (iii)    all right, title, and interest in and to all inventions shown in Schedule A (the "Inventions"), and all intellectual property rights relating thereto, including, without limitation, trade secret rights in the Inventions, and all rights of action arising from the Inventions, to be held and enjoyed by Intersil Americas for its own use and benefit and for its successors and assigns as the same would have been held by Intersil had this contribution not been made; and

    (iv)    all right, title, and interest in and to all copyrights owned by Intersil as of the date first written above that are not otherwise excluded from contribution under the terms of this Agreement, whether or not such copyrights have been registered (collectively, the "Copyrights")

**PATENT**
**REEL: 017468 FRAME: 0608**

including, without limitation, all U.S. registrations and applications for registration of the Copyrights, all licenses of and proceeds from the Copyrights, all publishing, electronic publishing, and other proprietary rights arising from or related to the Copyrights, all causes of action relating to the Copyrights that may have arisen prior to this contribution, and any recovery resulting from such causes of action.

Notwithstanding the foregoing or any specific item listed on Schedule A, the intellectual property used in connection with providing products or services that are regulated by the United States Department of State shall not be contributed to Intersil Americas.

2.     Intersil and Intersil Americas shall each take any and all additional actions as may be necessary or appropriate to effect the transactions contemplated by this Agreement. Such actions may include, without limitation, the execution of additional documents to record the contribution made in this Agreement and the filing of such documents with the appropriate governmental authorities.

[Signatures commence on the following page]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date below to be effective as of the Effective Date and Effective Time.

INTERSIL COMMUNICATIONS, INC.
a Delaware corporation

By: _____  Date: 12/24/01
Name: PAUL A. BERNKOPF
Title: ASST SECRETARY

INTERSIL AMERICAS INC.
a Delaware Corporation

By: _____  Date: 12/21/01
Name: PAUL A. BERNKOPF
Title: ASST SECRETARY

<u>SCHEDULE A</u>
(i) PATENTS AND PATENT APPLICATIONS

| ClientRef | SubCase | Status | Apl # | FilDate | Pat# | IssDate | Title |
|-----------|---------|--------|-------|---------|------|---------|-------|
| SE-358 | | Granted | 774474 | 10-Sep-1985 | 4677321 | 30-Jun-1987 | A TTL COMPATIBLE INPUT BUFFER |
| SE352 | | Granted | 793316 | 31-Oct-1985 | 4682059 | 21-Jul-1987 | A COMPARATOR INPUT STAGE FOR INTERFACE WITH SIGNAL CURRENT |
| SE-359 | | Granted | 782691 | 01-Oct-1985 | 4650696 | 17-Mar-1987 | PROCESS USING TUNGSTEN FOR MULTILEVEL METALIZATION |
| SE-363 | | Granted | 936609 | 01-Dec-1986 | 4781853 | 01-Nov-1988 | METHOD OF ETCH & ENHANC SILICON ETCHING CAP OF ALKALI HYDROXIDE THROUGH ADD OF POSITIVE VALENCE IMPURITY IONS |
| SE-363 | A | Granted | 187268 | 28-Apr-1988 | 4859280 | 22-Aug-1989 | METHOD OF ETCH & ENHANC SILICON ETCHING CAP OF ALKALI HYDROXIDE THROUGH ADD OF POSITIVE VALENCE IMPURITY IONS |
| SE-370 | | Granted | 723238 | 15-Apr-1985 | 4705596 | 10-Nov-1987 | SIMULTANEOUS PLASMA SCULPTURING AND DUAL TAPERED VIA ETCH |
| SE377 | | Granted | 782689 | 01-Oct-1985 | 4636744 | 13-Jan-1987 | FRONT END OF AN OPERATIONAL AMPLIFIER |
| SE704 | | Granted | 771712 | 03-Sep-1985 | 4624749 | 25-Nov-1986 | ELECTRODEPOSITION OF SUBMICROMETER METALLIC INTERCONNECT FOR INTEGRATED CIRCUITS |
| SE-705 | | Granted | 768326 | 22-Aug-1985 | 4716071 | 29-Dec-1987 | METHOD FOR ENSURING ADHESION OF CHEMICALLY VAPOR DEPOSITED OXIDE TO GOLD INTEGRATED CIRCUIT INTERCONNECT LINES |
| SE-705 | A | Granted | 045526 | 04-May-1987 | 4713260 | 15-Dec-1987 | METHOD FOR ENSURING ADHESION OF CHEMICALLY VAPOR DEPOSITED OXIDE TO GOLD INTEGRATED CIRCUIT INTERCONNECT LINES |
| SE-385 | | Granted | 896097 | 13-Aug-1986 | 4755770 | 05-Jul-1988 | LOW NOISE CURRENT SPECTRAL DENSITY INPUT BIAS CURRENT CANCEL SCHEME |
| SE-394 | | Granted | 723239 | 15-Apr-1985 | 4705597 | 10-Nov-1987 | PHOTORESIST TAPERING PROCESS |
| SE-395 | | Granted | 631384 | 07-Jan-1986 | 4823173 | 18-Apr-1989 | HIGH VOLTAGE LATERAL MOS STRUCTURE WITH DEPLETED TOP GATE REGION |
| SE-395 | B | Granted | 07/705509 | 24-May-1991 | 5264719 | 23-Nov-1993 | HIGH VOLTAGE LATERAL MOS STRUCTURE WITH DEPLETED TOP GATE REGION |

## Patent License Agreement

This Patent License Agreement ("PLA") is entered into on this 30th day of March, 2006 by and between Intersil Corporation ("Intersil") and Fairchild Semiconductor Corporation ("Fairchild") (collectively, the "Parties").

1.

### REDACTED

   1.1

   1.2
         Power Integrations, Incorporated, including its parents, subsidiaries and consolidated entities (any or all of which, "POWI"). **REDACTED** United States Patent No. 4,823,173 and/or United States Patent No. 5,264,719, including any and all re-examinations, reissues or certificates of correction relating to such patents (collectively, the "Patents").

   1.3

### REDACTED

2.

   2.1

REDACTED

2.2

3.   **Additional Rights Granted Fairchild**

        3.1           **REDACTED**          Intersil grants to Fairchild the sole and exclusive right, exclusive even as to Intersil, to enforce the Patents against POWI, to assert, litigate and prosecute claims of Infringement under the Patents against POWI, including without limitation in any U.S. federal court or before the International Trade Commission, and to seek all equitable, injunctive, monetary and other relief and to collect for later distribution under Paragraph 1.2 any and all past damages in connection with Infringement of the Patents by POWI, and to settle and compromise any disputes with POWI related to the Patents. Except as provided herein, the Parties agree that only Fairchild shall have the authority to threaten, commence, maintain or settle any claim, suit or proceeding based upon Infringement of the Patents (or other trespass or similar action relating to the Patents and the inventions therein claimed) by POWI.

        3.2

        3.3

REDACTED

**REDACTED**

3.4

3.5

**REDACTED**

3.6

4.    <u>**Representations and Warranties**</u>

4.1    Intersil represent and warrants as follows:

A.    Intersil has the authority to enter into this PLA and to convey the rights conveyed herein, and that the execution and performance of this PLA does not conflict with Intersil's certificate of incorporation, by-laws or contract obligations.

B.    Intersil is the sole owner of the Patents, the Patents have been and will be maintained, and that all inventors of the inventions claimed in the Patents have assigned title and ownership of the inventions to Intersil.

C.

4.2

A.

**REDACTED**

B.

C.

5.    <u>Confidentiality</u>

The terms and conditions of this PLA, all communications, discussions and correspondence relating to this PLA, and all actions taken in performance of the PLA, shall be "Common Interest Information" covered by the Joint Defense and Confidentiality Agreement between the Parties, dated March 12, 2001, and shall be maintained in strict confidence in accordance with such Joint Defense and Confidentiality Agreement.

**REDACTED**

The parties have duly executed this Agreement as of the date first above written.

**INTERSIL CORPORATION**

By: _____

Name: _____

Title: _____

**FAIRCHILD SEMICONDUCTOR CORPORATION**

By: _____

Name: Robert J. Conrad

Title: Senior Vice President – Analog Products

The parties have duly executed this Agreement as of the date first above written.

**INTERSIL CORPORATION**

By: _Douglas A. Balog_

Name: _DOUGLAS A. BALOG_

Title: _ASST. SECRETARY_

**FAIRCHILD SEMICONDUCTOR CORPORATION**

By: _____

Name: Robert J. Conrad

Title: Senior Vice President – Analog Products

## Supplemental Agreement

This Supplemental Agreement amends and, to the extent necessary, modifies *nunc pro nunc* the Patent License Agreement ("PLA") dated March 30, 2006 between Intersil Corporation ("Intersil") and Fairchild Semiconductor Corporation ("Fairchild") (collectively, the "Parties").

Intersil Americas, Inc. ("Intersil Americas"), as title holder of record of United States Patent No. 4,823,173 and United States Patent No. 5,264,719 (the "Patents"), hereby fully ratifies the terms of the March 30, 2006 PLA. Intersil Americas further acknowledges that its parent corporation, Intersil Corporation, was authorized to enter into the PLA on behalf of Intersil Americas, and to agree to the terms stated therein. Intersil Americas agrees to be bound by, and hereby reaffirms, the representations and warranties made by Intersil Corporation in the PLA.

It is the intent of the parties hereto that this Supplemental Agreement shall be retroactive to March 30, 2006, and shall have the effect of assigning and conveying from Intersil Americas to Fairchild, as of March 30, 2006, the specific rights to the Patents as detailed in the PLA as if Intersil Americas – and not Intersil Corporation -- was the original party to the PLA. This Supplemental Agreement does not modify the substantive rights of Fairchild under the PLA, and the substantive rights afforded to Intersil Corporation under the PLA remain unchanged, but will be deemed to reside in Intersil Americas. Intersil Corporation shall remain bound under the PLA itself. This Supplemental Agreement does not alter the ongoing obligations, if any, of any Intersil related entity under the Asset Purchase Agreement and the related Intellectual Property Assignment and License Agreement between Intersil Corporation and Fairchild dated January 20, 2001. Intersil Americas assumes no obligations other than as expressly set forth herein and in the body of the PLA.

Executed on May 18 , 2006, but effective March 30, 2006.

**INTERSIL CORPORATION**

By: _Douglas A. Balog_
Name: DOUGLAS A. BALOG
Title: ASST. SECRETARY

**INTERSIL AMERICAS, INC.**

By: _Douglas A. Balog_
Name: DOUGLAS A. BALOG
Title: ASST. SECRETARY

**FAIRCHILD SEMICONDUCTOR CORPORATION**

By: _____
Name: PAUL D DELVA
Title: SVP, GENERAL COUNSEL + SECRETARY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, INTERSIL AMERICAS, INC., a Delaware corporation and INTERSIL CORPORATION, a Delaware corporation<br><br>        Plaintiff,<br><br>v.<br><br>POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>        Defendants. | **JURY**<br><br>**CIVIL ACTION NO. 2:06-cv-151** |

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs FAIRCHILD SEMICONDUCTOR CORPORATION (hereinafter, "Fairchild"), INTERSIL AMERICAS, INC. and INTERSIL CORPORATION, (Intersil Americas, Inc. and Intersil Corp. are collectively "Intersil") by and through their undersigned counsel, hereby alleges as follows:

## THE PARTIES

1.     Fairchild Semiconductor Corporation is a Delaware corporation with its principal place of business in South Portland, Maine.

2.     Intersil Corporation is a Delaware corporation with its principal place of business in Milpitas, California.

3.     Intersil Americas, Inc. is a Delaware corporation with its principal place of business in Milpitas, California.

4.     Power Integrations, Inc. is a Delaware is a Delaware corporation with its principal place of business in San Jose, California.

## JURISDICTION AND VENUE

5.      This is an action arising under the patent laws of the United States, Title 35 of the United States Code.  This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      Upon information and belief, this Court has personal jurisdiction over the defendant because Power Integrations sells the accused devices within this district.

7.      Upon information and belief, venue is proper in the Court pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400 as the defendant is subject to personal jurisdiction in this district.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 5,264,719

8.      The allegations of paragraphs 1-7 are incorporated as though fully set forth herein.

9.      U.S. Patent No. 5,264,719 (the "'719 Patent"), entitled *High Voltage Lateral Semiconductor Device*, duly and lawfully issued on November 23, 1993 and was assigned to Harris Corporation.  A true and correct copy of the '719 Patent is attached hereto as Exhibit A.

10.     Upon information and belief, on or about September 27, 1999 the '719 Patent was assigned by Harris Corporation to Intersil Corporation.  A true and correct copy of that assignment is attached as Exhibit B.

11.     Upon information and belief, on or about April 14, 2006, Intersil Corporation changed its name to Intersil Communications, Inc.  A true and correct copy of the restated certificate of incorporation is attached as Exhibit C.

12.     Upon information and belief, on or about April 14, 2006 the '719 Patent was assigned by Intersil Communications, Inc. to Intersil Americas, Inc.  A true and correct copy of that assignment is attached as Exhibit D.

13.     On or about March 30, 2006, Fairchild Semiconductor Corporation and Intersil Corporation entered into a Patent License Agreement that gave Fairchild the right to assert the

- 2 -

'719 Patent against Power Integrations.  A redacted copy of that Patent License Agreement is attached as Exhibit E.

14.     On or about May 17, 2006, Fairchild Semiconductor Corporation, Intersil Corporation, and Intersil Americas, Inc.  entered into a Supplemental Agreement effective March 30, 2006 that gave Fairchild the right to assert the '719 Patent against Power Integrations.  A true and correct copy of that Supplemental Agreement is attached as Exhibit F.

15.     Upon information and belief, Power Integrations has been and is now infringing the '719 Patent, both literally and under the doctrine of equivalents, by making, using, selling, offering for sale, and importing devices and products in the United States covered by one ore more claims of the '719 Patent.

16.     Upon information and belief, Power Integrations has been and is now inducing infringement and contributing to the infringement of the '719 Patent, both literally and under the doctrine of equivalents, by inducing or contributing to the making, using, selling, offering for sale, and importing by others devices and products in the United States covered by one or more claims of the '719 Patent.

17.     Power Integrations' infringement has caused irreparable injury to Fairchild and Intersil and will continue to cause irreparable injury until Power Integrations is enjoined from further infringement by the Court.

## PRAYER FOR RELIEF

WHEREFORE, FAIRCHILD and INTERSIL pray for the following relief:

A.  Judgment by the Court that Power Integrations directly infringes the '719 Patent;

B.  Judgment by the Court that Power Integrations induces or contributes to others' infringement of the '719 Patent;

C.  Preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283 enjoining Power Integrations, its officers, agents, servants, employees, successors, assigns and all other persons or entities acting in concert or participation with Power Integrations or on Power Integrations' behalf from further infringement of the '719 Patent;

US_WEST:23083832.3

D.  Money damages sustained as a result of Power Integrations' infringement of the '719 Patent;

E.  Costs and reasonable attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285; and,

F.  Such other relief as the Court finds just and proper.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Fairchild Semiconductor Corporation and Intersil Corporation hereby demand a trial by jury on this action.

- 4 -

Respectfully submitted by,

_____

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III (SBN 124811)
Bas de Blank (SBN 191487)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Carl R. Roth, Texas Bar No. 901984225
cr@rothfirm.com
Michael C. Smith, Texas Bar No. 900641877
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 North Wellington, Suite 200
P.O. Box 876
Marshall, Texas  75671
Tel: (903) 935-1665
Fax: (903) 935-1797

Attorneys for Plaintiffs,
FAIRCHILD SEMICONDUCTOR
CORPORATION, INTERSIL CORPORATION,
and INTERSIL AMERICAS, INC.

SHORE CHAN, L.L.P.
Michael Shore, Texas Bar No. 18294915
shore@shorechan.com
Jeffrey R. Bragalone, Texas Bar No. 02855775
jbragalone@shorechan.com
325 North St. Paul, Suite 4450
Dallas, Texas 75201
Tel: (214) 593-9110
Fax: (214) 593-9111

Attorneys for Plaintiffs,
INTERSIL CORPORATION, and INTERSIL
AMERICAS, INC.

- 5 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 19th day of May, 2006.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

_Michael Smith_

Michael C. Smith

- 6 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation<br><br>Defendants. | **C.A. No. 047-1371-JJF**<br><br>**JURY TRIAL REQUESTED** |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Power Integrations, Inc. hereby alleges as follows:

## THE PARTIES

1.     Power Integrations, Inc. ("Power Integrations") is incorporated under the laws of the state of Delaware, and has a regular and established place of business at 5245 Hellyer Avenue, San Jose, California, 95138.

2.     Upon information and belief, defendant Fairchild Semiconductor International, Inc. is incorporated under the laws of the state of Delaware, with its headquarters located at 82 Running Hill Road, South Portland, Maine, 04106. Upon information and belief, defendant Fairchild Semiconductor Corporation is incorporated under the laws of the state of Delaware, with its headquarters located at 82 Running Hill Road, South Portland, Maine, 04106. (Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation hereinafter collectively "Fairchild Semiconductor.")

## JURISIDICTION AND VENUE

3.    This action arises under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4.    Upon information and belief, this Court has personal jurisdiction over defendants because defendants are incorporated, doing business and advertising in this judicial District.

5.    Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400 because the defendants are subject to personal jurisdiction in this judicial District.

## GENERAL ALLEGATIONS

6.    Power Integrations' products include its integrated pulse width modulation ("PWM") integrated circuits that are used in power supplies for electronic devices such as cellular telephones, LCD monitors and computers. These products are sold throughout the United States, including Delaware.

7.    Upon information and belief, defendants manufacture PWM integrated circuits devices (e.g., devices intended for use in power conversion applications such as LCD monitor power supplies or battery chargers for portable electronics), and directly and through their affiliates, uses, imports, sells, and offers to sell the same throughout the United States, including Delaware.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,107,851

8.    The allegations of paragraphs 1-7 are incorporated as though fully set forth herein.

9.    Power Integrations is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 6,107,851, entitled "Offline Converter with Integrated Softstart and Frequency Jitter" ("the '851

2

patent"), which was duly and legally issued on August 22, 2000.  A true and correct copy of the '851 patent is attached hereto as Exhibit A.

10.     Upon information and belief, defendants have been and are now infringing, inducing infringement, and contributing to the infringement of the '851 patent by making, using, importing, selling, and offering to sell devices, including PWM integrated circuit devices, and/or inducing or contributing to the importation, use, offer for sale and sale by others of such devices covered by one or more claims of the '851 patent, all to the injury of Power Integrations.

11.     Defendants' acts of infringement have injured and damaged Power Integrations.

12.     Defendants' infringement has caused irreparable injury to Power Integrations and will continue to cause irreparable injury until defendants are enjoined from further infringement by this Court.

13.     Upon information and belief, Defendants' infringement has been, and continues to be, willful so as to warrant enhancement of damages awarded as a result of its infringement.

## SECOND CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,249,876

14.     The allegations of paragraphs 1-7 are incorporated as though fully set forth herein.

15.     Power Integrations is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 6,249,876, entitled "Frequency Jittering Control for Varying the Switching Frequency of a Power Supply" ("the '876 patent"), which was duly and legally issued on June 19, 2001.  A true and correct copy of the '876 patent is attached hereto as Exhibit B.

16.     Upon information and belief, defendants have been and are now infringing, inducing infringement, and contributing to the infringement of the '876 patent

3

by making, using, importing, selling, and offering to sell devices, including PWM integrated circuit devices and/or inducing or contributing to the importation, use, offer for sale and sale by others of such devices covered by one or more claims of the '876 patent, all to the injury of Power Integrations.

17.    Defendants' acts of infringement have injured and damaged Power Integrations.

18.    Defendants' infringement has caused irreparable injury to Power Integrations and will continue to cause irreparable injury until defendants are enjoined from further infringement by this Court.

19.    Upon information and belief, Defendants' infringement has been, and continues to be, willful so as to warrant enhancement of damages awarded as a result of its infringement.

## THIRD CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 6,229,366

20.    The allegations of paragraphs 1-7 are incorporated as though fully set forth herein.

21.    Power Integrations is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 6,229,366, entitled "Off-Line Converter with Integrated Softstart and Frequency Jitter" ("the '366 patent"), which was duly and legally issued on May 8, 2001.  A true and correct copy of the '366 patent is attached hereto as Exhibit C.

22.    Upon information and belief, defendants have been and are now infringing, inducing infringement, and contributing to the infringement of the '366 patent by making, using, importing, selling, and offering to sell devices, including PWM integrated circuit devices and/or inducing or contributing to the importation, use, offer for

4

sale and sale by others of such devices covered by one or more claims of the '366 patent, all to the injury of Power Integrations.

23.    Defendants' acts of infringement have injured and damaged Power Integrations.

24.    Defendants' infringement has caused irreparable injury to Power Integrations and will continue to cause irreparable injury until defendants are enjoined from further infringement by this Court.

25.    Upon information and belief, Defendants' infringement has been, and continues to be, willful so as to warrant enhancement of damages awarded as a result of its infringement.

## FOURTH CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 4,811,075

26.    The allegations of paragraphs 1-7 are incorporated as though fully set forth herein.

27.    Power Integrations is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 4,811,075, entitled "High Voltage MOS Transistors" ("the '075 patent"), which was duly and legally issued on March 7, 1989.  A true and correct copy of the '075 patent is attached hereto as Exhibit D.

28.    Upon information and belief, defendants have been and are now infringing, inducing infringement, and contributing to the infringement of the '075 patent by making, using, importing, selling, and offering to sell devices, including PWM integrated circuit devices and/or inducing or contributing to the importation, use, offer for sale and sale by others of such devices covered by one or more claims of the '075 patent, all to the injury of Power Integrations.

29.    Defendants' acts of infringement have injured and damaged Power Integrations.

5

30.    Defendants' infringement has caused irreparable injury to Power Integrations and will continue to cause irreparable injury until defendants are enjoined from further infringement by this Court.

31.    Upon information and belief, Defendants' infringement has been, and continues to be, willful so as to warrant enhancement of damages awarded as a result of its infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

(a)    judgment against defendants as to willful infringement of the '851 patent;

(b)    judgment against defendants as to willful infringement of the '876 patent;

(c)    judgment against defendants as to willful infringement of the '366 patent;

(d)    judgment against defendants as to willful infringement of the '075 patent;

(e)    a permanent injunction preventing defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and customers, and those in active concert or participation with any of them, from making, using, importing, offering to sell or selling any devices that infringe any claim of the '851, '876, '366, or '075 patents;

(f)    judgment against defendants for money damages sustained as a result of defendants' infringement of the '851, '876, '366, and '075 patents;

(g)    that any such money judgment be trebled as a result of the willful nature of Defendants' infringement;

(h)    costs and reasonable attorneys' fees incurred in connection with this action pursuant to 35 U.S.C § 285; and

(i)    such other and further relief as this Court finds just and proper.

6

**JURY DEMAND**

Plaintiff requests trial by jury.


Dated:  October 20, 2004          FISH & RICHARDSON P.C.


                          By:  /s/ John F. Horvath
                               William J. Marsden, Jr. (#2247)
                               Sean P. Hayes (#4413)
                               John F. Horvath (#4557)
                               919 N. Market Street, Suite 1100
                               P.O. Box 1114
                               Wilmington, DE  19801
                               Telephone:  (302) 652-5070
                               Facsimile:  (302) 652-0607

                               Frank E. Scherkenbach
                               225 Franklin Street
                               Boston, MA 02110-2804
                               Telephone:  (617) 542-5070
                               Facsimile:  (617) 542-8906

                               Michael Kane
                               60 South Sixth Street
                               3300 Dain Rauscher Plaza
                               Minneapolis, MN 55402
                               Telephone:  (612) 335-5070
                               Facsimile:  (612) 288-9696

                               Howard G. Pollack
                               Gina M. Steele
                               Michael R. Headley
                               500 Arguello Street, Suite 500
                               Redwood City, CA 94063
                               Telephone:  (650) 839-5070
                               Facsimile:  (650) 839-5071

                          Attorneys for Plaintiff
                          POWER INTEGRATIONS, INC.

50286120.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S FIRST AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation (collectively "FAIRCHILD") answer the First Amended Complaint of Power Integrations, Inc. ("PI") as follows:

FAIRCHILD denies each and every allegation contained in the First Amended Complaint, except as hereinafter specifically admitted or explained. To the extent that the headings, or any other non-numbered statements in Plaintiff's First Amended Complaint contain any allegations, Defendants deny each and every allegation therein.

### THE PARTIES

1.     In response to paragraph 1 of the First Amended Complaint, FAIRCHILD lacks sufficient knowledge or information to admit or deny the allegations set forth therein and therefore denies each and every allegation contained in paragraph 1.

2.     In response to paragraph 2 of the First Amended Complaint, defendant Fairchild Semiconductor International, Inc. admits that it is a corporation duly incorporated under the laws of the State of Delaware, with its headquarters located at 82 Running Hill Road, South Portland, Maine, 04106. Defendant Fairchild Semiconductor Corporation admits that it is a corporation

duly incorporated under the laws of the State of Delaware, with its headquarters located at 82 Running Hill Road, South Portland, Maine, 04106. FAIRCHILD denies any and all remaining allegation of paragraph 2.

## JURISDICTION AND VENUE

3.      In response to paragraph 3 of the First Amended Complaint, FAIRCHILD denies that it has infringed or now infringes the patents asserted against FAIRCHILD in the First Amended Complaint. FAIRCHILD admits that the First Amended Complaint purports to state a cause of action under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq.* FAIRCHILD admits that the First Amended Complaint purport to state a cause of action over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4.      In response to paragraph 4 of the First Amended Complaint, FAIRCHILD admits that this Court has personal jurisdiction over FAIRCHILD.

5.      In response to paragraph 5 of the First Amended Complaint, FAIRCHILD admits, for the purpose of this action only, that venue is proper in this judicial district.

## GENERAL ALLEGATIONS

6.      In response to paragraph 6 of the First Amended Complaint, FAIRCHILD lacks sufficient knowledge or information to admit or deny the allegations set forth therein and therefore denies each and every allegation contained in paragraph 6.

7.      In response to paragraph 7 of the First Amended Complaint, FAIRCHILD denies that it manufactures PWM integrated circuits devices in the United States. FAIRCHILD denies that it has been or currently is infringing, inducing infringement, or contributing to the infringement of the any PI patent asserted in the First Amended Complaint. FAIRCHILD admits that it imports a de minimis amount of PWM integrated circuits devices into the United States and that it sells and offers to sell a de minimis amount of PWM integrated circuits devices in the United States. FAIRCHILD denies any and all remaining allegations of paragraph 7 of the First Amended Complaint.

## FIRST CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 6,107,851

8.      In response to paragraph 8 of the First Amended Complaint, FAIRCHILD realleges its answers as set forth in paragraphs 1-7 above and incorporates by reference paragraphs 1 through 7, inclusive, as through fully set forth in this paragraph.

9.      In response to paragraph 9 of the First Amended Complaint, FAIRCHILD admits that the title page of United States Patent No. 6,107,851 ("the '851 patent") states on its face that the patent was issued on August 22, 2000. FAIRCHILD admits that on its face the '851 patent is entitled "Offline Converter with Integrated Softstart and Frequency Jitter." FAIRCHILD admits that on its face the '851 patent lists "Power Integrations, Inc." as the assignee. FAIRCHILD admits that a copy of the '851 patent was attached to PI's original Complaint as Exhibit A. FAIRCHILD denies that the '851 patent is dully and legally issued. FAIRCHILD denies any and all remaining allegations of paragraph 9 of the First Amended Complaint.

10.     In response to paragraph 10 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

11.     In response to paragraph 11 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

12.     In response to paragraph 12 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

13.     In response to paragraph 13 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

## SECOND CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 6,249,876

14.     In response to paragraph 14 of the First Amended Complaint, FAIRCHILD realleges its answers as set forth in paragraphs 1-7 above and incorporates by reference paragraphs 1 through 7, inclusive, as through fully set forth in this paragraph.

15.     In response to paragraph 15 of the First Amended Complaint, FAIRCHILD admits that the title page of United States Patent No. 6,249,876 ("the '876 patent") states on its face that the patent was issued on June 19, 2001.  FAIRCHILD admits that on its face the '876 patent is entitled "Frequency Jittering Control for Varying the Switching Frequency of a Power Supply."  FAIRCHILD admits that on its face the '876 patent lists "Power Integrations, Inc." as the assignee.  FAIRCHILD admits that a copy of the '876 patent was attached to PI's original Complaint as Exhibit B.  FAIRCHILD denies that the '876 patent is dully and legally issued. FAIRCHILD denies any and all remaining allegations of paragraph 15 of the First Amended Complaint.

16.     In response to paragraph 16 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

17.     In response to paragraph 17 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

18.     In response to paragraph 18 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

19.     In response to paragraph 19 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

## THIRD CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 6,229,366

20.     In response to paragraph 20 of the First Amended Complaint, FAIRCHILD realleges its answers as set forth in paragraphs 1-7 above and incorporates by reference paragraphs 1 through 7, inclusive, as through fully set forth in this paragraph.

21.     In response to paragraph 21 of the First Amended Complaint, FAIRCHILD admits that the title page of United States Patent No. 6,229,366 ("the '366 patent") states on its face that the patent was issued on May 8, 2001.  FAIRCHILD admits that on its face the '366 patent is entitled "Off-Line Converter with Integrated Softstart and Frequency Jitter." FAIRCHILD admits that on its face the '366 patent lists "Power Integrations, Inc." as the

assignee. FAIRCHILD admits that a copy of the '366 patent was attached to PI's original Complaint as Exhibit C. FAIRCHILD denies that the '366 patent is dully and legally issued. FAIRCHILD denies any and all remaining allegations of paragraph 21 of the First Amended Complaint.

22.     In response to paragraph 22 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

23.     In response to paragraph 23 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

24.     In response to paragraph 24 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

25.     In response to paragraph 25 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

## FOURTH CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 4,811,075

26.     In response to paragraph 26 of the First Amended Complaint, FAIRCHILD realleges its answers as set forth in paragraphs 1-7 above and incorporates by reference paragraphs 1 through 7, inclusive, as through fully set forth in this paragraph.

27.     In response to paragraph 27 of the First Amended Complaint, FAIRCHILD admits that the title page of United States Patent No. 4,811,075 ("the '075 patent") states on its face that the patent was issued on March 7, 1989. FAIRCHILD admits that on its face the '075 patent is entitled "High Voltage MOS Transistors." FAIRCHILD admits that on its face the '075 patent lists "Power Integrations, Inc." as the assignee. FAIRCHILD admits that a copy of the '075 patent was attached to PI's original Complaint as Exhibit D. FAIRCHILD denies that the '075 patent is dully and legally issued. FAIRCHILD denies any and all remaining allegations of paragraph 27 of the First Amended Complaint.

28.     In response to paragraph 28 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

29.     In response to paragraph 29 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

30.     In response to paragraph 30 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

31.     In response to paragraph 31 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

## AFFIRMATIVE AND OTHER DEFENSES

Further Answering the First Amended Complaint, FAIRCHILD asserts the following defenses. FAIRCHILD reserves the right to amend its answer with additional defenses as further information is obtained.

### First Defense:  Noninfringement of the Asserted Patents

32.     FAIRCHILD has not infringed, contributed to infringement of, or induced the infringement of any valid claim of the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent, and is not liable for infringement thereof.

33.     No product made by FAIRCHILD or process used by FAIRCHILD infringes the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent because PI's First Amended Complaint fails to state a claim that meets the requirements of 35 U.S.C. § 271.

### Second Defense:  Invalidity of the Asserted Patents

34.     The '851 Patent, the '876 Patent, the '366 Patent, and the '075 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 U.S.C, including without limitation 35 U.S.C §§ 102, 103, 112, and 121.

### Third Defense:  Unavailability of Relief

35.     PI has failed to plead and meet the requirements of 35 U.S.C. § 271(b) and (c) and is not entitled to any alleged damages from FAIRCHILD.

### Fourth Defense:  Unavailability of Relief (Marking and Notice)

36.    PI has failed to plead and meet the requirements of 35 U.S.C. § 287 on marking

and notice, and has otherwise failed to show that it is entitled to any damages prior to the filing

date of the First Amended Complaint.

### Fifth Defense:  Limitation on Damages (Past Damages)

37.    PI's claim for relief and prayer for damages are limited by 35 U.S.C. § 286.

### Sixth Defense:  Limitation on Damages (Increased Damages and Attorney Fees)

38.    PI has failed to plead and meet the requirements of 35 U.S.C. § 284 and 285 for

increased damages and attorney fees and is not entitled to any such increased damages or

attorney fees.

### Seventh Defense:  Estoppel

39.    PI is estopped from alleging that the '851 Patent, the '876 Patent, the '366 Patent,

and/or the '075 Patent cover or include any accused product or activity by FAIRCHILD based on

arguments made by PI during prosecution of the '851 Patent, the '876 Patent, the '366 Patent,

and/or the '075 Patent.

### Eighth Defense:  Laches

40.    On information and belief, PI's claims for relief are barred, in whole or in part, by

the equitable doctrine of laches.

### Ninth Defense:  Waiver

41.    On information and belief, PI's claims for relief are barred or unenforceable, in

whole or in part, due to waiver.

### Tenth Defense:  Unenforceability

42.    On information and belief, PI's claims for relief are unenforceable, in whole or in

part, due to unclean hands.

## Eleventh Defense: Unenforceability

43.     On information and belief, PI's claims for relief are unenforceable, in whole or in part, due to inequitable conduct. FAIRCHILD incorporates by reference Paragraphs 24-89 of its COUNTERCLAIMS, as if fully restated herein.

## COUNTERCLAIMS

### First Counterclaim: Declaratory Judgment of Non-Infringement

1.     This action arises under the patent laws of the United States, Title 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this counterclaim under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

2.     Fairchild Semiconductor International, Inc. is a Delaware corporation with its principal place of business in South Portland, Maine. Fairchild Semiconductor Corporation is a Delaware corporation with its principal place of business in South Portland, Maine. (Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation are collectively referred to as "FAIRCHILD.")

3.     On information and belief, Plaintiff/Counterclaim Defendant Power Integrations, Inc. ("PI") is a Delaware corporation with its principal place of business in San Jose, California.

4.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400.

5.     PI purports to be the owner of U.S. Patent Nos. 6,107,851 ("the '851 Patent"), 6,249,876 ("the '876 Patent"), 6,229,366 ("the '366 Patent"), and 4,811,075 ("the '075 Patent").

6.     PI alleges that FAIRCHILD has infringed the '851 Patent, the '876 Patent, the '366 Patent, and the '075 Patent.

7.     No product made by FAIRCHILD or process used by FAIRCHILD has infringed, either directly or indirectly, any claim of the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent, and FAIRCHILD is not liable for infringement thereof.

8.     No activity by FAIRCHILD comes within the requirements of 35 U.S.C. § 271 with respect to the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent, and

FAIRCHILD is not liable for infringement of the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent under 35 U.S.C. § 271.

9.    FAIRCHILD's activities that are outside of the United States do not come within the requirements of 35 U.S.C. § 271 with respect to the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent, and do not constitute infringement.

10.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to the infringement or noninfringement of the '851 Patent, the '876 Patent, the '366 Patent, and/or the '075 Patent.

## Second Counterclaim:  Declaratory Judgment of Invalidity of the '851 Patent

11.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

12.    The '851 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

13.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '851 Patent are valid or invalid.

## Third Counterclaim:  Declaratory Judgment of Invalidity of the '876 Patent

14.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

15.    The '876 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

16.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '876 Patent are valid or invalid.

**Fourth Counterclaim: Declaratory Judgment of Invalidity of the '366 Patent**

17.     FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

18.     The '366 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

19.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '366 Patent are valid or invalid.

**Fifth Counterclaim:  Declaratory Judgment of Invalidity of the '075 Patent**

20.     FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

21.     The '075 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

22.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '075 Patent are valid or invalid.

**Sixth Counterclaim:  Declaratory Judgment of Unenforceability the '366 Patent**

23.     FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

24.     The '366 Patent, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '366 Patent.

25.     During prosecution of the '366 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '366 patent under prosecution, and that Power Integrations knew or should have known would have been important to a reasonable examiner.  The undisclosed prior art references include at least devices that anticipate or render obvious claims

10

of the '366 Patent, that were designed, manufactured, offered for sale and sold by Power

Integrations more than a year before the application leading to the '366 Patent was filed.

26.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists

between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the

claims of the '366 Patent are enforceable or unenforceable.

<div align="center">

**Power Integrations' TOP100-4 TopSwitch Datasheets and
Family of Devices**

</div>

27.    Power Integrations' TOP100-4 TopSwitch family of devices was and is highly

material prior art to the patentability of the claims of the '366 patent, would have been important

to a reasonable examiner, would have established at least a case of prima facie obviousness of

the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates

claims of the '366 Patent. These devices were offered for sale and sold by Power Integrations at

least as early as May 18, 1997. Power Integrations published in the United States datasheets

describing its TOP100-4 TopSwitch family of devices at least as early as July 1996. A copy of

such a datasheet is attached hereto as Exhibit A. This is more than a year before Power

Integrations filed the application leading to the '366 Patent and thus the TOP100-4 TopSwitch

family of devices and the Power Integrations datasheets describing those products are prior art to

the '366 Patent.

28.    The TOP100-4 TopSwitch family of devices and the datasheets describing those

devices were and are highly material to the patentability of the '366 Patent because they teach

every element of claims of the '366 Patent. The materiality of this prior art is demonstrated by

the fact that Figure 1 from the Power Integrations TOP100-4 TopSwitch datasheet (described in

that datasheet as a "typical application") is identical to Figure 2 of the '366 Patent, which the

Applicants describe as their "invention" (except that the reference to the prior art TOP100-4

device is replaced with a black box PWM controller). *See*, '366 Patent, col. 4, lines 50-52 ("Fig.

2 is a presently preferred power supply utilizing an [sic] pulse width modulated switch according

to the present invention."; *see also*, '366 Patent, col. 5, lines 3-column 6, line 34 (describing

11

Figure 2, identical to Figure 1 from the prior art TOP100-4 datasheet, as the "preferred embodiment".).

29.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' TOP100-4 TopSwitch family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent.  On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' TOP100-4 TopSwitch family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art.  This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

## Power Integrations' TOP200-4/14 TopSwitch Datasheets and Family of Devices

30.    Power Integrations sold additional devices that anticipate the claims of the '366 Patent more than a year before the application leading to that patent was filed.  For instance, Power Integrations published the TOP200-4/14 datasheet at least as early as November, 1994, a copy of which is attached hereto as Exhibit B.  On information and belief, Power Integrations offered for sale and sold its TOP200-4/14 family of devices more than a year before the application leading to the '366 patent was filed.

31.    As with the TOP100-4, the TOP200-4/14 (and datasheets describing these devices) were and are highly material to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of that patent.  The materiality of this prior art is demonstrated by the fact that Figure 1 from the Power Integrations TOP200-4/14 TopSwitch datasheet (described in that datasheet as a "typical application") is identical to Figure 2 of the '366 Patent, which the

12

Applicants describe as their "invention" (except that the reference to the prior art TOP100-4 device is replaced with a black box PWM controller). *See*, '366 Patent, col. 4, lines 50-52 ("Fig. 2 is a presently preferred power supply utilizing an [sic] pulse width modulated switch according to the present invention."; *see also*, '366 Patent, col. 5, lines 3-column 6, line 34 (describing Figure 2, identical to figure 1 of the prior art TOP100-4 datasheet, as the "preferred embodiment".).

32.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' TOP200-4/14 TopSwitch family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' TOP200-4/14 TopSwitch family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

<div align="center">

**Power Integrations' TOP221-227 TopSwitch Datasheets and
Family of Devices**

</div>

33.    On information and belief, Power Integrations also offered for sale and sold the TOP221-227 TopSwitch-II family of devices prior to the filing of the application that led to the '366 Patent. Further, Power Integrations published in the United States datasheets describing the TOP221-227 TopSwitch-II family of devices at least as early as December, 1997, a copy of which is attached hereto as Exhibit C.

34.    As described in the December 1997 datasheet, the prior art TOP221-227 TopSwitch-II family of devices anticipates claims of the '366 Patent. Thus, the TOP221-227 TopSwitch-II family of devices – and datasheets describing those devices – were and are highly material to the patentability of the '366 Patent, would have been important to a reasonable

examiner and would have established at least a case of prima facie obviousness of the claims

Power Integrations prosecuted in the '366 Patent.

35.    As with the TOP100-4 and TOP200-4/14 datasheets, Figure 1 from the TOP221-

227 datasheet (described as a "typical flyback application") is identical to Figure 2 of the '366

Patent, which the Applicants describe as their "invention" (except that the reference to the prior

art TOP100-4 device is replaced with a black box PWM controller). *See*, '366 Patent, col. 4,

lines 50-52 ("Fig. 2 is a presently preferred power supply utilizing an [sic] pulse width

modulated switch according to the present invention."; *see also*, '366 Patent, col. 5, lines 3-

column 6, line 34 (describing Figure 2, identical to Figure 1 of the prior art TOP100-4 datasheet,

as the "preferred embodiment".).

36.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366

Patent disclosed to the Patent Office either Power Integrations' TOP221-227 TopSwitch-II

family of devices or the Power Integrations datasheets describing those devices during the

prosecution of the '366 Patent. On information and belief, as employees of Power Integrations

working on the design and development of Power Integrations' devices, the Applicants were

aware of Power Integrations' TOP221-227 TopSwitch-II family of devices and the Power

Integrations datasheets describing those devices, knew or should have known of the materiality

of those devices and data sheets to the patentability of the pending claims that issued in the '366

patent and intentionally or in bad faith withheld this highly material prior art. This constitutes

inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

### Power Integrations' SMP260 Family of Devices and "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies" article.

37.    Power Integrations also offered for sale and sold the PWR-SMP260 family of

devices prior to the filing of the application that led to the '366 Patent. On information and

belief, these products were also described in datasheets published by Power Integrations in the

United States more than a year before Power Integrations filed the application leading to the '366

Patent. A copy of the SMP260 datasheet is attached as Exhibit D.

14

38.     Power Integrations' PWR-SMP260 devices were also described in an article by Richard A. Keller entitled "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies", published in 1992, ("Keller Article"), a copy of which is attached as Exhibit F. Upon information and belief, at the time of the article Richard A. Keller was employed by Power Integrations.

39.     Both the PWR-SMP260 devices and the Keller article were and are highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of the '366 Patent.

40.     Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed either the PWR-SMP260 devices or the Keller Article to the Patent Office during the prosecution of the '366 Patent.

41.     On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP260 devices and the Keller Article, knew or should have known of the materiality of those devices and the Keller Article to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

### Power Integrations' SMP240 Family of Devices

42.     Power Integrations also offered for sale and sold the PWR-SMP240 family of devices prior to the filing of the application that led to the '366 Patent. On information and belief, these products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '366 Patent. A copy of the SMP240 datasheet is attached as Exhibit E.

43.     The PWR-SMP240 devices was and is highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of the '366 Patent.

44.     Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed the PWR-SMP240 devices to the Patent Office during the prosecution of the '366 Patent.

45.     On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP240 devices, knew or should have known of the materiality of those devices to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

**Power Integrations' SMP211 Datasheets and Family of Devices**

46.     Power Integrations' SMP211 family of devices was and is highly material prior art to the patentability of the claims of the '366 Patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates claims of the '366 Patent. These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. Power Integrations published in the United States datasheets describing its SMP211 family of devices at least as early as 1996. A copy of such a datasheet is attached hereto as Exhibit G. This is more than a year before Power Integrations filed the application leading to the '366 Patent and thus the SMP211 family of devices and the Power Integrations datasheets describing those products are prior art to the '366 Patent.

47.     The SMP211 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '366 Patent because they teach every element

of claims of the '366 Patent. Figure 1 of the '366 Patent was described by the Applicants as the "Prior Art". This prior art figure includes a devices labeled "SMP211", which was a prior art Power Integrations device. The Applicants, however, withheld all information about their own SMP211 device from the Patent Examiner.

48.    On December 13, 1999, during the prosecution of Application No. 09/080,774, the application that ultimately led to the issuance of the '366 Patent, the Examiner rejected pending claims as anticipated by Prior Art Figure 1:

> Claims 29, 35 & 37 are rejected under 35 U.S.C. 102(b) as being anticipated by Applicants' Prior Art Fig. 1.
>
> Applicants' Prior Art Fig. 1 shows a first terminal 95, a second terminal Com, a switch/drive circuit 90 and a frequency variation circuit 140 as recited in claim 29.
>
> Further shown is a rectifier 10, a capacitor 15, a first winding 35 and a second winding 45 as recited in claim 35.
>
> Further shown is a feedback terminal (Error Amplifier in) as recited in claim 37.

The Examiner, however, allowed other claims because of his belief that the prior art did not include an oscillator that generated a maximum duty cycle signal and a signal with a frequency range depending on the frequency variation circuit:

### Allowable Subject Matter

> The prior Art of record does not appear to disclose or suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1.

49.    However, unknown to the Examiner, the SMP211 device referred to in Figure 1 of the '366 Patent actually included "an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit". *See* Exh. G, Figure 3 and 2-48 – 2-49. Thus, the SMP211 is highly relevant and material to the patentability of the '366 Patent. The Applicants, however, continued to withhold information concerning the SMP211 from the Examiner.

17

50.    Rather than disclose the SMP211, the Applicants amended the rejected claims to include the oscillator limitation that the Examiner erroneously believed to be missing from the prior art of record:

In the December 13, 1999 Office Action, claims 29, 35 and 37 are rejected under 35 U.S.C. § 102(b) as being anticipated by Applicants' Prior Art Figure 1.

Claim 29 as presently amended now expressly recites a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal. The Applicants' Prior Art Figure 1 fails to disclose, teach or suggest such limitations. Accordingly, the Applicants respectfully submit that the instant section 102 rejection has been overcome.

51.    Applicants' prior art SMP211 device – and datasheets describing the SMP211 device – clearly disclose "a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal." *See* Exh. G at Figure 3 and 2-48 – 2-49. Despite this, Applicants continued to withhold any information about their SMP211 devices. While withholding this information, the Applicants argued that the Examiner should allow the amended claims because Applicants had added limitations concerning the maximum duty cycle signal limitation, which they claimed was not present in the prior art of record (even though these limitations are present in the SMP211 devices and datasheets). Thereafter, the Examiner allowed the amended claims based upon the Applicants' false representations regarding the absence of a maximum duty cycle signal from the prior art.

52.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' SMP211 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP211 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this

18

highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

### Power Integrations' SMP3 Family of Devices, Datasheets, and "Off-Line PWM Switching Regulator IC Handles 3W" Article

53.    In addition, Power Integrations' SMP3 family of devices was and is highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates claims of the '366 Patent. On information and belief, these devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. These devices are described in an article entitled "Off-Line PWM Switching Regulator IC Handles 3W" by F. Goodenough, published on March 22, 1990 in *Electronic Design* (pp. 35-39) ("Goodenough Article"). A copy of the Goodenough Article is attached hereto as Exhibit I.

54.    On information and belief, F. Goodenough was employed by Power Integrations when he wrote and published the Goodenough Article.

55.    The prior art SMP3 devices and the Goodenough Article were and are highly material to the patentability of the '851 Patent as both the devices and the Article anticipate claims of that Patent.

56.    Despite the highly material nature of the Power Integrations SMP3 devices and the Goodenough Article, neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the Power Integrations SMP3 devices or the Goodenough Article to the Patent Office during the prosecution of the '851 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP3 family of devices and the Goodenough Article describing those devices, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent,

and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

**Seventh Counterclaim: Declaratory Judgment of Unenforceability the '851 Patent**

57.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

58.    The '851 Patent, and each claim thereof, is unenforceable due to the inequitable conduct during the prosecution of the '851 Patent.

59.    During the prosecution of the '851 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office prior art that was highly material to the patentability of the claims of the '851 Patent, and that Power Integrations knew or should have known would have been important to a reasonable examiner. The undisclosed prior art references include at least devices that anticipate or render obvious claims of the '851 Patent, that were designed, manufactured, offered for sale and sold by Power Integrations more than a year before the application leading to the '851 Patent was filed.

60.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '851 Patent are enforceable or unenforceable.

**Power Integrations' SMP402 Datasheets and Family of Devices**

61.    Power Integrations' SMP402 family of devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent. On information and belief, these devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. Power Integrations published datasheets in the United States describing its SMP402 family of devices at least as early as January, 1996. A copy of such a datasheet is attached hereto as Exhibit H. This is more than a year before Power Integrations filed the application leading to the '851 Patent and thus the

SMP402 family of devices and the Power Integrations datasheets describing those products are prior art to the '851 Patent.

62.     The SMP402 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '851 Patent because they teach every element of claims of the '851 Patent.

63.     Power Integrations failed to disclose to the Patent Office either Power Integrations' SMP402 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '851 Patent.  On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP402 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith withheld this highly material prior art.  This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

### Power Integrations' SMP3 Family of Devices, Datasheets, and "Off-Line PWM Switching Regulator IC Handles 3W" Article

64.     In addition, Power Integrations' SMP3 family of devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent.  On information and belief, these devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997.  These devices are described in an article entitled "Off-Line PWM Switching Regulator IC Handles 3W" by F. Goodenough, published on March 22, 1990 in *Electronic Design* (pp. 35-39) ("Goodenough Article").  A copy of the Goodenough Article is attached hereto as Exhibit I.

65.     On information and belief, F. Goodenough was employed by Power Integrations when he wrote and published the Goodenough Article.

21

66.    The prior art SMP3 devices and the Goodenough Article were and are highly material to the patentability of the '851 Patent as both the devices and the Article anticipate claims of that Patent.

67.    Despite the highly material nature of the Power Integrations SMP3 devices and the Goodenough Article, neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the Power Integrations SMP3 devices or the Goodenough Article to the Patent Office during the prosecution of the '851 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP3 family of devices and the Goodenough Article describing those devices, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

### Power Integrations' SMP260 Datasheets, Family of Devices, and "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies" Article

68.    Power Integrations also offered for sale and sold the PWR-SMP260 family of devices prior to the filing of the application that led to the '851 Patent. On information and belief, these products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '851 Patent. A copy of the SMP260 datasheet is attached as Exhibit D.

69.    Power Integrations' PWR-SMP260 devices were also described in an article by Richard A. Keller entitled "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies", published in 1992, ("Keller Article"), a copy of which is attached as Exhibit F. Upon information and belief, at the time of the article Richard A. Keller was employed by Power Integrations.

70.    The PWR-SMP260 devices and the Keller article were and are both material to the patentability of the '851 Patent as both anticipate claims of that patent.

22

71.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the PWR-SMP260 devices or the Keller Article to the Patent Office during the prosecution of the '851 Patent.

72.    On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP260 devices and the Keller Article, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

### Power Integrations' SMP240 Family of Devices

73.    Power Integrations also offered for sale and sold the PWR-SMP240 family of devices prior to the filing of the application that led to the '851 Patent. On information and belief, these products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '851 Patent. A copy of the SMP240 datasheet is attached as Exhibit E.

74.    The PWR-SMP240 devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipate claims of the '851 Patent.

75.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed the PWR-SMP240 devices to the Patent Office during the prosecution of the '851 Patent.

76.    On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP240 devices, knew or should have known of the materiality of those

devices to the patentability of the pending claims that issued in the '851 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

### Power Integrations' SMP211 Datasheets and Family of Devices

77.    Power Integrations' SMP211 family of devices was and is highly material prior art to the patentability of the claims of the '851 Patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent. These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. Power Integrations published in the United States datasheets describing its SMP211 family of devices at least as early as 1996. A copy of such a datasheet is attached hereto as Exhibit G. This is more than a year before Power Integrations filed the application leading to the '851 Patent and thus the SMP211 family of devices and the Power Integrations datasheets describing those products are prior art to the '851 Patent.

78.    The SMP211 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '851 Patent because they teach every element of claims of the '851 Patent. Figure 1 of the '851 Patent was described by the Applicants as the "Prior Art". This prior art figure includes a devices labeled "SMP211", which was a prior art Power Integrations device. The Applicants, however, withheld all information about their own SMP211 device from the Patent Examiner.

79.    On December 13, 1999, during the prosecution of the '851 Patent, the Examiner rejected pending claims as anticipated by Prior Art Figure 1:

Claims 29, 35 & 37 are rejected under 35 U.S.C. 102(b) as being anticipated by Applicants' Prior Art Fig. 1.

Applicants' Prior Art Fig. 1 shows a first terminal 95, a second terminal Com, a switch/drive circuit 90 and a frequency variation circuit 140 as recited in claim 29.

Further shown is a rectifier 10, a capacitor 15, a first winding 35 and a second winding 45 as recited in claim 35.

24

Further shown is a feedback terminal (Error Amplifier in) as recited in claim 37. The Examiner, however, allowed other claims because of his belief that the prior art did not include an oscillator that generated a maximum duty cycle signal and a signal with a frequency range depending on the frequency variation circuit:

### *Allowable Subject Matter*

The prior Art of record does not appear to disclose or suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1.

80.     However, unknown to the Examiner, the SMP211 device referred to in Figure 1 of the '851 Patent actually included "an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit". *See* Exh. G, Figure 3 and 2-48 – 2-49. Thus, the SMP211 is highly relevant and material to the patentability of the '851 Patent. The Applicants, however, continued to withhold information concerning the SMP211 from the Examiner.

81.     Rather than disclose the SMP211, the Applicants amended the rejected claims to include the oscillator limitation that the Examiner erroneously believed to be missing from the prior art of record:

In the December 13, 1999 Office Action, claims 29, 35 and 37 are rejected under 35 U.S.C. § 102(b) as being anticipated by Applicants' Prior Art Figure 1.

Claim 29 as presently amended now expressly recites a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal. The Applicants' Prior Art Figure 1 fails to disclose, teach or suggest such limitations. Accordingly, the Applicants respectfully submit that the instant section 102 rejection has been overcome.

82.     Applicants' prior art SMP211 device – and datasheets describing the SMP211 device – clearly disclose "a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal." *See* Exh. G at Figure 3 and 2-48 – 2-49. Despite this, Applicants continued to withhold any information about their SMP211 devices. While withholding this information, the Applicants argued that the Examiner should allow the amended claims because

25

Applicants had added limitations concerning the maximum duty cycle signal limitation, which they claimed was not present in the prior art of record (even though these limitations are present in the SMP211 devices and datasheets). Thereafter, the Examiner allowed the amended claims based upon the Applicants' false representations regarding the absence of a maximum duty cycle signal from the prior art.

83.     Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed to the Patent Office either Power Integrations' SMP211 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '851 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP211 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '851 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

**Seventh Counterclaim:  Declaratory Judgment of Unenforceability the '876 Patent**

84.     FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

85.     The '876 Patent, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '876 Patent.

86.     During prosecution of the '876 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '876 patent under prosecution, and that Power Integrations knew or should have known would have been important to a reasonable examiner. The undisclosed prior art references include at least Power Integrations public disclosure of the technology described in Power Integrations '851 Patent.

26

87.     Power Integrations purports to have invented the invention claimed in the '876 Patent on May 21, 1998. On information and belief, on September 2, 1997 and over eight months before the date of the alleged invention claimed in the '876 Patent, Power Integrations made public disclosure of the alleged invention of the '851 Patent. Thus, the alleged invention of the '851 Patent is prior art to the alleged invention of the '876 Patent pursuant to 35 U.S.C. § 102(a).

88.     Indeed, in their Invention Disclosure Form, the inventors of the '876 Patent describe the alleged invention of the '851 Patent as "PRIOR ART" and include a Figure labeled "Frequency Jittering Prior Art." Power Integrations, however, never informed the Patent Office that the '851 Patent was prior art to the '876 Patent. Power Integrations included the figure from its Invention Disclosure Form that it had previously identified as "PRIOR ART" as Figure 3 of the '876 Patent. Rather than inform the Patent Office that this Figure depicted the prior art, Power Integrations simply stated that "FIG. 3 is a schematic diagram of an analog frequency jittering device" and incorporated the '851 Patent by reference into the specification of the '876 Patent.

89.     The '851 Patent and the public disclosure of devices that embody the '851 Patent are highly material to the patentability of the claims of the '876 Patent and Power Integrations knew or should have known that they would have been important to a reasonable examiner.

90.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '876 Patent are enforceable or unenforceable.

### Eighth Counterclaim:  Declaratory Judgment of Unenforceability the '075 Patent

91.     FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

92.     The '075 Patent, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '075 Patent.

93.     During prosecution of the '075 Patent, the Applicant, Klaus Eklund, and his attorneys failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '075 patent under prosecution, and that Mr. Eklund and his attorneys knew or should have known would have been important to a reasonable examiner.  The undisclosed prior art references include at least technical articles known to Mr. Eklund that were published more than a year before the application leading to the '075 Patent was filed.

94.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '075 Patent are enforceable or unenforceable.

### A Highly Reliable 16 Output High Voltage NMOS/CMOS Logic IC with Shielded Source Structure, by H. Wakaumi, T. Suzuki, M. Saito and H. Sakuma, IEDM 83, pp. 416-419 (1983) and High-Voltage DMOS and PMOS in Analog IC's by A.W. Ludikhuize, IEDM 82, pp. 81-84 (1982).

95.     The article "*A Highly Reliable 16 Output High Voltage NMOS/CMOS Logic IC with Shielded Source Structure*", by H. Wakaumi, T. Suzuki, M. Saito and H. Sakuma ("Wakaumi Article") and the article "*High-Voltage DMOS and PMOS in Analog IC's*" by A.W. Ludikhuize ("Ludikhuize Article") are highly material prior art to the patentability of the claims of the '075 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Mr. Eklund prosecuted in the application for the '075 Patent.  The Wakaumi Article was published in the IEDM journal at least as early as 1983.  A copy of the Wakaumi Article is attached hereto as Exhibit J.  The Ludikhuize Article was published in the IEDM journal at least as early as 1982.  A copy of the Ludikhuize Article is attached hereto as Exhibit K.  Since both articles were published more than a year before Power Integrations filed the application leading to the '075 Patent, they are prior art to the '075 Patent.

96.     The materiality of the Wakaumi and Ludikhuize Articles is demonstrated by the fact that Mr. Eklund was aware of both articles at the time he allegedly conceived of the '075 Patent, considered the articles to be "key" references, and specifically identified at least the

Wakaumi Article in notes that he now claims describe the invention leading to the '075 Patent. Indeed, one of ordinary skill in the art would have been motivated to combine the Wakaumi and Ludikhuize Articles and the combination of these Articles meets every element of each asserted claim of the '075 Patent. Thus, the claims of the '075 Patent are obvious in light of the Wakaumi and Ludikhuize Articles.

97. Despite his admitted knowledge and appreciation of the Wakaumi and Ludikhuize Articles, neither Mr. Eklund nor his attorneys disclosed either Article to the Patent Office during the prosecution of the '075 Patent. This constitutes inequitable conduct that renders all claims of the '075 Patent permanently unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, FAIRCHILD prays for the following relief:

A. The Court enter judgment against PI, and dismiss with prejudice, any and all claims of PI's First Amended Complaint for Patent Infringement; and order that Plaintiff take nothing as a result of the First Amended Complaint;

B. The Court enter judgment declaring that FAIRCHILD has not infringed, contributed to infringement of, or induced infringement of the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent;

C. The Court enter judgment declaring that the '851 Patent, the '876 Patent, the '366 Patent, and the '075 Patent are invalid;

D. The Court enter judgment declaring that the '851 Patent, the '876 Patent, the '366 Patent, and the '075 Patent are unenforceable;

E. The Court award to FAIRCHILD its reasonable costs and attorneys' fees against PI pursuant to the provisions of 35 U.S.C. § 285;

F. The Court award to FAIRCHILD pre-judgment interest and costs of this action; and,

G.  The Court grant to FAIRCHILD such other and further relief as may be deemed just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38.1 of the Local Rules of the United States District Court for the District of Delaware, Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation hereby demand a trial by jury on this action.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*
*Fairchild Semiconductor International,*
*Inc. and Fairchild Semiconductor*
*Corporation*

Of Counsel:

G. Hopkins Guy, III
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Tel: (650) 614-7400

Dated: February 23, 2006
166925.1



HARRIS CORPORATION

Harris Home | Contact Us | About Harris | Careers | Investors

Search Harris

**Worldwide Operations**

- Home
- Products
- Support & Training
- About Harris
- Worldwide Operations
- Investor Relations
- Corporate Governance
- News & Information
- Tradeshows
- Careers
- Customer Login
- Contact Us
- Site Map

## Technical Excellence in the Same Time Zone

Customers around the globe want to be confident that their unique communications needs are understood and supported by people who are within easy reach. As part of Harris' commitment being a leader in the worldwide communications market, we have continued to strengthen our international position by establishing a strong local presence in each of the markets we serve.

We call this endeavor "Technical Excellence in the Same Time Zone." It means that, wherever you are in the world, you have local or regional access to expert Harris sales and service personnel speak your language, understand your region's communications infrastructure, and are familiar with the regulatory requirements of your area.

Harris is headquartered in the U.S. and has sales and service facilities in more than 90 countrie

- Corporate Headquarters
- Division Headquarters
- Worldwide Locations

### CORPORATE HEADQUARTERS

Harris Corporation Headquarters
1025 West NASA Boulevard
Melbourne, Florida 32919-0001

**For product information:**
U.S. and Canada Callers dial: 1-800-4-HARRIS
International Callers dial: 1-321-727-9207

**Switchboard:**
Switchboard: 1-321-727-9100
Email: webmaster@harris.com

More contact information including maps and driving directions »

### DIVISION HEADQUARTERS

**Government Communications Systems Division**

*Communication, command, control, computer, and intelligence (C4I) systems; custom aircraft spaceborne communication systems; and data processing systems that collect, process, display, and distribute information.*

## WORLDWIDE LOCATIONS

**Asia Pacific**

Malaysia
Harris Asia Pacific (M) Sdn. Bhd.
Suite 803
Menara Amcorp,

**Europe, Middle East and Africa**

France
Harris Communication S.A.S.
Centrale Parc, Bâtiment n°4 Pasteur
Avenue Sully Prud'homme

2400 Palm Bay Road, NE
Palm Bay, FL USA 32905
Tel: 1-321-727-9100
Fax: 1-321-727-4500
Email: govt@harris.com
View all Government Communications Systems Division locations

**RF Communications Division**
*Secure radio products, systems, and networks; and encryption solutions for military, government,
and commercial organizations worldwide.*

1680 University Avenue
Rochester, NY USA 14610
Tel: 1-585-244-5830
Fax: 585-242-4755
Email: rfcomm@harris.com
View RF Communications Division Contacts

**Broadcast Communications Division**
*Analog and digital broadcast equipment, studio systems, automation and network management
systems.*

4393 Digital Way
Mason, OH USA 45040
Tel: 1-513-459-3400
Fax: 1-513-701-5301
Email: broadcast@harris.com
View Broadcast Communications Division Contacts

**Microwave Communications Division**
*Wireless network solutions.*

Keystone Park
(Research Triangle Park)
637 Davis Drive
Morrisville, North Carolina 27560
Tel: 1-919-767-3230
Fax: 1-919-767-3233
Email: microwave@harris.com
View all Microwave Communications Division locations

**France**

92298 Châtenay-Malabry Cedex
France
Tel: 33-1-55-52-80-00
Fax: 33-1-55-52-80-01

Harris – ITS
Bâtiment S
Centre Espace Performance
35769 Saint Gregoire Cedex
France
Tel: 33-2-99-23-7220
Fax: 33-2-99-23-1091

**United Kingdom**

Harris Systems Ltd.
Eskdale Road
Winnersh, Wokingham
Berkshire RG41 5TS
United Kingdom
Tel: 44-118-964-8000
Fax: 44-118-964-8001

**Austria**

Harris Corporation
Oberer Paspelsweg 6-8
6830 Rankweil-Brederis
Austria
Tel: 43-5522-9011-2200
Fax: 43-5522-9011-2561

**Romania**

Harris Communications
International Inc.
Bd. Expozitiei nr. 2
Ap. D 1.10, Et. 1
78334 Bucharest 1
Romania
Tel: +40-21-319-1262
Fax: +40-21-319-1123

**Russia**

Harris Corporation
15, Office 605, 6th Floor
Bolshoi Cherkassky Pereulok
Moscow 103626,
Russia
Tel: 7-095-923-3169
Fax: 7-095-927-0939

**Saudi Arabia**

Harris Corporation
P.O. Box 6777
King Abdul Azziz Road

**Canada**

**Montreal**

Harris Corporation
3 Hôtel de Ville,
Dollard-des-Ormeaux
Montreal, Quebec.

**Vietnam**

Harris Corporation
Unit 603, 6th Floor
Sun Red River Building
23 Phan Chu Trinh Street
Hoan Kiem District
Hanoi
Vietnam 10000
Tel: 844-933-1314
Fax: 844-933-1315

**Thailand**

Harris Corporation
1TF Tower II, 10/F
140/14 Silom Road
Khet Bangrak
Bangkok 10500
Thailand
Tel: 662-231-6219 or 6748
Fax: 662-231-6218

**Singapore**

Harris Corporation
122 Middle Road, #04-03
Midlink Plaza
Singapore City
Singapore 188973
Tel: 65-6333-9038
Fax: 65-6333-9039

**Philippines**

Harris Corporation
8/F Pacific Star Building
Sen. Gil Puyat Corner
Makati Avenue
Makati City, Manila
Philippines 1200
Tel: 632-818-5111 Ext: 102
Fax: 632-818-8165

Malaysia 46050
Petaling Jaya, Selangor
No. 18 Jalan Persiaran Barat
Amcorp Trade Centre
Tel: 603-7956-8666
Fax: 603-7956-3666

Harris Corporation International Sales Operations

**Caribbean and Latin America**

**Argentina**
Harris Corporation
Tucumán 540 Piso 28 J
Buenos Aires
Argentina C1049AAL
Tel: 54-11-4325-0182
Fax: 54-11-4325-0183

**Brazil**
Harris do Brasil Ltda.
Edifício Stadium
Al. Rio Negro 1030
Conjuntos 202/204/206
Alphaville
Barueri, Sao Paulo
Brazil CEP 06454-000
Tel: 55-11-4197-3000
Fax: 55-11-4197-3001

**Mexico**
Harris S.A. de C.V.
Torre Esmeralda II
Blvd Manuel Avila Camacho #36, Piso 17
Col Lomas de Chapultepec
Mexico D.F., C.P. 11000
Tel: 52-55-5249-3700
Fax: 52-55-5249-3701

**People's Republic of China**

**Beijing**
Harris Corporation
Tower 2, Room 1817-1818
Beijing Bright China
Chang'An Building
No.7, Jian Guo Men Nei Avenue
Dong Cheng District,
Beijing 100005
P.R. China
Tel: 86-10-6510-1880
Fax: 86-10-6510-1870

**Shanghai**
Harris Communications Limited
Room 3711, Citic Square
1168 Nanjing Road (West),
Shanghai 200041
P.R. China
Tel: 86-21-5292-5660
Fax: 86-21-5292-5955

**Shenzhen**
Harris Communications
(Shenzhen) Ltd.
R3-B2, High-Tech Industrial Park
Nanshan District
Shenzhen 518057
P.R. China
Tel: 86-755-2663-7928
Fax: 86-755-2663-7048

**Nigeria**
Harris Communications Systems Nigeria Ltc
Imperial Place, Plot 274
Ajose Adeogun Street, VI
Lagos, Nigeria
Tel: 234-1-444-8888 or 234-1-444-8889
Fax: 234-1-270-1888

Riyadh, 11452 Saudi Arabia
Tel: 966 1 473 5025
Mobile: 966 505 287 433 (preferable)
Fax: 966 1 470 8374 or 966 1 473 5035
eFax: 1 321 674 2895

Canada H9B 3G4
Tel: 514-421-8400
Fax: 514-421-4222

assuredcommunications™

Contact Harris. Terms of Use. © 2006 Harris Cor

**ATTORNEYS & AGENTS**

**Charles E. Wands**
Of Counsel, Registered Patent Attorney

Orlando

**Email:**
cewands@addmg.com

**Telephone:**
407-841-2330

**Facsimile:**
407-841-2343



**Practice Areas:**

- Patent Acquisition and Counseling

**Admitted:**

- 1982: Florida
- 1982: United States Supreme Court
- 1982: United States Court of Appeals, Fifth and Eleventh Circuits, District of Columbia
- 1982: United States District Court, Middle District of Florida, District of Columbia
- 1971: Virginia Bar
- 1971: District of Columbia Bar
- United States Patent and Trademark Office

**Education:**

- 1970: George Washington University, J.D.
- 1966: Georgia Institute of Technology B.S.E.E.

**ATTORNEYS & AGENTS**

Herbert L. Allen

Jeffrey S. Boyles

Paul J. Dittmyer

Linda C. Dolan

Ava K. Doppelt

Robert Dyer

Enrique G. Estevez, Ph.D.

Brian R. Gilchrist

Jacqueline E. Hartt, Ph.D.

Meaghan P. Hemmings

David W. Henry

Stephen H. Luther

Stephen D. Milbrath

Carl M. Napolitano, Ph.D.

Cian G. O'Brien

Christopher F. Regan

David L. Sigalow

Ryan T. Santurri

David L. Stewart

Michael W. Taylor

Robert H. Thornburg

Charles E. Wands

ALLEN

DYER

DOPPELT

MILBRATH &

GILCHRIST, P.A.

INTELLECTUAL PROPERTY ATTORNEYS





Richard K. Warther

John F. Woodson, II

Print Page

**Biography:**

Mr. Wands specializes in patent prosecution and patent infringement studies. He also counsels clients in electrical areas plus computer hardware and software. Mr. Wands wa formerly a Patent Examiner for the United States Patent Office.

**Affiliations:**

- American Bar Association
- The District of Columbia Bar
- The Florida Bar
- Society of Exploration Geophysicists
- Virginia Bar Association

Español Locations Legal Sitemap Contact Us

ALLEN
DYER
DOPPELT
MILBRATH &
GILCHRIST, P.A.
INTELLECTUAL PROPERTY ATTORNEYS

ABOUT US | ATTORNEYS & AGENTS | PRACTICE AREAS | RESOURCE CENTER | CONTACT US

Print Page

**CONTACT US**

**Orlando (Principal Office)**

Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Orlando, Florida 32801

Tel.: 407-841-2330
Fax: 407-841-2343

The postal address for the Orlando office is:

Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.
P.O. Box 3791
Orlando, Florida 32802-3791

Get Directions

**Jacksonville**

4720 Salisbury Rd
Suite 241
Jacksonville, FL 32256

Tel: 904-470-0002
Fax: 407-841-2343

Get Directions

**Melbourne**

1901 S. Harbor City Blvd.,
Suite 507
Melbourne, Florida 32901

Tel.: 321-725-4760
Fax: 321-984-7078

Get Directions

**Colorado Springs**

102 South Tejon Street
Suite 1100
Colorado Springs, FL 80903

Get Directions

**E-mail contact:**

Direct contact: We prefer that you contact the attorney or agent of your choice directly by e-mail. Please check under the attorney or agent's name in our Attorneys & Agents section for the direct e-mail address.

General inquiry: If you prefer to send a general inquiry to the firm, you may send an e-mail to:

info@addmg.com

**Español** **Locations** **Legal** **Sitemap** **Contact Us**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, INTERSIL AMERICAS, INC., a Delaware corporation and INTERSIL CORPORATION, a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Defendants. | CIVIL ACTION NO. 2:06-cv-151 |

## DECLARATION OF GABRIEL M. RAMSEY IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER THIS CASE TO DELAWARE

I, Gabriel M. Ramsey, the undersigned, declare as follows:

1.    I am an associate at the Menlo Park office of Orrick, Herrington & Sutcliffe, LLP. I have personal knowledge of each fact stated herein, and am competent to testify to the same.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the September 27, 1999 assignment of the '719 Patent from Harris Corp. to Intersil Corp.

3.    Attached hereto as Exhibit 2 is a true and correct copy of the restated certificate of incorporation of Intersil Corp., changing its name to Intersil Communications, Inc.

4.    Attached hereto as Exhibit 3 is a true and correct copy of the April 14, 2006 assignment of the '719 Patent from Intersil Communications, Inc. to Intersil Americas, Inc.

5.    Attached hereto as Exhibit 4 is a true and correct copy of a redacted version of the March 30, 2006 exclusive license of the '719 Patent from Intersil Corp. to Fairchild Semiconductor Corp.

6.    Attached hereto as Exhibit 5 is a true and correct copy of the May 17, 2006

Supplemental Agreement, effective March 30, 2006, between Intersil Corp., Intersil Americas, Inc. and Fairchild Semiconductor Corp. ratifying and granting the exclusive license of the '719 Patent to Fairchild Semiconductor Corp.

7.     Attached hereto as Exhibit 6 is a true and correct copy of "Plaintiff's Amended Complaint," filed in the instant action by Fairchild Semiconductor Corp., Intersil Americas, Inc. and Intersil Corp. against Power Integrations, Inc. and asserting U.S. Patent No. 5,264,719.

8.     Attached hereto as Exhibit 7 is a true and correct copy of the "First Amended Complaint for Patent Infringement," filed in the Delaware action (C.A. No. 04-1371-JJF) by Power Integrations, Inc. against Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., and asserting U.S. Patent Nos. 6,107,851, 6,249,876, 6,229,366, and 4,811,075.

9.     Attached hereto as Exhibit 8 is a true and correct copy of "Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation's First Amended Answer And Counterclaims To Plaintiff's First Amended Complaint for Patent Infringement and Demand for Jury Trial," filed in the Delaware action (C.A. No. 04-1371-JJF).  In this document Fairchild does not allege any counterclaims of infringement of any patent.

10.     Attached hereto as Exhibit 9 is a true and correct copy of a document located at <http://www.harris.com/harris/contact/worldwide-operations.html#1> indicating that Harris Corporation's corporate headquarters are located in Melbourne, Florida.

11.     Attached hereto as Exhibit 10 are true and correct copies of documents located at <http://www.addmg.com/people_wands.html> and <http://www.addmg.com/contact.html> indicating that attorney Charles E. Wands is located in Orlando, Florida.

12.     Some of the same claim language is used between the '719 Patent in this case and the '075 Patent in the Delaware action.  However, the claims are not identical.  The specifications and file histories of the patents-in-suit in the Delaware action and the '719 Patent in suit in the instant action are different.  The '719 Patent has a different inventor than the patents-in-suit in Delaware.  Different products are accused to infringe in the Delaware action (Fairchild's products are accused there) and the instant action (PI's products are accused here).

13.     The '719 Patent is asserted among other prior art in the Delaware action. However, the primary prior art assertion in the Delaware case involves not the '719 Patent, but its "parent" patent.

14.     In the Delaware action, a bifurcated trial is set for October, 2006 and December, 2006. Substantial discovery has been conducted regarding infringement, validity and enforceability of the four patents at issue in that case. Summary judgment motions have been heard and ruled upon. Pre-trial materials have been exchanged. Infringement of the '719 Patent is not asserted in the Delaware action, therefore pre-trial proceedings have not and trial in that action will not deal with infringement, validity or enforceability of the '719 Patent.

15.     Upon information and belief, the only appearance that Intersil has made in the Delaware action (C.A. No. 04-1371-JJF) was to file a motion to quash on the basis that discovery related to the above-captioned action should be left to and decided by this Court

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Menlo Park, California on July 26, 2006.

_____
Gabriel M. Ramsey

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, INTERSIL AMERICAS, INC., a Delaware corporation and INTERSIL CORPORATION, a Delaware corporation<br><br>     Plaintiff,<br><br> v.<br><br>POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>     Defendants. | **CIVIL ACTION NO. 2:06-cv-151** |

## ORDER DENYING POWER INTEGRATIONS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER THIS CASE TO DELAWARE

ON THIS DAY, came on to be considered Power Integrations, Inc.'s Motion to Dismiss, or in the Alternative, to Transfer This Case to Delaware in the above-styled and numbered cause. After considering said motion, the Court is of the opinion that said motion should be DENIED.