IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION, a Delaware corporation,
INTERSIL AMERICAS, INC., a Delaware
corporation, and INTERSIL
CORPORATION, a Delaware corporation,

              Plaintiffs,

      v.

POWER INTEGRATIONS, INC., a
Delaware corporation,

              Defendant.

**REDACTED**

C.A. No. 07-187 (JJF)

**CONTAINS CONFIDENTIAL
INFORMATION – SUBJECT TO
PROTECTIVE ORDER**

**FILED UNDER SEAL**

## POWER INTEGRATIONS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Dated:  September 7, 2007

William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email:  marsden@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR DEFENDANT
POWER INTEGRATIONS, INC.**

## TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS ............................................1

II.  SUMMARY OF THE ARGUMENT .....................................................1

III. STATEMENT OF FACTS .........................................................4

IV.  ARGUMENT .....................................................................6

    A.   Legal Authority..........................................................7

        1.   A Party Must Have Standing to Sue for
           Infringement.......................................................7

        2.   If There is No Standing, the Complaint Must be
           Dismissed..........................................................8

    B.   Fairchild Lacks Standing to Sue for Infringement
       Because It Is a Bare Licensee of the '719 Patent.....................10

    C.   Fairchild Lacks Standing Regardless of the Participation
       of the Intersil Entities...............................................15

    D.   The Intersil Entities Lack Standing to Sue for
       Infringement Because the Sole and Exclusive Right to
       Enforce the '719 Patent Against Power Integrations Has
       Been Transferred.......................................................17

    E.   The Plaintiffs Should Be Ordered to Show Cause Why
       This Action Should Not Be Dismissed With Prejudice...................17

V.   CONCLUSION...................................................................21

i

## TABLE OF AUTHORITIES

**Page(s)**

<u>**CASES**</u>

*Crown Die & Tool Co. v. Nye Tool & Machine Works,*
  261 U.S. 24 (1923)....................................................................................2, 3, 12, 18

*Hall v. State of Delaware,*
  655 A.2d 827 (Del. Super. 1994) ...........................................................................3, 20

*In re Intel Corp. Microprocessor Antitrust Litigation,*
  452 F. Supp. 2d 555 (D. Del. 2006)...............................................................................9

*Kenrich Corp. v. Miller,*
  377 F.2d 312 (3d Cir. 1967).................................................................................3, 19, 20

*Ortho Pharm. Corp. v. Genetics Institute, Inc.,*
  52 F.3d 1026 (Fed. Cir. 1995).......................................................................................2

*Pfizer, Inc. v. Elan Pharm. Research Corp.,*
  812 F. Supp. 1352 (D. Del. 1993)..................................................................................8

*Prima Tek II, LLC v. A-Roo Co.,*
  222 F.3d 1372 (Fed. Cir. 2000)........................................................................... passim

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.,*
  917 F. Supp. 305 (D. Del. 1995).....................................................................................9

*Propat International Corp. v. RPost, Inc.,*
  473 F.3d 1187 (Fed. Cir. 2007)............................................................................ passim

*Sicom Systems Ltd. v. Agilent Techns., Inc.,*
  2004 WL 1272273 (D. Del. Oct. 5, 2004) ...........................................................13, 17

*Sicom Systems Ltd. v. Agilent Techs., Inc.,*
  427 F.3d 971 (Fed. Cir. 2005)............................................................................. passim

*Textile Products Inc. v. Mead Corp.,*
  134 F.3d 1481 (Fed. Cir. 1998)............................................................................ passim

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990).......................................................................................................9

## STATUTES

Fed. R. Civ. P. 12(b)(1) .......................................................................................................1

35 U.S.C. § 100(d) ...............................................................................................................7

35 U.S.C. § 281 .....................................................................................................................7

Fairchild does not have standing to prosecute this case because it does not own U.S. Patent No. 5,264,719 ("the '719 Patent") and is not the exclusive licensee of the patent. Fairchild's recent efforts to buy a cause of action on the '719 Patent from Intersil are insufficient as a matter of law, and the defect is fatal. Therefore, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Power Integrations hereby moves to dismiss this case for lack of standing.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On April 11, 2006, Plaintiffs Fairchild Semiconductor, Inc. ("Fairchild") and Intersil Corporation ("Intersil") initially filed suit against defendant Power Integrations, Inc. ("Power Integrations") alleging infringement of the '719 Patent in the United States District Court for the Eastern District of Texas. (D.I. 36.[1]) The Plaintiffs filed an amended complaint on May 19, 2006, adding Intersil Americas, Inc. ("Intersil Americas") as a party-plaintiff.[2] (D.I. 37.)   On June 19, 2006, Power Integrations filed a motion to dismiss, or in the alternative, to transfer this case to the District Court for the District of Delaware. (D.I. 39). On March 6, 2007, citing substantial overlap in parties and subject matter between this case and an earlier filed case in Delaware, the Texas Court granted Power Integrations' motion to transfer. (D.I. 35). Power Integrations now moves to dismiss this action under Fed. R. Civ. P. 12(b)(1) because the Plaintiffs lack standing to maintain their claims.

## II.    SUMMARY OF THE ARGUMENT

1.    Any license rights Fairchild has under the '719 Patent are explicitly non-exclusive and without the right to sublicense and, therefore, are insufficient to support standing to sue for infringement. "[A]n infringement action brought by a bare licensee must be dismissed." *Propat*

---

[1]    Docket Item ("D.I.") numbers cited herein refer only to filings in the above-captioned case, C.A. No. 1:07-cv-00187-JJF, sometimes referred to herein as "the Fairchild Suit."

*Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007). "[A] 'bare licensee' — one who enjoys only a nonexclusive license — has no standing to sue for infringement under the Patent Act." *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000).

Although Fairchild has also purportedly been granted an "exclusive" right to sue *only* Power Integrations for infringement of the '719 Patent, "a right to sue clause cannot negate the requirement that . . . a licensee must have beneficial ownership of some of the patentee's proprietary rights." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1034 (Fed. Cir. 1995). "[A] nonexclusive licensee . . . has no inherent or implied right to sue which [a right to sue] clause regulates as between the parties." *Id.* Further, "hunting licenses" purporting to assign only a right to sue a named individual have been held insufficient to confer standing. *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 39 (1923). Because Fairchild is a bare licensee, its purported "right to sue" cannot confer standing.

2.    Because Fairchild is a bare, nonexclusive licensee, it lacks standing to sue for infringement under the '719 Patent regardless of the participation of the Intersil Entities. "A nonexclusive license confers no constitutional standing on the licensee to bring suit *or even to join a suit with the patentee* because a nonexclusive licensee suffers no legal injury from infringement." *Sicom Systems Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) (emphasis added). Thus, the participation of the Intersil Entities as plaintiffs in this lawsuit has no effect upon Fairchild's lack of standing. "A bare licensee cannot cure its lack of standing by joining the patentee as a party." *Propat*, 473 F.3d at 1193.

3.    The Intersil Entities themselves have no standing to sue for infringement of the '719 Patent because that right has been contracted away. Pursuant to ¶ 3.1 of the March 30,

---

[2]    Intersil Corporation and Intersil Americas are collectively referred to herein as "the Intersil Entities." Fairchild and the Intersil Entities are collectively referred to herein as "Plaintiffs."

2006 Patent License Agreement, "Intersil grants to Fairchild the sole and exclusive right, exclusive even as to Intersil, to enforce the ['719 Patent] against [Power Integrations]." The terms of the agreement could not be more explicit: Intersil has transferred to Fairchild the exclusive right, exclusive even as to Intersil, to bring any action against Power Integrations, and Intersil has retained no right to bring this action on its own behalf. The fact that Fairchild, as a nonexclusive licensee, itself lacks sufficient rights under the applicable authority to confer standing does not alter the Intersil's Entities' own lack of standing.

    4.    This action should be dismissed with prejudice. The Federal Circuit has acknowledged that a district court may correctly dismiss an infringement claim with prejudice when a plaintiff "had its chance to show standing and failed." *Textile Prods. Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998); *see also Sicom*, 427 F.3d at 980 (affirming this Court's dismissal with prejudice of a patent infringement action for failure of the plaintiff to establish standing). Dismissal of this action with prejudice is particularly appropriate given the "hunting license" nature of Fairchild's Patent License Agreement, under which the Intersil Entities have retained the right to make, use, and sell while assigning only the right to sue a single, specific competitor – a competitor who had already brought suit for infringement by Fairchild when the "deal" was struck. The Supreme Court has disparaged precisely such agreements on public policy grounds as "contrary to the purpose and spirit of the statutory provisions for the assigning of patents." *Crown Die & Tool*, 261 U.S. at 39. Dismissal with prejudice is also warranted because the agreement under which Fairchild purportedly obtained the right to sue Power Integrations is champertous — Intersil's compensation is tied to the outcome of the lawsuit — and therefore further offensive to public policy on that ground as well. *Kenrich Corp. v. Miller*, 377 F.2d 312, 314 (3d Cir. 1967); *Hall v. State of Delaware*, 655 A.2d 827 (Del. Super. 1994).

# REDACTED

Under the circumstances, Fairchild and the Intersil Entities should not be permitted the chance to repair their defective "hunting license" and sue Power Integrations again. Indeed, Fairchild and the Intersil Entities have already attempted, unsuccessfully, to modify their originally flawed "hunting license" via a retroactive Supplemental Agreement, and should not be entitled to another bite at the apple.

## III.    STATEMENT OF FACTS

The Court is well familiar with the ongoing patent litigation between Power Integrations and Fairchild. Power Integrations filed suit against Fairchild (the "Power Integrations Suit") in this court on October 20, 2004, alleging infringement of four U.S. patents. On October 10, 2006, Fairchild was found by a jury to have willfully infringed each asserted claim of all four asserted patents. (Ex. A[3] (Jury Verdict).) A second jury trial on the issue of patent validity is scheduled to begin on September 17, 2007. As part of its invalidity assertions, Fairchild claims that one of the four patents asserted by Power Integrations, U.S. Patent No. 4,811,075 ("the '075 Patent"), is invalid in view of the alleged prior invention of the subject-matter disclosed in the '719 Patent asserted by Fairchild here.

Fairchild originally obtained limited rights


from Intersil Corporation under an Intellectual Property Assignment and License Agreement dated March 16, 2001 (the "Intellectual Property Agreement" or "IPA"). (Ex. B (IPA), at FCS1685953, § 6(a); Ex. C, Schedule 6(a) at FCS1685991.[4]) This license accompanied the sale of a portion of Intersil's business to Fairchild.

---

[3]    All exhibit citations refer to the accompanying Declaration of Kyle Wagner Compton, unless noted otherwise.

REDACTED

During the course of the Power Integrations Suit – after the completion of fact and expert discovery and the briefing and hearing on claim construction – Fairchild entered into a second agreement with Intersil Corporation on March 30, 2006, titled "Patent License Agreement," which purports to "supplement" the 2001 Intellectual Property Agreement. (Ex. D(PLA).) The recent "license" agreement is nothing more than a targeted "hunting license" in that it purports to convey to Fairchild only a single right — the right to sue — to be asserted only against a single entity — Power Integrations. Under the terms of the Patent License Agreement, Intersil purported to grant Fairchild "the sole and exclusive right, exclusive even as to Intersil" to sue Power Integrations for infringement of the '719 Patent. (*Id.* at ¶¶ 1.2 and 3.1.) The Patent License Agreement expressly does not expand Fairchild's right to make, use, or sell products under the Intellectual Property Agreement in any way. (*Id.* at ¶ 3.2.) Fairchild paid, up front, one million, five hundred thousand dollars ($1,500,000) for its hunting license, and further promised to pay Intersil "fifty percent of any Net Proceeds to Fairchild as a result of any claims or causes of action asserted against Power Integrations." (*Id.* at ¶¶ 1.1 and 1.2.)

One day later, on March 31, 2006, this Court entered its Order regarding claim construction in the Power Integrations Suit, adopting the majority of Power Integrations' proposed constructions. Shortly thereafter, at 10:14 am Central Time on April 11, 2006, Fairchild filed its original complaint initiating this lawsuit against Power Integrations in East Texas. (D.I. 36.) Little more than one hour later, at 12:36 pm Eastern Time on April 11, 2006, Fairchild issued a press release announcing its lawsuit to the business community, alleging that "[w]hat Power Integrations has not been able to achieve in the marketplace, they have sought to

achieve in the court room. We are forced to respond in kind." (Ex. E (Fairchild press release).) Fairchild's motive to deflect attention from its own willful infringement of Power Integrations' patent rights and to try to improperly influence the marketplace with its purchased lawsuit is plain from these actions.

In its rush to accomplish these goals, however, Fairchild did not pay close enough attention to the details. According to the Plaintiffs' Amended Complaint, the '719 Patent was assigned to Intersil Americas on April 14, 2006.[5] (D.I. 37 ¶ 12.) Therefore, on May 18, 2006, Intersil Americas and Fairchild executed a Supplemental Agreement to the Patent License Agreement between Intersil Corporation and Fairchild. (Ex. F (Supp. Agreement).) The Supplemental Agreement merely acknowledges Intersil Americas as the title holder of the '719 Patent and ratifies the terms of Fairchild's March 30, 2006 hunting license, while explicitly stating that "[t]his Supplemental Agreement does not modify the substantive rights of Fairchild under the [Patent License Agreement]." (*Id.*) On May 19, 2006, the Plaintiffs filed an Amended Complaint relating the assignment of the '719 Patent to Intersil Americas and adding Intersil Americas as another party to the Fairchild Suit. On March 6, 2007, ruling on Power Integrations' motion, and citing substantial overlap in parties and subject matter between this case and the earlier filed Power Integrations Suit, the Texas Court transferred the present action. (D.I. 35.)

## IV.    ARGUMENT

As discussed more fully below, Fairchild lacks standing to bring this lawsuit because, as a non-exclusive licensee, it suffers no legal injury from infringement of the '719 Patent.

---

[5]    The Plaintiffs' representation in Paragraph 12 of their Amended Complaint that the '719 Patent was assigned to Intersil Americas on April 14, 2006 is contradicted by the assignment record dated December 21, 2001, which was attached as Exhibit D to the Amended Complaint.

Fairchild's bare, non-exclusive license under the '719 Patent confers no constitutional standing to bring suit for infringement, or even join a suit with the patent owner. Fairchild's hunting license provides no underlying right beyond the purported right to sue a single entity — a right which has repeatedly been held inadequate to confer standing. Such hunting licenses are also disfavored as a matter of public policy.

Moreover, the Intersil Entities' involvement as co-plaintiffs in this action cannot, as a matter of law, cure Fairchild's lack of standing to sue. The Intersil Entities' involvement does nothing to change the fact that Fairchild has no legally protected interest in the '719 Patent. Finally, the Intersil Entities lack standing to bring this lawsuit themselves because they explicitly contracted away "the sole and exclusive right, exclusive even as to Intersil, to enforce the ['719 Patent] against [Power Integrations]." (Ex. D (PLA), ¶ 3.1.)

Because the plaintiffs lack standing to sue, the Court should grant Power Integrations' motion to dismiss this action. Further, given Fairchild's lack of any legally cognizable proprietary interest in the '719 Patent, Fairchild's expressed motive in securing rights to assert the '719 Patent and sue only Power Integrations, the "hunting license" nature of Fairchild's Patent License Agreement, and the public policy disfavoring such hunting licenses, the Court should order Fairchild and the Intersil Entities to show cause why this action should not be dismissed with prejudice, if not dismiss this action with prejudice outright.

A.    **Legal Authority**

1.    **A Party Must Have Standing to Sue for Infringement**

Standing to sue for patent infringement derives from the Patent Act. Under 35 U.S.C. § 281, "[a] patentee shall have remedy by civil action for infringement of his patent." Under 35 U.S.C. § 100(d), "[t]he word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." Thus, in accordance with this statutory

directive, "the owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot." *Sicom*, 427 F.3d at 976 (citations omitted).

Although, under the statutory framework of the Patent Act, a licensee normally would not have standing to sue for patent infringement, an exclusive license may confer standing if it conveys to the licensee all substantial rights under the patent. *Sicom*, 427 F.3d at 976 (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870 (Fed. Cir. 1991)). Courts have also recognized that an exclusive patent licensee that holds some but not all substantial rights under the patent may have standing to sue, but only as a co-plaintiff with the patentee. *Textile Prods.*, 134 F.3d at 1484. On the other hand, "a 'bare licensee' — one who enjoys only a nonexclusive license — has no standing to sue for infringement under the Patent Act." *Prima Tek II*, 222 F.3d at 1377. "A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee." *Sicom*, 427 F.3d at 976.

Determination of whether a license conveys all substantial rights in a patent sufficient to grant standing to the licensee, *Sicom*, 427 F.3d at 976, or whether a licensee is an exclusive licensee or a bare licensee, *Textile Prods.*, 134 F.3d at 1484, turns on "the intent of the parties to the license as manifested by the terms of their agreement." *Id.* Accordingly, the Court must "look to the agreement between the parties and analyze the respective rights allocated to each party under that agreement." *Propat*, 473 F.3d at 1189. Importantly, the use of terms such as "exclusive" is not controlling — what matters is the substance of the agreement. *Textile Prods.*, 134 F.3d at 1484.

### 2.    If There is No Standing, the Complaint Must be Dismissed

As in any federal action, standing to sue is a threshold requirement in an action for patent infringement. *Pfizer, Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del.

1993). A Court should dismiss a complaint if a plaintiff lacks standing to bring its claim. *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 557 (D. Del. 2006).

In considering a challenge to standing under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply: all factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Id.* In addition to the allegations in the complaint itself, a Court may consider documents referenced in or attached to the complaint in its analysis under Rule 12(b)(1). *Id.* (citing *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). A Court may also consider documents attached as exhibits to a motion to dismiss without converting the motion to dismiss to a motion for summary judgment if the plaintiff's claims are based on the documents and the documents are indisputably authentic. *Id.* (citing *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). In this case, the decision to dismiss is based on Plaintiffs' contracts which, for the purposes of this motion, Power Integrations does not dispute are authentic.

A party must have standing to bring a patent infringement claim at the time it is brought. *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995). The party bringing suit bears the burden of establishing standing. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.")

9

REDACTED

### B.    Fairchild Lacks Standing to Sue for Infringement Because It Is a Bare Licensee of the '719 Patent

Fairchild has no proprietary interest in the '719 Patent sufficient to confer standing to sue for infringement of that patent.[6] Fairchild is unequivocally a bare, non-exclusive licensee, and as such, it has no standing to bring suit or even join a suit to enforce the '719 Patent. *Sicom*, 427 F.3d at 976 ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee."). The deficiency is shown by the explicit and unambiguous terms of the agreements allocating rights in the '719 Patent between Fairchild and the Intersil Entities, on which the standing analysis depends. *Propat*, 473 F.3d at 1189.

Fairchild's rights under the '719 Patent are conferred by its Intellectual Property Agreement with Intersil Corporation, dated March 16, 2001, and its Patent License Agreement with Intersil Corporation, dated March 30, 2006.[7]

---

[6] Intersil Americas is the title holder of the '719 Patent. *See* Ex. F (supplemental agreement); D.I. 37, Amended Complaint, at ¶ 12.

[7] The Supplemental Agreement between Fairchild and Intersil Americas, dated May 18, 2006, does not confer any additional rights in the '719 Patent.

10

REDACTED

Both the express language of the Intellectual Property Agreement and the intent of the parties as manifested in multiple provisions of that agreement make clear that Fairchild was granted only a non-exclusive license under the '719 Patent. Fairchild is a bare licensee of the '719 Patent, and thus has no standing to sue for infringement of that patent. *Prima Tek II*, 222 F.3d at 1377 ("a 'bare licensee' — one who enjoys only a nonexclusive license — has no standing to sue for infringement under the Patent Act.").

Under its Patent License Agreement with Intersil, Fairchild purported to obtain the additional right to sue a single entity — Power Integrations — for infringement of the '719 Patent. Paragraph 3.1 of that agreement provides as follows:

> 3.1    In addition to the rights granted to Fairchild under the [Intellectual Property Agreement],[9] Intersil grants to Fairchild the sole and exclusive right, exclusive even as to Intersil, to enforce the ['719 Patent][10] against [Power

---

[9]    The term "APA" is used throughout the Patent License Agreement to refer collectively to the March 16, 2001 Intellectual Property Assignment and License Agreement (i.e. the Intellectual Property Agreement), and an Asset Purchase Agreement, of which the Intellectual Property Agreement was a part. Ex.D (PLA) at I000704.

[10]    Pursuant to Paragraph 1.2 of the Patent License Agreement, the rights granted Fairchild under that agreement include rights to both the '719 Patent and its parent patent, U.S. Patent No. 4,823,173. The latter patent has not been asserted in this action; although the result would be the same as to both patents.

> Integrations][11], to assert, litigate and prosecute claims of Infringement under the ['719 Patent] against [Power Integrations], including without limitation in any U.S. federal court or before the International Trade Commission, and to seek all equitable, injunctive, monetary and other relief and to collect for later distribution under Paragraph 1.2 any and all past damages in connection with Infringement of the ['719 Patent] by [Power Integrations], and to settle and compromise any disputes with [Power Integrations] related to the ['719 Patent]. Except as provided herein, the Parties agree that only Fairchild shall have the authority to threaten, commence, maintain or settle any claim, suit or proceeding based upon infringement of the ['719 Patent] (or other trespass or similar action relating to the ['719 Patent] and the inventions therein claimed) by [Power Integrations].

(Ex. D (PLA) at I000705.) Beyond purporting to grant Fairchild the exclusive right to sue only

Power Integrations for patent infringement, the Patent License Agreement does not otherwise

expand Fairchild's rights conferred under the Intellectual Property Agreement. This is explicitly

set forth in Paragraph 3.2 of the Patent License Agreement:

> 3.2    Fairchild's rights to make, use and sell products under the [Intellectual Property Agreement] are not expanded in any way by this [Patent License Agreement].

(*Id.* at I000705.)

Fairchild's "right to sue" under the Patent License Agreement does nothing to change

Fairchild's status as a non-exclusive licensee, and thus does nothing to confer standing to sue for

infringement of the '719 Patent. The U.S. Supreme Court has ruled that an attempted assignment

of only a right to sue a certain named infringer "carrie[s] no part of the title to the patent or

interest in it and therefore confer[s] no right to sue for damages for infringement of the patent

after execution of the instrument." *Crown Die & Tool*, 261 U.S. at 39. Federal Circuit case law

has likewise consistently held that "[a] 'right to sue' provision within a license cannot, of its own

force, confer standing on a bare licensee." *Textile Prods.*, 134 F.3d at 1485. As Paragraph 3.2

explicitly provides, Fairchild's status as a bare, non-exclusive licensee under the Intellectual

Property Agreement is in no way expanded by the Patent License Agreement. The parties'

---

[11] The License Agreement refers to Power Integrations as "POWI."

12

apparent intent that, as between Fairchild and the Intersil Entities, the right to sue Power Integrations for infringement rests solely with Fairchild, does not and cannot confer statutorily-derived standing to sue.  It is well-established that parties cannot contract around the standing requirements of the Patent Act.  The question is whether or not Fairchild has a sufficient exclusive proprietary interest in the patent, not how the parties contractually allocated the right to sue.  *Prima Tek II*, 222 F.3d at 1381 ("Standing to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue and who will be bound by judgments.").  Fairchild has no such exclusive proprietary interest in the '719 Patent, and thus no standing to sue.

The fact that Fairchild's right under the Patent License Agreement to sue Power Integrations is termed "exclusive" is irrelevant — Intersil's expressed intent that Fairchild's proprietary rights under the '719 Patent be limited and non-exclusive is controlling.  *Textile Prods.*, 134 F.3d at 1484.  This Court has ruled that a license provision conferring an "exclusive" right to sue only a subset of potential infringers is inadequate to confer standing.  *Sicom Systems Ltd. v. Agilent Techns., Inc.*, 2004 WL 2272273 at *2 (D. Del. Oct. 5, 2004) (holding that a licensee's "exclusive right to sue for commercial infringement" is "inconsistent with a genuine exclusive right to sue" because the licensor retained the right to sue for non-commercial infringement).  The Federal Circuit affirmed this Court's holding in *Sicom*, noting further that a licensee's "inability to indulge infringement" is inconsistent with a complete conveyance of a right to sue.  *Sicom*, 427 F.3d at 979.  Here, Fairchild's right to sue is limited to a single target: Power Integrations.  Fairchild has no right to assert the '719 Patent against any other entity, and no right to indulge an infringement.  Intersil explicitly retained the right to bring actions for

13

infringement of the '719 Patent against third parties in Section 15(g) of the Intellectual Property Agreement.[12]

Finally, Intersil significantly limited even the rights that Fairchild did get, such as its right to settle any litigation with Power Integrations and its right to sublicense the '719 Patent to any third party, under Paragraph 2.2 of the Intellectual Property Agreement:

> 2.2    Fairchild agrees that it will not enter into any settlement agreement, consent judgment, agreed judgment, covenant not to sue or any other agreement with [Power Integrations] that will adversely affect the ['719 Patent's] enforceability, validity or the scope of any [claim of the '719 Patent] without the consent of Intersil. Further, Fairchild shall not, absent the express written consent of Intersil, have the right to grant to any third party, including [Power Integrations], the right to sublicense the ['719 Patent].

(Ex. D (PLA) at I00705.)

The Federal Circuit has found that a licensor's reservation of precisely such rights weighs against finding that a licensee has standing to sue. *Sicom*, 427 F.3d at 979 (finding no standing where "[licensee] does not have the right to settle litigation without the prior written consent from [licensor], nor does [licensee] have the right to sublicense without [licensor's] prior approval"). Even more recently, the Federal Circuit has ruled that a patent licensee lacked standing to sue for infringement where the licensor retained those same rights: "[the licensor's] right to veto licensing and litigation decisions [ ] constitutes a significant restriction on [the licensee's] interest in the patent . . . [the licensor] retains substantial ongoing control of the sort typically associated with the retention of an ownership interest in the patent." *Propat*, 473 F.3d at 1191. The Court emphasized the consistency of its holding with prior decisions, noting that

---

[12]    Section 15(g) of the Intellectual Property Agreement states as follows:

> (g) Following the Closing Date, actions for infringement of Patents Type 3 against third parties shall be brought solely by [Intersil] at [Intersil's] discretion and [Intersil] shall retain all damages recovered.

Ex. B (IPA) at FCS1685956.

"in no case has this court held that a patentee who retains such broad and wide-ranging powers with respect to a patent has nonetheless transferred 'all substantial rights' in the patent." *Id.*

Fairchild's rights in the '719 Patent are explicitly and unambiguously set forth in its Intellectual Property Agreement and its Patent License Agreement with Intersil. Fairchild is a non-exclusive, bare licensee, and as such, has no standing to bring an action for infringement of the '719 Patent. *Prima Tek II*, 222 F.3d at 1377 ("[A] 'bare licensee' — one who enjoys only a nonexclusive license — has no standing to sue for infringement under the Patent Act."). Fairchild's "right to sue" provision does nothing to alter its status as a bare licensee, and thus has no legal force to confer standing. *Textile Prods.*, 134 F.3d at 1485. ("A 'right to sue' provision within a license cannot, of its own force, confer standing on a bare licensee.") Because Fairchild lacks standing to bring this action, Power Integrations' motion to dismiss must be granted. "[A]n infringement action brought by a bare licensee must be dismissed." *Propat*, 473 F.3d at 1193.

### C.    Fairchild Lacks Standing Regardless of the Participation of the Intersil Entities

There is only one situation under the Patent Laws where a party who is not the title holder of the patent may sue on behalf and in the name of the title holder – where the party is an exclusive licensee – and that situation does not apply here. *Propat*, 473 F.3d at 1193. In such a situation, the exclusive licensee can bring suit for patent infringement, but must join the patent owner as a plaintiff. *Id.* ("An action brought by the exclusive licensee alone may be maintained as long as the licensee joins the patent owner in the course of the litigation."). By contrast, "a 'bare licensee' — one who enjoys only a nonexclusive license — *has no standing to sue under the Patent Act*." *Prima Tek II*, 222 F.3d at 1377 (emphasis added). This is true even if the licensee joins the patent owner as a plaintiff. "A nonexclusive license confers no constitutional

15

standing on the licensee to bring suit *or even to join a suit with the patentee* because a nonexclusive licensee suffers no legal injury from infringement." *Sicom*, 427 F.3d 971 (emphasis added).

Fairchild does not dispute that it is not the title holder of the '719 Patent. Thus, Fairchild can only have standing to sue for infringement if it is the exclusive licensee of that patent. As shown above, through extensive reference to the Intellectual Property Agreement and the Patent License Agreement allocating rights to the '719 Patent between Fairchild and Intersil, Fairchild is a bare, non-exclusive licensee of the '719 Patent. Accordingly, Fairchild has no standing to sue for infringement of the '719 Patent and *no standing even to join a suit with Intersil* for infringement of the '719 Patent.

"A bare licensee cannot cure its lack of standing by joining the patentee as a party." *Propat*, 473 F.3d at 1193-94. The Federal Circuit's recent decision in *Propat* is directly on point. In that case, the Court reviewed the dismissal of a patent infringement action by a non-exclusive licensee without consideration of the licensee's motion to join the patentee. *Id.* The Court affirmed the dismissal, holding that the non-exclusive licensee's "rights in the patent [were not] sufficient to give it standing to sue, *even with [the patentee] named as a co-plaintiff*." *Id.* (emphasis added).

The Federal Circuit's holding in *Propat*, as well as the other applicable authority, compels the conclusion that Fairchild, as a non-exclusive licensee, has no standing to sue for infringement of the '719 patent, even with the Intersil Entities joined as co-plaintiffs. Accordingly, Power Integrations' motion to dismiss must be granted.

16

**D.    The Intersil Entities Lack Standing to Sue for Infringement Because the Sole and Exclusive Right to Enforce the '719 Patent Against Power Integrations Has Been Transferred**

The Intersil Entities themselves lack standing to sue Power Integrations for infringement of the '719 Patent because that exclusive right has been contracted away. The terms of Paragraph 3.1 of the Patent License Agreement could not be more explicit:

> Intersil grants to Fairchild *the sole and exclusive right, exclusive even as to Intersil,* to enforce the ['719 Patent] against [Power Integrations], to assert, litigate and prosecute claims of Infringement under the ['719 Patent] against [Power Integrations], including without limitation in any U.S. federal court . . .

(Ex. D (PLA) at I000704.) Fairchild paid Intersil valuable consideration of one million five hundred thousand dollars ($1,500,000.00) for the exclusive right to sue right Power Integrations for infringement of the '719 Patent, and for Intersil's relinquishment of that right. (*Id.* at I000704, Paragraph 1.1.) Intersil has no standing to bring this action because it has contractually yielded its right to do so.

The fact that the Intersil Entities' purported transfer to Fairchild is insufficient to convey enough of a proprietary right for Fairchild to have standing — as noted above, parties cannot do by contract that which the statute does not allow — does not change this conclusion. The Intersil Entities simply cannot assert a right they have sold for valuable consideration. Because neither Fairchild nor the Intersil Entities have standing to bring this action, Power Integrations' motion to dismiss must be granted.

**E.    The Plaintiffs Should Be Ordered to Show Cause Why This Action Should Not Be Dismissed With Prejudice**

This Court has recognized that the failure of a plaintiff to show standing to sue for patent infringement may justify dismissal of a complaint with prejudice. *Sicom*, 2004 WL 2272273 (D. Del. Oct. 5, 2004), *aff'd*, 427 F.3d 971, 980 (Fed. Cir. 2005). The Federal Circuit has acknowledged that dismissal with prejudice may be appropriate in such cases. *Textile Prods.*,

17

134 F.3d at 1485 ("The district court correctly dismissed the infringement claim with prejudice because [the plaintiff] had its chance to show standing and failed.").

As discussed fully above, Fairchild, as a bare, non-exclusive licensee, has no standing to bring this infringement suit, with or without the participation of the Intersil Entities.

On the face of the agreements now before the Court, it would appear that Fairchild can remain nothing more than a bare, non-exclusive licensee. Absent a showing by Fairchild that it has a truly exclusive license to the '719 Patent, dismissal of this action with prejudice is warranted.

Public policy considerations similarly weigh in favor of dismissal with prejudice here. The Supreme Court of the United States in *Crown Die & Tool* held that an attempted assignment of patent rights which "carried no part of the title to the patent or interest in it" conferred no standing to sue for infringement. 261 U.S. at 39. In addition to providing binding precedent establishing that Fairchild has no standing, *Crown Die & Tool* illustrates why "hunting licenses" are contrary to public policy. Notably, the license at issue in that case conveyed to the licensee (Nye) an exclusive "right to sue" provision, exclusive even as to the patentee (Reed), targeting only a single named entity (Crown). *Id.* at 25-26. The patentee retained rights of use under the patent. The Supreme Court disparaged such "hunting licenses," which would:

> divide up the monopoly of patent property so that the patentee retains the right to make, use and vend, but gives to many different individuals the right to sue certain named infringers, respectively, and that with the sole motive of harassing them such as is avowed in the recitals of the instrument before us. If held legal, it would give the patentee an opportunity without expense to himself to stir up litigation by third persons that is certainly contrary to the purpose and spirit of the statutory provisions for the assigning of patents.

*Id.* at 38-39.

The hunting license that Fairchild has tried to obtain from the Intersil Entities, conferring an exclusive right to sue only a single named entity — Power Integrations — while conferring only a non-exclusive license to make, use, or sell the '719 Patent, is strikingly similar to the agreement that the Supreme Court rejected in *Crown Die & Tool*. Further, Fairchild's motive in obtaining such a license is the same as the "sole motive of harass[ment]" that the Supreme Court found evident on the face of the agreement it considered.

Specifically, the fact that Fairchild pursued this strategy of harassment in response to the pending Power Integrations Suit and has continued its pursuit since being adjudged a willful infringer makes the holding and rationale of *Crown Die & Tool* even more forceful here. For years, Fairchild had no interest in the '719 Patent other than a field-of-use limited, non-exclusive license. Despite never having had any proprietary interest in that patent, Fairchild paid $1,500,000.00 solely for the right to assert it against Power Integrations — in addition to promising 50% of any damages that it might obtain in an infringement action. And Fairchild did assert the patent — just days after a claim construction ruling that observers, such as investors, could reasonably have viewed as adverse to Fairchild. Fairchild then informed the business community of its assertion of the '719 Patent against Power Integrations in a press release issued little more than an hour after it had filed this lawsuit, arguing that it was "forced to respond in kind" to Power Integrations' lawsuit with a patent it did not own. The public policy considerations articulated in *Crown Die & Tool* strongly favor dismissal with prejudice here.

The doctrine of champerty also compels dismissal of this action with prejudice. *See Kenrich*, 377 F.2d at 314 (affirming dismissal with prejudice of action brought by plaintiff who but for champertous assignment of another's claim would have had no cause of action). Champerty is "an agreement between the owner of a claim and a volunteer that the latter may

19

REDACTED

take the claim and collect it, dividing the proceeds with the owner, if they prevail; the champertor to carry on the suit at his own expense." *Hall*, 655 A.2d at 829 (internal quotations omitted). Questions of champerty must be decided under the state law of the forum. *Kenrich*, 377 F.2d at 314. The doctrine of champerty is recognized and applied in the State of Delaware. *Hall*, 655 A.2d at 830. Indeed, Delaware law recognizes that "[i]t is the *duty* of the court to dismiss a case in which the evidence discloses that the assignment of the cause of action sued upon was tainted with champerty." *Id.* (emphasis added). "An agreement is tainted with champerty where the assignee had *no* interest in the cause of action prior to the assignment." *Id.* at 829-30 (emphasis in original).

The evidence leaves no question that the Patent License Agreement at issue here is tainted with champerty. Fairchild, the assignee, had *no* interest in this cause of action prior to purported assignment of the right to sue under the Patent License Agreement. Prior to the execution of the Patent License Agreement, the right to sue for infringement of the '719 Patent was explicitly retained by Intersil

Fairchild had no legal or equitable interest in enforcement of the '719 Patent independent from the terms of the Patent License Agreement. By definition, the elements of champerty are present here.

The State of Delaware has recognized that the doctrine of champerty "is based upon the ground that no encouragement should be given to litigation by the introduction of a party to enforce those rights which the owners are not disposed to prosecute." *Hall*, 655 A.2d at 830 (internal quotations omitted). The Court should not encourage Fairchild's behavior in filing this suit, or encourage any further attempts by Fairchild to litigate causes of action as to which it

would otherwise be a stranger, and which, prior to Fairchild's $1.5 million payment, the Intersil Entities apparently had no interest in asserting. Consistent with the public policy interests of the State of Delaware, the Court should dismiss this champertous cause of action with prejudice.

Given the acknowledgement by this Court and the Federal Circuit that failure to show standing to bring a patent enforcement suit may warrant dismissal with prejudice, and the public policy considerations disfavoring champertous "hunting licenses" purporting to confer the right to sue only a single named entity, the Court should, at the very least, enter an order to show cause why this action should not be dismissed with prejudice. Indeed, the public policies and the equities here strongly counsel in favor of a dismissal with prejudice irrespective of cause shown.

## V.    CONCLUSION

No plaintiff in this action has standing to sue Power Integrations for alleged infringement of the '719 Patent, and accordingly, this case must be dismissed. Fairchild is neither the owner, assignee, nor exclusive licensee of the '719 Patent. Fairchild is merely a bare licensee, having no legally protected interest in the '719 Patent created under the Patent Act, and cannot be said to suffer legal injury from any act of infringement. Because Fairchild has no ownership interest in the '719 Patent, it has no right to participate in any infringement action as a plaintiff.

Further, the Intersil Entities lack standing to sue because they granted Fairchild "the sole and exclusive right, exclusive even as to Intersil, to enforce the ['719 Patent] against [Power Integrations]." That conveyance is binding even though it cannot provide Fairchild sufficient standing to sue.

The Plaintiffs undoubtedly will complain that the result of their contrived Patent License Agreement — leaving neither party standing to sue Power Integrations for infringement — is unjust. But this result is solely attributable to the Plaintiffs' own machinations in creating a highly unusual agreement of impermissible intent — a hunting license in every sense, granting

21

only the right to sue a single targeted entity and nothing more — notwithstanding well-established case law explicitly holding that such a license to sue cannot confer standing and is against public policy. The Plaintiffs have chosen their course, and they must accept the consequences. In light of controlling case law, and for all of the reasons discussed above, Power Integrations' Motion to Dismiss must be granted.

Dated: September 7, 2007            FISH & RICHARDSON P.C.

By: _____
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR DEFENDANT**
**POWER INTEGRATIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2007, I served POWER INTEGRATIONS, INC.'S

OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS on the following counsel of

record at the address listed and in the manner indicated.

**BY HAND DELIVERY**
Steven J. Balick, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

**BY EMAIL AND BY FEDERAL EXPRESS**
G. Hopkins Guy, III, Esq.
Vickie L. Feeman, Esq.
Bas de Blank, Esq.
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025

**BY FEDERAL EXPRESS**
Michael Shore
Jeffrey R. Bragalone
SHORE CHAN, LLP
325 North St. Paul, Suite 4450
Dallas, Texas 75201

Attorneys for Plaintiffs
FAIRCHILD SEMICONDUCTOR
CORPORATION, INTERSIL
AMERICAS, INC., and INTERSIL
CORPORATION

Attorneys for Plaintiffs
FAIRCHILD SEMICONDUCTOR
CORPORATION, INTERSIL
AMERICAS, INC., and INTERSIL
CORPORATION

Attorneys for Plaintiff,
INTERSIL CORPORATION

Kyle Wagner Compton

80047997.doc