CORRECTED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, INTERSIL AMERICAS, INC., a Delaware corporation, and INTERSIL CORPORATION, a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Defendant. | C.A. No. 07-187 JJF<br><br>**FILED UNDER SEAL**<br><br>**REDACTED** |

**DEFENDANT POWER INTEGRATIONS' REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 3

  A. The Law of Standing Following *Morrow v. Microsoft* .............................. 3

  B. The Intersil Entities Have Contracted Away Their Right to Sue Power Integrations for Infringement of the '719 Patent .......................... 5

  C. Fairchild, as a Mere Non-Exclusive Licensee, Lacks Standing to Sue Power Integrations for Infringement of the '719 Patent ..................... 6

  D. Fairchild Cannot Cure its Lack of Standing by Joining the Patentee ................................................................................................ 13

  E. This Lawsuit Should be Dismissed with Prejudice ................................. 14

III. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Abbott Laboratories v. Diamedix Corp.,
   47 F.3d 1128 (Fed. Cir. 1995)..................................................................13

*Association of Data Processing Serv. Organizations, Inc. v. Camp*,
   397 U.S. 150 (1970)..................................................................................14

*Associate General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)..................................................................................14

*Crown Die & Tool Co. v. Nye Tool & Machine Works*,
   261 U.S. 24, 43 S.Ct. 254 (1923)........................................................ passim

*Gayler v. Wilder*,
   51 U.S. 477 (1850)..................................................................................8, 9

*Intellectual Prop. Development, Inc. v. TCI Cablevision of Cal., Inc.*,
   248 F.3d 1333 (Fed. Cir. 2001)..................................................................4

*Morrow v. Microsoft Corp.*,
   2007 WL 2713248 (Fed. Cir. Sept. 19, 2007) ...................................... passim

*Prima Tek II, LLC v. A-Roo Co.*,
   222 F.3d 1372 (Fed. Cir. 2000)..............................................................8, 12

*Propat International Corp. v. RPost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007)........................................................... passim

*Sicom System, Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005)..............................................................4, 7, 13

*Sicom Systems Ltd. v. Agilent Techs., Inc.*,
   2004 WL. 2272273 (D. Del. Oct. 5, 2004), *aff'd*, 427 F.3d 971 ..............12, 16

*Textile Products, Inc. v. Mead Corp.*,
   134 F.3d 1481 (Fed. Cir. 1998)............................................................4, 6, 16

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)..................................................................................15

I.  **INTRODUCTION**

Defendant Power Integrations, Inc. ("Power Integrations") filed its Motion to Dismiss and its Opening Brief in support thereof on September 7, 2007 (D.I. 59-60). In its Opening Brief, Power Integrations established that this action must be dismissed because: 1) Plaintiff Fairchild Semiconductor Corporation ("Fairchild"), as a mere non-exclusive licensee, has no standing to sue for infringement of U.S. Patent No. 5,264,719 (the "'719 Patent"); 2) Fairchild, as a mere non-exclusive licensee, lacks standing even to participate in a lawsuit for infringement of the '719 Patent brought by its legal title holder; and 3) Plaintiffs Intersil Americas, Inc. and Intersil Corporation (collectively, the "Intersil Entities") have contracted away their right to sue Power Integrations for infringement of the '719 Patent. Power Integrations also explained that this lawsuit should be dismissed with prejudice in light of public policy considerations, articulated in Supreme Court case law, disfavoring "hunting licenses" purportedly conferring rights to sue only certain named individuals for patent infringement, and given Delaware policy disfavoring champertous agreements. These propositions are well supported by the applicable case law. Unable to overcome this precedent, Plaintiffs advance an unprecedented and wholly unsupported argument – that the alleged exclusive right to prevent *one* party, Power Integrations, from making, using, or selling the patented invention, confers standing. This misguided effort to parlay Fairchild's champertous $1.5 million hunting license into a basis for standing must fail, and Power Integration's motion to dismiss should be granted.

On September 19, 2007, just days after Power Integrations filed its Motion to Dismiss, the Court of Appeals for the Federal Circuit issued its opinion in the matter of *Morrow v. Microsoft Corp.*, 2007 WL 2713248 (Fed. Cir. Sept. 19, 2007). *Morrow* reaffirmed the framework for analyzing standing to sue in patent cases that has been applied consistently since the Supreme Court's 1923 decision in *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 43 S.Ct. 254 (1923). *Morrow* also makes clear that the right to sue for infringement of a patent and the ownership of the same patent can be divided, through contract, such that <u>both</u> the

legal title holder and the recipient of the right to sue lack sufficient rights to have standing to sue. That is precisely the situation in this case. As discussed fully below, any question of the effect of the Intersil Entities' assignment of the "exclusive right, exclusive even as to Intersil, to enforce the ['719 Patent] against [Power Integrations]" to Fairchild has been resolved by *Morrow*. The Intersil Entities ***do not*** have the right to sue Power Integrations for infringement.

The Plaintiffs[1] devote the bulk of their Opposition Brief to arguing that Fairchild holds "exclusive rights" to enjoin only Power Integrations' use of the '719 patent, and accordingly, that Fairchild sustains "injury in fact" as a consequence of Power Integrations' alleged infringement. The Plaintiffs also resort to the tactic of submitting for the first time, more than 15 months after Power Integrations first raised the issue of standing in Texas, a different version of the license which they represent to have been previously-redacted. Pursuant to this just-revealed provision, Fairchild "alone" was allegedly granted the right to negotiate a settlement with, and to compel Intersil to grant a license to the '719 patent to, Power Integrations, but it was granted no such rights with respect to any other party. Plaintiffs now assert that this newly-disclosed alleged right to settle any claim against Power Integrations confers on Fairchild "all substantial rights" under the patent "with respect to Power Integrations."[2] Not surprisingly, the Plaintiffs point to no case holding that a non-exclusive licensee, by obtaining rights to exclude only a single entity from exploiting the patented invention, has standing to bring a suit for patent infringement in its own name, or jointly with the patent owner. In fact, the relevant case law holds just the opposite. Plaintiffs' efforts to brush aside that case law as "off-point and therefore unavailing" (D.I. 72 at

---

[1] Fairchild and the Intersil Entities shall herein be referred to collectively as "the Plaintiffs."
[2] Power Integrations has been unable to confirm which provisions were included in the various agreements negotiated between Fairchild and the Intersil Entities because Plaintiffs have steadfastly refused to provide unredacted copies to counsel. Power Integrations objects to Plaintiffs' belated, piecemeal disclosure of various portions of the key documents when they feel it necessary to support their evolving arguments. In this case, the newly-disclosed fragment of a provision is also insufficient to support Fairchild's standing. Power Integrations is unable to determine if other, undisclosed provisions, are further contrary to the arguments raised by Plaintiffs here and request the Court to order production of the entire agreement or, at the very least, review the entire agreement *in camera*.

2

2) cannot save their complaint. The Court will find that the case law, recently affirmed by *Morrow*, is unambiguous, and requires that this case be dismissed.

## II. ARGUMENT

### A. The Law of Standing Following *Morrow v. Microsoft*

The Federal Circuit, in *Morrow v. Microsoft*, considered constitutional standing to sue for patent infringement. In *Morrow*, the patent rights were contractually divided between a corporate trust, the At Home Liquidating Trust ("AHLT"), and an unsecured creditors' trust, the General Unsecured Creditors Liquidating Trust ("GUCLT"). AHLT retained ownership of the patent and all rights under the patent, except for the "exclusive right to sue," which was given to the GUCLT under a bankruptcy liquidation plan. *Morrow*, at *1. The *Morrow* Court found that the unsecured creditors' trust lacked constitutional standing to sue for infringement, even though the corporate trust was a party to the action. *Morrow*, at *9-10. The *Morrow* Court also found that the corporate trust, despite holding legal title to the patent-in-suit, itself did not have the right to sue for infringement, because that exclusive right had been contractually assigned to the unsecured creditors' trust. *Morrow*, at *1. Significantly, in reaching this result, the Federal Circuit disagreed that special considerations stemming from bankruptcy and trust law — which the district court there had relied on but which are entirely absent here — compelled a different result. *Morrow*, at *4.

Instead, the Federal Circuit reiterated that it has consistently analyzed standing to sue for patent infringement with reference to three categories of patent ownership: "there are three general categories of plaintiffs encountered when analyzing constitutional standing issue in patent infringement suits: those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit." *Morrow*, at *6. The ownership interest corresponding with each of these three categories is well-established. "Only a patentee [or an assignee of all substantial rights under the patent] may bring an action for patent infringement . . . an exclusive licensee that does not have all substantial rights has standing to sue third parties only as a co-plaintiff with the

3

patentee . . . a bare licensee has no standing at all." *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484-5 (Fed. Cir. 1998).

With respect to the third category of plaintiffs "that cannot even participate as a party to an infringement suit," the *Morrow* Court relied on the definition previously set forth in *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005): "A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement." Slip op. at 13. The *Morrow* Court also explicitly held that "[t]his standing deficiency cannot be cured by adding the patent title owner to the suit." *Morrow*, at *7 (citing *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348-9 (Fed. Cir. 2001)).

The *Morrow* Court also addressed the question of whether parties, through the contractual division of patent rights, may defeat standing of <u>all</u> parties to sue for infringement. The *Morrow* Court found they could: "While parties are free to assign some or all patent rights as they see fit based on their interests and objectives, this does not mean that the chosen method of division will satisfy standing requirements." *Morrow*, at *7. On the facts presented, the *Morrow* Court found that rights to the patent-in-suit had been divided between multiple parties by an "agreement negotiated at arms-length." *Morrow*, at *4. Although the unsecured creditors' trust held the right to sue under the patent-in-suit, it did not meet constitutional standing requirements and thus could not be a party to an infringement suit. *Morrow*, at *9-10. Similarly, because the unsecured creditors' trust held the exclusive right to sue, the corporate trust — which held legal title to the patent-in-suit — "did not have the right to sue third parties for infringement of the patent." *Morrow*, at *1. Thus, the *Morrow* court confirmed that a poorly conceived and executed contractual division of patent rights could, and did, defeat standing of any party to sue for infringement. The Intersil Entities and Fairchild committed the same error here.

4

### B.    The Intersil Entities Have Contracted Away Their Right to Sue Power Integrations for Infringement of the '719 Patent

In its Opening Brief, Power Integrations argued that the Intersil Entities could not maintain this suit for infringement of the '719 Patent because the exclusive right to sue had been assigned to Fairchild. The Plaintiffs respond that "Power Integrations argues, without citing any legal authority whatsoever, that Intersil has contracted away its right to sue. Power Integrations does not explain the unexplainable, how a right to sue can be 'contracted away' to a third party and simultaneously disappear altogether." (D.I. 72 at 3.) *Morrow* explains precisely how such a right can be contracted away and disappear. Patent rights may be contractually allocated between parties such that patent ownership is held by one party and the right to sue under the patent is held by another party. In such cases, a party holding legal title, but not the exclusive right to sue, *does not have the right to sue third parties for infringement of the patent.* *Morrow*, at *1.

Here, the parties do not dispute that the Intersil Entities hold legal title to the '719 Patent. But the assignment of the exclusive right to sue to Fairchild could not be more explicit:

> Intersil grants to Fairchild *the sole and exclusive right, exclusive even as to Intersil*, to enforce the ['719 Patent] against [Power Integrations]

(Ex.[3] D (PLA) at I000715, Paragraph 3.1 (emphasis added).) There is no question that the Intersil Entities have intentionally and expressly relinquished their right to sue Power Integrations for infringement of the '719 Patent. That assignment is legally binding, without regard to Fairchild's standing to bring, or even participate in, an infringement lawsuit. The Intersil Entities, as a consequence of that assignment, do not have the right to sue Power Integrations for infringement of the '719 Patent. Such is the holding of the Federal Circuit in *Morrow*. Accordingly, this lawsuit must be dismissed as to the Intersil Entities.

---

[3]    All exhibit citations refer to the Declaration of Kyle Wagner Compton, D.I. 61, filed with Power Integrations' Motion to Dismiss, unless noted otherwise.

5

### C.   Fairchild, as a Mere Non-Exclusive Licensee, Lacks Standing to Sue Power Integrations for Infringement of the '719 Patent

In its Opening Brief, Power Integrations' argued principally that the "right to sue" purportedly assigned to Fairchild under the Plaintiffs' Patent License Agreement was insufficient to confer standing because Fairchild, as a bare, non-exclusive licensee of the '719 Patent, lacked standing to sue in the first instance. The law on this point is well-settled: "[a] 'right to sue' provision within a license cannot, of its own force, confer standing on a bare [non-exclusive] licensee." *Textile Prods.*, 134 F.3d at 1485. Fairchild's status as a bare non-exclusive licensee is not reasonably in dispute. The contracts allocating rights in the '719 Patent between Fairchild and the Intersil Entities explicitly state that Fairchild's license is non-exclusive (D.I. 60 at 10-15), and Plaintiffs do not contest that Fairchild holds only a non-exclusive license to practice the '719 Patent. (D.I. 72 at 2.) Instead, Plaintiffs attempt to characterize the purported right to sue Power Integrations as "exclusive," ignoring the Supreme Court's pronouncement in *Crown Die* that an assignment of the right to sue certain named infringers "carrie[s] no part of the title to the patent or interest in it and therefore confer[s] no right to sue for damages for infringement." *Crown Die*, 261 U.S. at 39. As such, Fairchild lacks standing to sue for patent infringement. *See also Sicom*, 427 F.3d at 976 ("a nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee.")

In their Opposition Brief, the Plaintiffs largely ignore the impropriety of Fairchild's hunting license and seek to obscure the plain fact that Fairchild is a nonexclusive licensee. The Plaintiffs first argue that Fairchild is not a "mere" nonexclusive licensee:

**REDACTED**

(D.I. 72 at 2.) However, the circumstances under which Fairchild obtained limited rights to practice the '719 Patent and the amount paid are irrelevant. The relevant fact, which the Plaintiffs must admit, is that Fairchild has been granted only a non-

exclusive license. Even that non-exclusive license is further limited to

**REDACTED**

(Ex. B (IPA) at FCS1685953.) Fairchild's rights were in no way expanded by the subsequent Patent License Agreement between the Plaintiffs, as is explicitly recited in Paragraph 3.2:

> 3.2    Fairchild's right to make, use and sell products under the [Intellectual Property Agreement] are not expanded in any way by this [Patent License Agreement].

(Ex. D (PLA) at I000705.) As noted above, the law on standing to sue by a non-exclusive licensee is clear. "[A] 'bare licensee' — one who enjoys only a nonexclusive license — has no standing to sue under the Patent Act." *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). "[A]n infringement action brought by a bare licensee must be dismissed." *Propat*, 473 F.3d at 1193. The result required here is equally clear: Fairchild, as a non-exclusive licensee, lacks standing.

Faced with this clear roadblock to standing, Plaintiffs resort to creating a new theory of standing that has no support in the law, characterizing the rights that have been granted to Fairchild as comprising "all substantial rights" under the '719 Patent *with respect to a single entity* — Power Integrations. The Plaintiffs characterize this as

**REDACTED** (D.I. 72 at 9.) According to this theory, a non-exclusive licensee that lacks standing to sue for infringement generally may nevertheless have standing to sue a single entity if it possesses both the right to sue the named entity for infringement and the right to compel the patent owner to grant a license to the targeted entity. Although case law dating back to at least as early as the mid-nineteenth century has described valid patent licenses conferring exclusive rights within a limited geographical scope, *see, e.g., Gayler v. Wilder*, 51 U.S. 477, 494 (1850), Plaintiffs cite no authority for the

proposition that the right to target a single entity for infringement constitutes a domain of exclusivity sufficient to confer standing.

In reality, the Plaintiffs' new theory is simply the latest variation on an old theme that has been repeatedly considered and rejected. The Supreme Court in *Crown Die* explicitly held that assignment of a right to sue only a single entity "carried no part of the title to the patent or interest in it and therefore conferred no right to sue for damages for infringement of the patent after the execution of the instrument." 261 U.S. at 39. That the instrument under consideration did not also confer a right to license the same targeted entity in no way distinguishes the applicability of the Supreme Court's holding to the present case—*Crown Die* makes clear that standing is conferred by transfer of "the entire and unqualified monopoly," not a minimally adequate collection of partial rights applicable to only a single entity, as the Plaintiffs suggest. *Id.* at 38 (quoting *Gayler v. Wilder*, 51 U.S. at 494). The *Gayler* opinion demonstrates the fatal flaw in the Plaintiffs' theory:

> [I]n order to enable [an assignee of patent rights] to sue, the assignment must undoubtedly convey to him the entire and unqualified monopoly which the patentee held in the territory specified — ***excluding the patentee himself, as well as others***. And any assignment short of this is a mere license. . . . Unquestionably, a contract for the purchase of any portion of the patent right may be good as between the parties as a license, and enforced as such in the courts of justice. But the legal right in the monopoly remains in the patentee, and he alone can maintain an action against a third party who commits an infringement upon it.

51 U.S. at 494-95. There can be no question that the purported assignment of a right to exclude only Power Integrations — not the Intersil Entities or any others — is less than a conveyance of "the entire and unqualified monopoly" under the '719 Patent, and is insufficient to create standing for Fairchild to sue.

The Federal Circuit's *Propat* decision further illustrates the failure of the Plaintiffs' theory, and the relevance of *Crown Die* to the analysis. In *Propat*, a licensee was granted rights to license a patent to third parties or to sue infringers. 473 F.3d at 1190. The licensee was limited in the exercise of both of those rights to targets approved by the patentee. *Id.* In short, the licensee in *Propat* held the rights to license and sue to numerous targets specified by the

8

patentee, whereas Fairchild holds the rights to license and sue only one target specified by the patentee. Nevertheless, the *Propat* Court held that "the rights allocated to [the licensee] under the agreement are not sufficiently substantial to make [the licensee] in effect the assignee of the patent . . . while the rights to sue and grant licenses accord [the licensee] broad authority to act as [the patentee's] agent for purposes of licensing and litigation, they do not transfer ownership of [the patentee's] patent." *Id.* at 1192. The *Propat* Court looked to *Crown Die* for guidance, finding that the principles underlying the Court's analysis in *Crown Die* applicable even though the *Propat* licensee had more rights than the *Crown Die* licensee. *Id.* at 1194. Accordingly, the *Propat* Court held that "[the licensee's] rights created by the [licensing agreement] did not accord it rights in the patent sufficient to give it standing to sue, even with [the patentee] named as a co-plaintiff." *Id.* The same reasoning and the same result apply here. Fairchild's purported rights to sue and/or grant a license to only Power Integrations do not alter Fairchild's fundamental status as a bare, non-exclusive licensee. "An infringement action brought by a bare licensee must be dismissed. A bare licensee cannot cure its lack of standing by joining the patentee as a party." *Id.* at 1193-4.

      Moreover, even if the Plaintiffs' theory of "targeted entity" standing had a legal basis, which it does not, the Plaintiffs' argument that Fairchild possesses "all substantial rights" under the '719 Patent with respect to Power Integrations is simply incorrect. Specifically, Plaintiffs argue that Fairchild holds all substantive rights under the '719 Patent with respect to Power Integrations because it holds the exclusive right to sue Power Integrations under Paragraph 3.1 of the Patent License Agreement, and because it allegedly also has the right to settle any such litigation and to "compel" the Intersil Entities to grant a license to Power Integrations under Paragraph 3.3 of the Patent License Agreement:

> [e]xcept as otherwise stated herein, Fairchild alone shall have the authority to negotiate a settlement or any other agreements with [Power Integrations] that involve or include a license or grant of immunity under the Patents, including the right to compel Intersil to grant [Power Integrations] an unlimited, non-exclusive license under the Patents as Fairchild deems appropriate in accordance with this [Patent License Agreement]

(D.I. 72, Ex. 6 at 3.)[4] This argument again misses the point set forth explicitly in *Gayler* and relied upon in *Crown Die* — a patent owner's right to exclude is not limited to a single party, it is instead a general right to exclude all others from making, using, or selling the invention. Whatever rights Fairchild purportedly has under the '719 Patent vis-à-vis Power Integrations, it remains a mere non-exclusive licensee vis-à-vis the patentee and all others. The Intersil Entities, as the holder of the patent title, are the sole parties that are capable of sustaining injury in fact necessary to confer standing to sue for infringement of the '719 Patent. Yet, just as in *Morrow*, the Plaintiffs' misguided division of patent rights has stripped the Intersil Entities of their right to sue:

> The problem for GUCLT [the non-exclusive licensee] and AHLT [the holder of the patent title] is that the exclusionary rights have been separated from the right to sue for infringement. The liquidation plan contractually separated the right to sue from the underlying legally protected interests created by the patent statutes — the right to exclude. For any suit that GULCT brings, its grievance is that the exclusionary interests held by AHLT are being violated. GULCT is not the party to which the statutes grant judicial relief.

*Morrow*, at *8.

Plaintiffs' suggestion that the provisions of the Intellectual Property Agreement have been supplemented and partially superseded by their 2006 Patent License Agreement (D.I. 72 at 6, n.3) does not cure their standing defect. There is no dispute that Fairchild's right to practice the '719 patent is governed by a non-exclusive license and limited to **REDACTED**, and Fairchild's "exclusive" right to sue under Paragraph 3.1 of the Patent License Agreement is not "exclusive" in the sense that courts have consistently applied that term. (*See* Power Integrations' Opening Brief, D.I.60 at 13-15.) For example, this Court has ruled that a license provision conferring a purportedly "exclusive" right to sue only a subset of potential infringers is inadequate to confer standing. *Sicom Systems Ltd. v. Agilent*

---

[4] This is the provision the Plaintiffs revealed for the first time on Wednesday, September 26, 2007, by producing yet another version of the 2006 agreement which was redacted in yet another different way. As noted above, Power Integrations objects to the Plaintiffs' piecemeal disclosure of the relevant agreements, and asks that the Court order full production or at least itself look at the full agreement.

10

*Techs., Inc.*, 2004 WL 2272273 at *2 (D. Del. Oct. 5, 2004), *aff'd*, 427 F.3d 971 (holding that a licensee's "exclusive right to sue for commercial infringement" is "inconsistent with a genuine exclusive right to sue" because the licensor retained the right to sue for non-commercial infringement). The Federal Circuit affirmed this Court's holding, noting further that a licensee's "inability to indulge infringement" is inconsistent with a complete conveyance of a right to sue. The Federal Circuit has similarly held that a license agreement that permits the licensee to extend a sublicense only to a single named entity, but to no one else, does not transfer all substantial rights in the patent to licensee. *Prima Tek*, 222 F.3d at 1379 (describing such a license as "at most, a 'license to license' which . . . falls far short of transferring 'all substantial rights' in the patents.").

Here, the Intersil Entities significantly limited Fairchild's rights, such as its right to settle any litigation with Power Integrations and its right to sublicense the '719 Patent to any third party, under Paragraph 2.2 of the Patent License Agreement:

> 2.2   Fairchild agrees that it will not enter into any settlement agreement, consent judgment, agreed judgment, covenant not to sue or any other agreement with POWI that will adversely affect the ['719 Patent's] enforceability, validity or the scope of any [claim of the '719 Patent] without the consent of Intersil. Further, Fairchild shall not, absent the express written consent of Intersil, have the right to grant to any third party, including POWI, the right to sublicense the ['719 Patent].[5]

(Ex. D (PLA) at I00705.) The Federal Circuit has found that a licensor's reservation of precisely such rights weighs against a licensee's standing to sue. The Court in *Abbott Labs. v. Diamedix Corp.* pointed to similar language in an exclusive licensing agreement as evidencing assignment of fewer than all substantial rights: "even if [the licensee] exercised its option to sue for infringement, it is obligated under the agreement not to 'prejudice or impair the patent rights in connection with such prosecution or settlement.'" Abbott Laboratories v. Diamedix Corp., 47

---

[5]   In their Opposition Brief, the Plaintiffs argue that Fairchild has standing to sue Power Integrations, in part, because "Fairchild's right to settle litigation, without the consent of Intersil, weighs strongly in favor of finding that Fairchild has sufficient exclusionary rights to support standing." (D.I. 72 at 7.) The Plaintiffs' representation that Fairchild has the right to settle litigation without the consent of Intersil is directly controverted by Paragraph 2.2 of the Intellectual Property Agreement, which expressly requires Intersil's consent to settlement.

F.3d 1128, 1132 (Fed. Cir. 1995). Other decisions cite similar restrictions as creating a complete bar to licensee standing. *See, e.g., Propat*, 473 F.3d at 1191 (ruling that a patent licensee lacked standing to sue where "[the licensor's] right to veto licensing and litigation decisions [ ] constitutes a significant restriction on [the licensee's] interest in the patent . . . [the licensor] retains substantial ongoing control of the sort typically associated with the retention of an ownership interest in the patent."); *Sicom*, 427 F.3d at 979 (finding no standing where "[licensee] does not have the right to settle litigation without the prior written consent from [licensor], nor does [licensee] have the right to sublicense without [licensor's] prior approval.").

Moreover, the Plaintiffs do not dispute that whatever rights Fairchild has to exclude and to license under the various agreements dividing the rights to the '719 Patent are limited solely to Power Integrations. Fairchild enjoys no rights whatsoever to sue, license, or permit infringement by any other entity. Under applicable law cited above, Fairchild thus admittedly lacks standing to sue any entity other than Power Integrations for infringement of the '719 Patent. The Plaintiffs can point to no authority supporting their theory that a non-exclusive license confers standing by the simple expedient of granting the "exclusive" right to sue a single targeted entity.

The Plaintiffs' failure to cite any authority in support of their position is not surprising. As Power Integrations noted in its Opening Brief, the Supreme Court of the United States has disparaged hunting licenses targeting named parties that would

> divide up the monopoly of patent property so that the patentee retains the right to make, use and vend, but gives to many different individuals the right to sue certain named infringers, respectively, and that with the sole motive of harassing them such as is avowed in the recitals of the instrument before us. If held legal, it would give the patentee an opportunity without expense to himself to stir up litigation by third persons that is certainly contrary to the purpose and spirit of the statutory provisions for the assigning of patents.

*Crown Die*, 261 U.S. at 38-39; *see* D.I. 60 at 18-19. The license to sue only Power Integrations that Fairchild has purportedly been granted is the essence of a "hunting license," and a finding that Fairchild has standing under these facts would upset decades of well-established law governing standing in patent suits, and would provide virtually unlimited opportunity for patent

owners to dole out similar hunting licenses to all comers and thereby stir up that much more patent litigation.

For this reason, even if the Plaintiffs' tortured arguments were sufficient to make a *prima facie* case that Fairchild has constitutional standing, the statement of legislative intent underlying provisions of the Patent Act articulated in *Crown Die* demonstrate why the requirements of prudential standing are not met here. *See e.g., Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) (holding that prudential standing requires that "the interest sought to be protected [be] within the zone of interests to be protected or regulated by the statute"); *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983) (considering "the nature of the plaintiff's alleged injury" as the first factor in the prudential standing analysis, and finding no basis for prudential standing where the injury was not of a type that Congress sought to redress under the applicable statute). Additionally, under these facts, the Plaintiffs' conspiring to file this suit against Power Integrations and split any spoils they hope to recover is champertous, and thus further offensive to public policy.[6]

The Plaintiffs have the burden of establishing their standing to sue. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.") By failing to cite any relevant authority in support of their novel theory of standing, they have failed to meet their burden, and this action should be dismissed.

### D. Fairchild Cannot Cure its Lack of Standing by Joining the Patentee

There is no question that the participation of the Intersil Entities cannot cure Fairchild's lack of standing. As a non-exclusive (i.e. "bare") licensee, Fairchild has no standing to sue for infringement of the '719 Patent. The law is unambiguous on this point: "an infringement action

---

[6] Plaintiffs' entire argument that their hunting license is not champertous consists of a passing reference in footnote 9 of the brief. *See* D.I. 72 at 7, n.9.

brought by a bare licensee must be dismissed. A bare licensee cannot cure its lack of standing by joining the patentee as a party." *Propat*, 473 F.3d at 1193-4.

The Plaintiffs attempt to brush aside all of the relevant case law on this point, suggesting that no case cited by Power Integrations concerned an action brought by a non-exclusive licensee together with the patentee. *Morrow*, however, was decided <u>after</u> Power Integrations filed its opening brief, and was submitted to the Court by counsel for Power Integrations with a letter dated September 25. (D.I. 69.) Yet nowhere in their opposition brief did Plaintiffs acknowledge that the non-exclusive licensee (GUCLT) in *Morrow* **unsuccessfully** argued that any deficiencies that may have existed as to its standing when it filed the complaint were cured when the legal owner of the patent-in-suit (AHLT) became a party to the suit. The *Morrow* court reiterated that the standing deficiency of a non-exclusive licensee "cannot be cured by adding the patent title owner to the suit," *Morrow*, at *7, and further held that "to demonstrate entitlement to join as a <u>co-plaintiff</u> GUCLT [the non-exclusive licensee] must have the right to exclude others from making, using or selling the invention . . . ." *Id.* at *9 (emphasis in original). Fairchild, like GUCLT, is a non-exclusive licensee that does not have the right to exclude others from practicing the '719 patent. The Intersil Entities retained that right themselves and are free to license as many other companies as they choose. Under these circumstances, the joinder of the Intersil Entities in the suit does nothing to cure Fairchild's lack of standing. See *Textile Productions*, 134 F. 3d. at 1485 (agreement transferring right to sue did not provide standing to even participate in suit because the agreement did not preclude the owner from granting a license to anyone else in the particular area of exclusivity).

### E.    This Lawsuit Should be Dismissed with Prejudice

In its Opening Brief, Power Integrations explained why this lawsuit should be dismissed with prejudice, citing public policy disfavoring "hunting licenses" conferring rights to sue only specifically named parties, and public policy disfavoring champertous agreements under which a stranger to a cause of action attempts to proceed with a lawsuit that the owner of the cause of action was not itself inclined to bring. This Court has dismissed lawsuits with prejudice where

plaintiffs have failed to meet their burden of establishing standing to sue. *See Sicom*, 2004 WL 2272273 (D. Del. Oct. 5, 2004), *aff'd*, 427 F.3d 971. The same is true here, and this case involves inappropriate behavior that goes far beyond that this Court considered in *Sicom*. Accordingly, the Court should grant Power Integrations' motion and dismiss this action with prejudice.

### III. CONCLUSION

Power Integrations respectfully requests that the Court dismiss this case with prejudice.

Dated: October 2, 2007        FISH & RICHARDSON P.C.

By: /s/ *[signature]*
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR DEFENDANT
POWER INTEGRATIONS, INC.**

## CERTIFICATE OF SERVICE

I I hereby certify that on October 2, 2007, I served the DEFENDANT POWER INTEGRATIONS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS on the following counsel of record ad the address and in the manner indicated.

| | |
|---|---|
| **BY HAND DELIVERY**<br>Steven J. Balick, Esq.<br>Ashby & Geddes<br>500 Delaware Avenue, 8th Floor<br>Wilmington, DE 19899 | Attorneys for Plaintiffs<br>FAIRCHILD SEMICONDUCTOR CORPORATION, INTERSIL AMERICAS, INC., and INTERSIL CORPORATION |
| **BY EMAIL AND FEDERAL EXPRESS**<br>G. Hopkins Guy, III, Esq.<br>Vickie L. Feeman, Esq.<br>Bas de Blank, Esq.<br>Orrick, Herrington & Sutcliffe, LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025 | Attorneys for Plaintiffs<br>FAIRCHILD SEMICONDUCTOR CORPORATION, INTERSIL AMERICAS, INC., and INTERSIL CORPORATION |
| **BY FEDERAL EXPRESS**<br>Michael Shore<br>Jeffrey R. Bragalone<br>SHORE CHAN, LLP<br>325 North St. Paul, Suite 4450<br>Dallas, Texas 75201 | Attorneys for Plaintiff,<br>INTERSIL CORPORATION |

/s/ William J. Marsden, Jr.
William J. Marsden, Jr.
marsden@fr.com

80049634.doc