IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, INTERSIL AMERICAS, INC., a Delaware Corporation, and INTERSIL CORPORATION, a Delaware Corporation, : : : : : : : : | |
| Plaintiffs, : : | |
| v.  : | C.A. No. 07-187-JJF |
| : | |
| POWER INTEGRATIONS, INC., a Delaware corporation, : : : | |
| Defendant. : | |

---

G. Hopkins Guy, III, Esquire and Bas de Blank, Esquire of ORRICK, HERRINGTON & SUTCLIFFE LLP, Menlo Park, California.
Carl. R. Roth, Esquire and Michael C. Smith, Esquire of THE ROTH LAW FIRM, P.C., Marshall, Texas.

Attorneys for Plaintiffs, Fairchild Semiconductor Corporation, Intersil Corporation, and Intersil Americas, Inc.

Michael Shore, Esquire and Jeffrey R. Bragalone, Esquire of SHORE CHAN BRAGALONE, L.L.P., Dallas, Texas.

Attorneys for Intersil Corporation and Intersil Americas, Inc.

Frank E. Scherkenbach, Esquire of FISH & RICHARDSON P.C., Boston, Massachusetts.
Michael E. Jones, POTTER MINTON, Tyler, Texas.
William J. Marsden, Jr., Esquire and Kyle Wagner Compton, Esquire of FISH & RICHARDSON P.C., Wilmington, Delaware.

Attorneys for Power Integrations, Inc.

---

**MEMORANDUM OPINION**

December 20, 2007
Wilmington, Delaware

Farnan, District Judge.

This action was brought by Plaintiffs, Fairchild Semiconductor Corporation ("Fairchild"), Intersil Americas, Inc. and Intersil Corporation (collectively, "Intersil") against Defendant, Power Integrations, Inc. ("Power Integrations") alleging infringement of United States Patent No. 5,264,719 (the "'719 patent"). The action was originally filed in the United States District Court for the Eastern District of Texas and was pending before the Honorable T. John Ward. Power Integrations filed a Motion To Dismiss, Or In The Alternative, To Transfer This Case to Delaware, and Judge Ward granted the Motion To Transfer citing the pending litigation in this Court between Power Integrations and Fairchild which involves, among other things, a claim that one of the patents asserted by Power Integrations against Fairchild is invalid in light of the '719 patent. Judge Ward denied the Motion To Dismiss, declining to address the standing arguments presented by Power Integrations. Upon transfer, the Motion To Dismiss (D.I. 39) was reinstated on the Court's docket and a hearing was scheduled. Thereafter, Power Integrations filed a second Motion To Dismiss (D.I. 59) asserting the same arguments it had raised in its initial Motion. The second Motion To Dismiss was fully briefed prior to the Court's hearing. For the reasons discussed, the Court will grant the Motions To Dismiss.

2

## I.   FACTUAL BACKGROUND

In early 2001, Fairchild and Intersil entered into an Asset Purchase Agreement which provided for the sale by Intersil of a portion of its business to Fairchild. In connection with that Asset Purchase Agreement, Fairchild and Intersil also entered into an Intellectual Property Assignment and License Agreement ("IPA") dated March 16, 2001. Pursuant to Section 6(a) of the IPA, Fairchild obtained from Intersil "a paid-up, world-wide, irrevocable, non-exclusive license, without the right to sublicense, under all rights in Patents Type 3 to make, have made, use, sell, offer for sale and import products which are solely Discrete Devices." (D.I. 61, Ex. B at FCS1685953, § 6(a).) Among the patents designated in the Patents Type 3 category is the '719 patent at issue in this action. (D.I. 61, Ex. C, Schedule 6(a) at FCS1685991.) Under the terms of the IPA, Intersil retained the sole right to sue for infringement of the '719 patent and to retain all damages recovered in connection with any such suit. (D.I. 61. Ex. B at FCS1685956, § 15(g).)

On October 20, 2004, Power Integrations filed suit against Fairchild (the "Power Integrations Suit") alleging infringement of four U.S. Patents. Infringement and invalidity were bifurcated for trial, and on October 10, 2006, a jury found that Fairchild willfully infringed each of the asserted claims of the patents-in-suit. In the second trial on invalidity, Fairchild

3

asserted that one of the asserted patents, U.S. Patent No. 4,811,075 (the "'075 patent"), was invalid in light of the '719 patent. On September 21, 2007, a second jury found that none of the asserted patents were invalid.

During the course of the Power Integrations Suit, Fairchild and Intersil entered into a second agreement dated March 30, 2006 entitled "Patent License Agreement" ("PLA"). (D.I. 79; D.I. 78, Ex. F.) Pursuant to the terms of the PLA, Fairchild agreed to pay Intersil 1.5 million dollars plus fifty percent of any Net Proceeds to Fairchild as a result of any claims or causes of action asserted against Power Integrations as a result of the enforcement of U.S. Patent No. 4,823,173 (the "'173 patent") and/or the '719 patent (collectively, "the Patents"). In exchange for this consideration, Fairchild was given certain additional rights with respect to the Patents, as follows:

> 3. **Additional Rights Granted Fairchild**
>
> 3.1 In addition to the rights granted to Fairchild under the [Asset Purchase Agreement and the IPA (collectively referred to in the PLA as the "APA")], Intersil grants to Fairchild the sole and exclusive right, exclusive even as to Intersil, to enforce the Patents against [Power Integrations], to assert, litigate, and prosecute claims of Infringement under the Patents against [Power Integrations], including without limitation in any U.S. federal court or before the International Trade Commission, and to seek all equitable, injunctive, monetary and other relief and to collect for later distribution under Paragraph 1.2 any and all past damages in connection with Infringement of the Patents by [Power Integrations], and to settle and compromise any disputes with [Power Integrations] related to the

4

Patents. Except as provided herein, the Parties agree that only Fairchild shall have the authority to threaten, commence, maintain or settle any claim, suit or proceeding based upon Infringements of the Patents (or other trespass or similar action relating to the Patents and the inventions therein claimed) by [Power Integrations].

    3.2  Fairchild's rights to make, use and sell products under the APA are not expanded in any way by this PLA.

    3.3  Intersil agrees to reasonably cooperate with Fairchild in aid of Fairchild's efforts to enforce the Patents. If necessary to assert the Patents against [Power Integrations] Intersil agrees to be joined as a party. Intersil shall execute all instruments and take all other steps as may be reasonable to enable Fairchild to procure, maintain, enforce and defend the Patents against [Power Integrations], including acts reasonable to enable Fairchild to achieve standing to enforce the Patents against [Power Integrations]. Intersil shall not, however, be required to waive any privileges, discovery exemptions, or immunities or, without protections reasonably agreed upon by Intersil, to disclose any trade secrets or confidential and proprietary information as part of its requirement to cooperate. With respect to the Invention Disclosure Statements ("IDS") related to the Patents, Intersil shall produce the IDS for production in Fairchild's pending litigation with [Power Integrations] and in any future litigation with [Power Integrations] provided that Fairchild shall use all reasonable efforts to protect against any waiver of the attorney client privilege beyond any limited waiver as to the IDS' themselves and Fairchild has not and shall not take any position in any pending or future litigation with [Power Integrations] that production of an invention disclosure statement is a broad waiver of the attorney client privilege beyond the IDS itself.

    Intersil shall not interfere with Fairchild's efforts to enforce the Patents against [Power Integrations] provided, however, if Fairchild decides not to appeal an adverse and appealable ruling of a court, then Intersil shall have the option to appeal such ruling if Intersil reasonably believes the ruling impairs or diminishes the Patents' value to Intersil,

5

provided that Intersil shall not pursue any interlocutory appeals to the Federal Circuit. Except as otherwise stated herein, Fairchild alone shall have authority to negotiate a settlement or any other agreements with [Power Integrations] that involve or include a license or grant of immunity under the Patents, including the right to compel Intersil to grant [Power Integrations] an unlimited, non-exclusive license under the Patents, as Fairchild deems appropriate in accordance with this PLA. Any license to the Patents granted to [Power Integrations] bu Fairchild or otherwise hereunder will be a non-exclusive license without rights to sub-license, with any have made or make rights limited to products seventy-five percent (75%) of which was designed by [Power Integrations] or sold exclusively under a [Power Integrations] brand. Notwithstanding anything herein, any license grant to [Power Integrations] shall expressly state that for any product that is licensed solely because it is sold exclusively under a [Power Integrations] brand, that the corresponding license shall only be granted to [Power Integrations] and shall not extend to its suppliers who shall receive no benefits under such a license.

3.4   Intersil agrees, except as otherwise stated herein, that Fairchild and its counsel shall be solely in charge of the strategy and the conduct of any dispute involving [Power Integrations] and the Patents, and that Fairchild shall consult with Intersil and its counsel, but that final decisions shall rest solely with Fairchild.

3.5   The right to license the Patents and/or compel Intersil to grant [Power Integrations] an unlimited, non-exclusive license to the Patents is expressly conditioned upon Intersil being granted a license to all [Power Integrations] patents and intellectual property to which Fairchild may be granted rights in a manner and to an extent co-extensive with the rights granted by [Power Integrations] to Fairchild, including any additional rights granted to Fairchild by [Power Integrations] within one year of the grant of any rights by Intersil to [Power Integrations].

3.6   Intersil will not license or assign any rights under the Patents to [Power Integrations]

6

without the prior consent of Fairchild. Any such attempt shall be null and void *ab initio*. Any license or assignment of rights by Intersil under the Patents to any third party, licensee or foundry executed after the effective date of this PLA shall be subject to the terms and conditions of this PLA and the APA and shall expressly exclude from its scope any rights to the Patents in favor of [Power Integrations] and shall prevent such party from sub-licensing, assigning or otherwise granting any rights or protection under the Patents to [Power Integrations].

(D.I. 78, Ex. F at 2-3.)

Fairchild's rights under Section 3 are further restrained by Section 2.2, which provides:

> 2.2 Fairchild agrees that it will not enter into any settlement agreement, consent judgment, agreed judgment, covenant not to sue or any other agreement with [Power Integrations] that will adversely affect the Patents' enforceability, validity or the scope of any Patent's claim without the consent of Intersil. Further, Fairchild shall not, absent the express written consent of Intersil, have the right to grant to any third party, including [Power Integrations], the right to sublicense the Patents. Intersil and Fairchild will attempt to reach an agreement on standard language to be included in any such agreement that, if included without nullifying or inconsistent language, will eliminate the requirement for additional consent from Intersil.

(Id. at 2.)

Less than two weeks from the date of the PLA, Fairchild and Intersil Corporation commenced this action against Power Integrations asserting infringement of the '719 patent. On May 18, 2006, Intersil Americas, Inc., Intersil Corporation and Fairchild executed a Supplemental Agreement to the PLA which acknowledges Intersil Americas, Inc. as the title holder of

7

record of the '719 patent and ratifies the terms of the March 30, 2006 PLA. (D.I. 61, Ex. F.) One day later, Fairchild filed an Amended Complaint adding Intersil Americas, Inc. as a party to the action.

## II. THE PARTIES' CONTENTIONS

By its Motions, Power Integrations contends that Fairchild lacks standing to bring this lawsuit. Specifically, Power Integrations contends that Fairchild is no more than a non-exclusive licensee under the terms of the IPA and PLA, and therefore, Fairchild cannot suffer any legal injury from the alleged infringement of the '719 patent. Power Integrations also contends that, as a nonexclusive licensee, Fairchild cannot cure the defect in standing by joining the patent's title holder. Moreover, Power Integrations contends that Intersil also lacks standing to maintain this action against Power Integrations, even though it holds title to the '719 patent, because it explicitly contracted away "the sole and exclusive right, exclusive even as to Intersil, to enforce the ['719 patent] against [Power Integrations]." (D.I. 78, Ex. F at § 3.1.) Thus, Power Integrations maintains that the PLA is no more than a "hunting license," which is inadequate to confer standing upon Fairchild and disfavored under public policy.

In response, Fairchild contends that it holds sufficient exclusionary rights with respect to the '719 patent, such that it

has standing to sue Power Integrations jointly with Intersil. Because Intersil is the owner of the '719 patent, Fairchild also contends that Intersil clearly has standing under the law to bring an action for infringement. If Intersil contracted this right away as Power Integrations contends, then Fairchild maintains that it contracted that right to Fairchild. According to Fairchild, Power Integrations' argument would result in the disappearance of any right to sue as a result of the IPA and PLA, a result which Fairchild maintains is legally unsupportable. Because all parties who could recover from Power Integrations for its alleged infringement of the '719 patent are present in this action, Fairchild contends that dismissal of this action is inappropriate.

### III. DISCUSSION

Standing to sue is a constitutional prerequisite to maintaining an action in federal court. To establish standing in accordance with Article III of the Constitution, the party bringing the action must demonstrate (1) an injury in fact (an invasion of a legally protected interest which is concrete and particularized and actual or imminent); (2) a causal connection between the defendant's action and the injury (that the injury is fairly traceable to the defendant's alleged unlawful conduct); and (3) redressability (that the injury is likely to be redressed by the relief requested). Hein v. Freedom Religion Found., Inc.,

127 S. Ct. 2553, 2555-2556 (2007); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

In the context of suits for patent infringement, standing is derived from the Patent Act which creates the legal interest necessary to establish the injury in fact requirement, specifically, the right to exclude others from making, using, selling, or offering to sell the patented invention, or importing the invention. Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007). Stated another way, "[t]he party holding the exclusionary rights to the patent suffers legal injury in fact under the statute." Id. Under the Patent Act, standing to sue for infringement is expressly conferred on owners and assignees of patents. Id. (citing 35 U.S.C. § 100(d) and § 281). From this statutory grant, the Federal Circuit has identified three potential categories of plaintiffs who can sue for infringement: (1) those that can sue in their own name; (2) those that can sue as long as the patent owner is also joined in the suit; and (3) those than cannot even participate as a party to an infringement suit. Id. Owners and assignees who hold "all substantial rights" to the patent fall into the first category of plaintiffs and have standing to bring a suit for infringement in their own name alone. Id. at 1339-1340. The second category of plaintiffs embraces those plaintiffs who hold exclusionary rights and interests created by the patent statutes, but not all substantial

10

rights to the patents. Id. at 1340. The third category of plaintiffs includes those that hold less than all substantial rights to the patents and lack exclusionary rights. Id. at 1340-1341. This third category of plaintiffs includes nonexclusive licensees. As the Federal Circuit recognized in Sicom Systems Ltd. v. Agilent Techs., Inc., "[a] nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement." 427 F.3d 971, 976 (Fed. Cir. 2005). Thus, the standing deficiency of a nonexclusive licensee cannot be cured by adding the patent title owner to the law suit. Morrow, 499 F.3d at 1341.

Utilizing this framework, the Court must consider whether Fairchild and Intersil have standing to maintain this action against Power Integrations. To answer this question, the Court must begin by considering what rights Fairchild obtained from Intersil and what rights Intersil retained under the IPA and PLA. Under the IPA, Fairchild was granted a world-wide, irrevocable nonexclusive license with respect to the '719 patent. Therefore, under the IPA, Fairchild was nothing more than a bare licensee who could not maintain an action in its own name, with or without the presence of the patent owner, Intersil. The question raised by the parties here, is whether the rights transferred to Fairchild under the PLA elevated its status from that of a bare

11

licensee to the second category of plaintiffs, those who hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent such that a law suit may be maintained with the presence of the patent owner.[1]

The PLA provides Fairchild with "the sole and exclusive right, even as to Intersil, to enforce the Patents against [Power Integrations] . . ." (D.I. 78, Ex. F. at § 3.1.) Stated another way, the PLA provides Fairchild with the exclusive right to sue Power Integrations for infringement of the '719 patent; however, the right to sue others still resides with Intersil, and Fairchild's rights to make, use and sell the products under the IPA are not expanded by the PLA. Succinctly put, Fairchild is a bare licensee with the right to sue a specific entity. The Supreme Court has recognized that the attempted assignment of a right to sue a particular entity "carrie[s] no part of the title to the patent or interest in it and therefore confer[s] no right to sue for damages for infringement of the patent after the execution of the instrument." Crown Die & Tool, 261 U.S. at 39. Consistent with this precedent, the Federal Circuit has also recognized that "[a] 'right to sue' provision within a license

---

[1] Fairchild suggests in passing that it "arguably has the right to proceed alone" with an action against Power Integrations based on the '719 patent. (D.I. 72 at 2.) However, Fairchild does not earnestly contend that it should be considered a first category plaintiff, nor does the Court believe that the rights conferred on Fairchild by the IPA and the PLA are sufficient to give it standing to sue Power Integrations in its own name for infringement of the '719 patent.

12

cannot, of its own force, confer standing on a bare licensee." Textile Productions, Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir. 1998); Ortho Pharma. Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1032 (Fed. Cir. 1995) (holding that co-plaintiff standing is not established where licensee was given a nonexclusive license to use the invention in one location in the United States and was granted the right to sue by the licensor, because "[a] patentee may not give a right to sue to a party who has no proprietary interest in the patent").

More recently, this Court considered the issue of standing in the context of an assignment of a right to sue. In Sicom Systems, Ltd., v. Agilent Techns., Inc., 2004 WL 2272273, *2 (D. Del. Oct. 5, 2004), the Court considered whether an "exclusive right to sue for commercial infringement" of a patent was sufficient to transform a license into an assignment. The Court concluded that the right to sue a potential subset of infringers was insufficient to confer standing, noting that the licensor still retained the right to sue for non-commercial infringement and might still be able to pursue non-commercial customers of the potential infringer. The Court further noted that the licensee's right to sue was not unlimited and was also subject to additional restrictions, including consultation with the licensor regarding joint action to be taken in the event of actual or threatened litigation and notification to the patentee before bringing suit.

13

In addition, the Court found significant the fact that the licensee had restrictions on the right to assign the patent, including that the licensee was required to obtain the consent of the licensor before effectuating an assignment. Id. ("Limits on the right to assignment weigh against a finding that the licensor transferred to the licensee all substantial rights in the patent."). The Federal Circuit affirmed the Court's decision.

In the Court's view, the circumstances of this case are analogous to the circumstances in Sicom. The PLA gives Fairchild only a fragment of the right to sue, a fragment much smaller than that given to the licensee in Sicom, because here, the right to sue is limited to not just a class or group of infringers, but to a specific, single entity. Fairchild's right to sue and right to assign the Patents is further limited by provisions requiring Intersil's consent. For example, Fairchild may not enter into any settlements with Power Integrations that will adversely affect the Patents' enforceability, validity or scope without Intersil's consent. Fairchild also may not grant any third party, including Power Integrations the right to sublicense the Patents without Intersil's consent. Fairchild contends that it maintains the right to sublicense the Patents to Power Integrations, but the wording of the PLA is telling in this regard. Specifically, the PLA provides:

> Except as otherwise stated herein, Fairchild alone
> shall have the authority to negotiate a settlement or

14

> any other agreements with [Power Integrations] that involve or include a license or grant of immunity under the Patents, including the <u>right to compel Intersil to grant [Power Integrations] an unlimited, non-exclusive license under the Patents</u> as Fairchild deems appropriate in accordance with this PLA.

(D.I. 78, Ex. F at § 3.3.)

The latter emphasized language suggests that the right to assign the Patents still ultimately lies with Intersil. The former emphasized language also points out that Fairchild's right to compel Intersil to give a license is not absolute. Rather, Fairchild's right to compel Intersil to grant Power Integrations a license is "conditioned upon Intersil being granted a license to all [Power Integrations] patents and intellectual property to which Fairchild may be granted rights in a manner and to an extent co-extensive with the rights granted by [Power Integrations] to Fairchild, including any additional rights granted to Fairchild by [Power Integrations] within one year of the grant of any rights by Intersil to [Power Integrations]." (D.I. 78, Ex. F at 3.5.).

The Supreme Court has explained that standing is conferred by the transfer of "the entire and unqualified monopoly" of rights under the patent:

> [I]n order to enable [an assignee of patent rights] to sue, the assignment must undoubtedly convey to him <u>the entire and unqualified monopoly which the patentee held in the territory specified - excluding the patentee himself, as well as others. And, any assignment short of this is a mere license</u>. . . . Unquestionably, a contract for the purchase of any portion of the patent

15

> right may be good as between the parties as a license, and enforced as such in the courts of justice. But the legal right in the monopoly remains in the patentee, and he alone can maintain an action against a third party who commits an infringement upon it.

Gayler v. Wilder, 51 U.S. 477, 494-495 (1870) (emphasis added). The restrictions and limitations on Fairchild's rights under the '791 patent, including the right to exclude only a single entity, Power Integrations, is certainly less than the "entire and unqualified monopoly" to which the Supreme Court referred. Stated another way, the right to sue only a single entity, coupled with restrictions on that right, does not provide Fairchild with a sufficient cloak to cover its status as a bare, nonexclusive licensee. Ortho, 52 F.3d at 1034-1035;

    As for Intersil, the Court likewise concludes that Intersil lacks standing to maintain this action against Power Integrations. Intersil contracted away its right to sue Power Integrations to Fairchild. That Fairchild lacks standing to take advantage of that right does not mean that Intersil regains it. Indeed, the Federal Circuit recognized in Morrow, that the contractual division of patent rights may have the effect of defeating standing as to all relevant parties. As the Morrow Court explained, "parties are free to assign some or all patent rights as they see fit based on their interests and objectives, [but] this does not mean that the chosen method of division will satisfy standing requirements." 499 F.3d at 1341 n.8. In

Morrow, the Federal Circuit concluded that the unsecured creditors' trust did not have standing to maintain a lawsuit simply because it held the right to sue under the patent-in-suit. Further, the Federal Circuit acknowledged that the corporate trust, which held legal title to the patent-in-suit, did not have the right to sue third parties for infringement, because that right was held exclusively by the unsecured creditors' trust. Id. at 1335.

In sum, the Court concludes that dismissal of this action is appropriate.  At this juncture, Fairchild is the only party with the right to sue Power Integrations.  Intersil has contracted that right away to Fairchild, but Fairchild is a bare, nonexclusive licensee who cannot satisfy the constitutional standing requirements.  Thus, Intersil's presence in this action is insufficient to cure Fairchild's defect in standing.  Having concluded that dismissal of this action is appropriate, the only remaining question for the Court is whether the dismissal should be with or without prejudice.

Power Integrations characterizes the PLA as a "hunting license," and contends that both public policy and the doctrine of champerty supports the dismissal of this action with prejudice.  While the Supreme Court has expressed disfavor toward the type of licensing arrangement made between Intersil and

Fairchild[2], the Court is not prepared to go so far, at this juncture, as to dismiss this action with prejudice. To the extent that Power Integrations relies on <u>Sicom</u> to justify dismissal with prejudice, the Court points out that in <u>Sicom</u> the licensee twice attempted to establish standing and twice failed. 427 F.3d at 980. In this case, Fairchild has had only one bite at the apple, and even Power Integrations recognized at oral argument, that the possibility exists that Fairchild and Intersil may be able to cure the standing defects here. Accordingly, the Court cannot conclude on the basis of the current record that dismissal with prejudice is appropriate.

### IV. CONCLUSION

For the reasons discussed, the Court will grant Power Integrations' Motions To Dismiss, and order this action to be dismissed without prejudice.

An appropriate Order will be entered.

---

[2] See <u>Crown Die & Tool</u>, 261 U.S. at 25-26.